**GUTRIDE SAFIER LLP**
SETH A. SAFIER (State Bar No. 197427)
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 336-6545
Facsimile:  (415) 449-6469

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADAM ELGINDY and JULIANNE CHUANROONG, on behalf of themselves, the general public, and those similarly situated,<br><br>    Plaintiffs,<br><br>              v.<br><br>AGA SERVICE COMPANY (d/b/a ALLIANZ GLOBAL ASSISTANCE), JEFFERSON INSURANCE COMPANY, and BCS INSURANCE COMPANY,<br><br>    Defendants. | CASE NO.<br><br>**CLASS ACTION COMPLAINT FOR UNFAIR BUSINESS PRACTICES; FALSE ADVERTISING; AND FRAUD, DECEIT, AND/OR MISREPRESEN-TATION**<br><br>JURY TRIAL DEMANDED |

-1-

Class Action Complaint

**INTRODUCTION**

1. Plaintiffs Adam Elgindy and Julianne Chuanroong, by and through their counsel, bring this class action against Defendants AGA Service Co. d/b/a Allianz Global Assistance ("AGA" or "Allianz"), Jefferson Insurance Company ("Jefferson"), and BCS Insurance Company ("BCS") (collectively, "Defendants") to seek redress for Defendants' unlawful, unfair, and deceptive practices relating to their online marketing and sale of insurance policies on the checkout pages of ticketing and travel websites.

2. This is a case about Defendants' longstanding practice of charging consumers with hidden fees. On major event and travel websites, including ticketmaster.com and the websites of the major airlines, Defendants purport to make a straightforward offer to consumers: insurance for the event tickets and travel arrangements consumers purchase on those websites. However, Defendants secretly and unfairly charge unsuspecting consumers additional fees, *on top of the calculated premium*, without disclosing that they are charging those fees. In places other than the checkout screens where the transactions occur, Defendants try to justify those fees by representing that the fees are for a supposed assistance service. That service purports to allow insureds to spend time on the telephone with AGA's customer service representatives to request information about various topics, such as directions, weather, restaurants, hotels, new travel arrangements, and possibly medical needs. But consumers are unaware of any such service and they do not want it; and they certainly do not want to pay what Defendants charge for it.

3. Under California law, an appointed agent such as AGA is not permitted to collect a fee for services constituting or arising out of the transaction of insurance. In the end, the assistance service is a sham and a pretext to collect illegal fees at the expense of millions of consumers.

4. Plaintiffs bring this action on behalf of themselves, the general public, and classes of similarly situated individuals, seeking a judgment against Defendants that would, among other things: (1) prohibit Defendants from charging mandatory and/or undisclosed fees (in addition to premiums) for AGA's role (whether purportedly for "assistance" services or otherwise) in connection with the insurance purchases; (2) require Defendants to plainly and truthfully disclose

all premiums, fees, and charges to consumers prior to their online purchase of insurance; and (3) require Defendants to pay restitution or damages to Plaintiffs and class members.

**<u>PARTIES</u>**

5.      Adam Elgindy is, and at all times alleged herein was, an individual and a resident of Carlsbad, California.

6.      Julianne Chuanroong is, and at all times alleged herein was, an individual and a resident of San Francisco, California.

7.      Defendant AGA Services Co. d/b/a Allianz Global Assistance ("AGA") is a Virginia corporation headquartered in Richmond, Virginia. AGA maintains its principal place of business at 9950 Mayland Drive, Richmond, VA 23233. AGA is an affiliate of Jefferson and AGA is Jefferson's registered agent and registered administrator for insurance business transacted in or issued in California. AGA is BCS's registered agent and registered administrator for insurance business transacted in or issued in California. AGA has substantial contacts with and receives substantial benefits and income from California and throughout the United States.

8.      Defendant Jefferson Insurance Company is a New York corporation headquartered in Richmond, Virginia. Jefferson maintains its principal place of business at 9950 Mayland Drive, Richmond, VA 23233. Jefferson underwrites some of the insurance policies at issue in this lawsuit. Jefferson, directly and through its agents, has substantial contacts with and receives substantial benefits and income from California and throughout the United States.

9.      Defendant BCS Insurance Company is an Ohio corporation headquartered in Oakbrook Terrace, Illinois. BCS maintains its principal place of business at 2 Mid America Plaza Suite 200, Oakbrook Terrace, Illinois 60181. BCS underwrites some of the insurance policies at issue in this lawsuit. BCS, directly and through its agents, has substantial contacts with and receives substantial benefits and income from California and throughout the United States.

10.     AGA, Jefferson, and BCS are referred to collectively herein as "Defendants."

11.     With respect to the allegations herein, AGA acted as the agent of Jefferson or BCS and, in doing the things herein alleged, was acting within the scope and course of its authority as such agent.

Class Action Complaint

12.     With respect to the allegations herein concerning policies underwritten by Jefferson: (a) the acts and omissions of each of AGA and Jefferson concurred and contributed to the various acts and omissions of each other in proximately causing the injuries and damages as herein alleged; (b) AGA and Jefferson each aided and abetted the acts and omissions of each other in proximately causing the damages, and other injuries, as herein alleged; (c) AGA and Jefferson each ratified each and every act or omission complained of herein; and (d) AGA and Jefferson were each a member of, and engaged in, a joint venture, partnership and common enterprise, and acting within the course and scope of, and in pursuance of, said joint venture, partnership and common enterprise.

13.     With respect to the allegations herein concerning policies underwritten by BCS: (a) the acts and omissions of each of AGA and BCS concurred and contributed to the various acts and omissions of each other in proximately causing the injuries and damages as herein alleged; (b) AGA and BCS each aided and abetted the acts and omissions of each other in proximately causing the damages, and other injuries, as herein alleged; (c) AGA and BCS each ratified each and every act or omission complained of herein; and (d) AGA and BCS were each a member of, and engaged in, a joint venture, partnership and common enterprise, and acting within the course and scope of, and in pursuance of, said joint venture, partnership and common enterprise.

14.     Jefferson is jointly and/or vicariously liable for Allianz's wrongful conduct in connection with the marketing and sale of Jefferson policies; and BCS is jointly and/or vicariously liable for Allianz's wrongful conduct in connection with the marketing and sale of BCS policies.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. Section 1332(d)(2)(A) because: (i) there are 100 or more class members, and (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs.

16.     This Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. Section 1367.

17.     The injuries, damages and/or harm upon which this action is based, occurred or arose out of activities engaged in by Defendants within, affecting, and emanating from, the State of California. Defendants regularly conduct and/or solicit business in, engage in other persistent courses of conduct in, and/or derive substantial revenue from services provided to persons in the State of California. Defendants have engaged, and continue to engage, in substantial and continuous business practices in the State of California. Defendants' wrongful acts and omissions occurred in California.

18.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in the state of California, including within this District.

19.     Plaintiffs accordingly allege that jurisdiction and venue are proper in this Court.

## DETAILED SUBSTANTIVE ALLEGATIONS

20.     Insurance is a highly regulated service in every state. California requires insurers and their agents to obtain approval for insurance rates prior to offering those policies and rates to consumers, and to clearly identify the approved insurance premium to consumers. *See* Cal. Ins. Code § 1861.01(c) ("insurance rates subject to this chapter must be approved by the commissioner prior to their use"), § 1861.05 ("No rate shall be approved or remain in effect which is excessive, inadequate, unfairly discriminatory or otherwise in violation of this chapter."); *see also* Cal. Ins. Code § 381 (providing an insurance policy must specify a statement of the premium). There are also strict requirements if an insurance producer wishes to charge a fee for its services. Only brokers may charge a broker's fee, and only after required disclosures are made. *See* Cal. Code Regs. tit. 10, §§ 2189.3 and 2189.5 (which authorize only brokers, not agents, to collect fees, and only pursuant to strict disclosure requirements). Accordingly, producers must identify any fees they charge separately from the premium and in sufficient detail for consumers to understand the fees and for there to be a determination that the fees are in compliance with the insurance laws and regulations.

21.     Reasonable consumers expect that insurers and their agents comply with all laws and regulations, that insurance premiums will be clearly identified prior to purchase, and that any

separate, additional, producer, or non-insurance service or fee will also be clearly identified prior to any agreement to pay for such fee. Reasonable consumers who are quoted a single price for insurance reasonably assume that price is a lawful and approved premium and not a vehicle for hidden fees added to the insurance premium.

22.     AGA markets and sells the event ticket insurance and trip insurance policies at issue. AGA is responsible for obtaining approval of the Jefferson and BCS policies and rates at issue. AGA is responsible for charging and collecting the premiums and fees at issue. AGA purports to provide a supposed "assistance service" for which it deceptively, unfairly, and unlawfully charges consumers, and has been unjustly enriched by those unlawful, unfair, and undisclosed fees.

## I.     Defendants Charge Unsuspecting Consumers for Supposed "Non-Insurance Assistance Services" in Conjunction with Event Ticket Insurance

23.     When purchasing tickets to events from online websites or mobile apps, consumers are often presented with the option to insure their purchase. Defendants are the dominant providers of event ticket insurance in California and the United States, and the main (if not only) provider of such insurance on the Ticketmaster.com website.

24.     As shown in the example below, when consumers purchase event tickets on Ticketmaster.com and similar websites, Defendants present consumers with an offer of insurance during the checkout process. When such an offer is presented to a consumer, Defendants' offer is the only available option for protecting the event ticket purchases.

25.     The offer is plainly described as "Ticket Insurance" and "Event Ticket Insurance for an additional $[amount] per ticket." Accordingly, reasonable consumers understand the insurance premium to equal the quoted price (here, $9). Unbeknownst to the consumer, the $9 price quoted above consists of "$7.53 for insurance and $1.47 for assistance." The "assistance" service is essentially a toll-free line to customer service representatives. The "Ticket Insurance" offer never mentions any agent's fee or any charge (in addition to any calculated insurance premium) for a supposed non-insurance assistance service. Typically, a consumer will purchase the insurance without ever realizing that he or she paid AGA for access to a toll-free customer service line.

26.     The "Ticket Insurance" offer includes a hyperlink for "Plan details and disclosures," but it does not provide sufficient notice to consumers that they are being charged for supposed non-insurance services on top of the premium for the insurance product. First, there is no statement within the offer that the price includes a fee for non-insurance services. Second, the hyperlink is in fine print and follows the sentence "Terms and exclusions (incl. for pre-existing conditions) apply." That suggests that the plan details accessible by hyperlink concern the

insurance terms, not that there is a separate fee for a supposed non-insurance service. Third, even if a consumer follows the hyperlink, the landing page includes a prominent list of three benefits in a table at the top of the page: (1) "Ticket Cancellation Coverage," for "Up to event ticket cost" (subject to a maximum); (2) "Viewer Advantage," characterized as "Included;" and (3) "Pre-existing Medical Condition Exclusion Waiver," described as "Available." This table again provides no notice to a reasonable consumer that he or she will be charged both an insurance premium *and a mandatory additional fee*, supposedly for assistance services.

27.     After purchasing the event ticket insurance, the customer is sent a confirmation email containing the policy number and total cost of the insurance. The email confirmation includes a hyperlink to the "policy documents." The vast majority of insureds never follow the link to the policy documents. The policy documents also include a cover letter, which, for the first time, identifies a separate charge for "assistance" services, which AGA and Jefferson call "Viewer Advantage Services" in their event ticket insurance policy documents. These "assistance" or "Viewer Advantage Services" entitle insureds to call a toll-free number to speak with customer service representatives to obtain various types of information, including directions, information concerning nearby restaurants, hotels, and parking garages, weather forecasts, destination information, information related to replacing passports, and information regarding doctors and medical facilities. To access such informational assistance services, insureds must supply their policy number and other information about the insured event (such as the venue and date).

28.     There is no significant demand in the market for the assistance benefits purportedly offered by AGA, in the form in which they are offered. Reasonable consumers who insure their event ticket purchases are not interested in paying AGA so that they have the option to call AGA for information encompassed within AGA's "Viewer Advantage Services." Consumers who purchase event tickets online and through mobile applications can readily and promptly find the information encompassed within AGA's "Viewer Advantage Services" for *free*, and on demand, using the internet and widely available applications (such as from Google, Apple, Yelp, and many other service providers). Reasonable consumers are not interested in paying

money to have the option to call AGA's toll-free hotline, after first searching for their insurance policy number and other information regarding their event, then spending several (and likely many) minutes on hold and/or speaking to multiple service representatives, having customer service agents note their inquiries, conduct searches related to those inquiries, and then eventually (hours or days later) email or call the insureds back with some of the requested information. That is an inefficient, slow, and belabored process for obtaining information, especially as compared to the widely available means of obtaining such information promptly and for free. Given that reality, and given that Defendants make no mention of any separate charges for such services at the time they present their insurance offers to consumers, consumers have no reason to suspect they are being charged for AGA's non-insurance assistance service at the time they insure their event ticket purchases. Consumers would not pay for such a service if given the choice whether to do so.

29.     AGA does post (on its website) pricings sheets for its supposed non-insurance assistance service, but (a) those pricing sheets are difficult to find (requiring access through multiple hyperlinks), (b) reasonable consumers do not actually find and visit those webpages prior to purchasing the insurance on other websites, (c) the pricing sheets are sometimes inconsistent with the fees Defendants actually charge consumers (as Defendants sometimes charge consumers more for assistance services than the amounts stated in the pricing sheets), and (d) the pricing factors set forth in those documents undermine AGA's characterization of the fees as merely for non-insurance assistance services. Defendants represent on the pricing sheets that fees for assistance services in connection with events depend on the cost of the event tickets and the booking window (the time between the purchase and the event date). But those factors are also used to calculate premiums, and those factors bear no reasonable relation to the cost of the information service, which should not vary in price depending on the cost of the event or on the consumer's booking window.

30.     If AGA were genuinely attempting to market an informational assistance service, it would likely offer it for free (using advertisements to cover costs) or it would charge a flat, low fee and highlight some competitive edge over the alternative free sources of information available

to consumers. Instead, AGA *hides* its agency fee and the assistance service from consumers at the point of purchase, uses a formula that *increases* the fee according to the purchase and risk at issue, and does not actually invest in providing a convenient informational assistance service. To minimize attention to the additional fees it charges, AGA sends contradictory messages to two different audiences: (a) suggesting to consumers (during the solicitation) that there is just a single insurance premium (to keep them ignorant of the additional charge), while (b) suggesting to regulators that the fee for assistance services is distinct from the insurance premium (to present a lower premium figure and to try to avoid further scrutiny of the "non-insurance" fee).

31.    Regardless of how Defendants' "assistance" fees are ultimately characterized—whether as an artifice to collect an unlawful agent's fee or as genuinely for non-insurance services (that no one wants)—the result is the same: Defendants collect more from consumers than they should. Defendants did not receive approval from the California Department of Insurance to charge these mandatory, hidden fees on top of the premium. If Defendants followed the laws and regulations, they would not be charging such fees. And if Defendants disclosed the fees to consumers prior to purchase, consumers would not pay for the fees. Defendants are continuing to charge and collect sums that they are not allowed to collect by law and which are more than consumers would pay if they understood Defendants' practices.

32.    In sum, Defendants' practice of charging consumers for supposed "assistance" in connection with event ticket insurance is deceptive, unfair, and unlawful.

**II.    Defendants Charge Unsuspecting Consumers for Supposed "Non-Insurance Assistance Services" in Conjunction with Trip Insurance**

33.    When purchasing airfare and similar travel fares or accommodations from online websites or mobile apps, consumers are often presented with the option to insure their purchase. Defendants are the largest providers of trip/travel insurance in California and the United States.

34.     When Defendants present an insurance offer, it is the only available option. Recent examples of offers made by Defendants on the websites of Hawaiian Airlines, American Airlines, and Jet Blue Airways are below:

Class Action Complaint

35.     As indicated above, a single total price is identified for the "trip insurance" prior to purchase. The consumer may "add Trip Insurance" or "protect" the trip for that specific price.

36.     Defendants do not always include a reference to any assistance service or benefits, but when they do include a reference, it is briefly mentioned as one of the benefits of the "insurance" and is typically characterized as related to a "travel or medical emergency." Within these point-of-sale offers, Defendants do not identify assistance benefits as separate, non-insurance services and Defendants do not indicate that the assistance services come with an additional charge, separate from the premium.

37.     The hyperlink to "plan details and disclosures" does not provide sufficient notice to consumers that they are being charged for supposed non-insurance services on top of the calculated premium for the insurance product. First, there is no statement within the offer that the price includes a fee for non-insurance services. Second, the hyperlink is in fine print and follows the sentence "Terms and exclusions (incl. for pre-existing conditions) apply." That suggests that the plan details accessible by hyperlink concern the insurance terms, not that there is a separate fee for a supposed non-insurance service. Third, even if a consumer follows the hyperlink, the landing page has a table at the top of the page, which includes a prominent list of benefits (such as "Trip Cancellation Coverage," "Trip Interruption Coverage," "Travel Delay Coverage," and

"Baggage Loss Coverage"), and the benefit entitled "24 Hour Assistance" is identified as "Included," without any indication that there is a separate charge for that benefit. This table provides no notice to a reasonable consumer that he or she will be charged both an insurance premium *and a mandatory additional fee*, supposedly for assistance services

38.     After purchasing the trip insurance, the customer is sent a confirmation email that contains the policy number and the total cost of the insurance. The email confirmation includes a hyperlink to the "policy documents." The vast majority of insureds never follow the link to the policy documents. The policy documents also include a cover letter, which, for the first time, identifies a separate charge for "assistance." Summaries of the types of information insureds may request through Defendants' assistance service appear in the policy documents under the headings "Travel Services During Your Trip" and "Concierge Services," the vast majority of which are inapplicable to or not valued by purchasers of the policies. These services entitle insureds to call a toll-free number to speak with customer service representatives to obtain various types of information, including where to refill prescriptions, where to find child care equipment, referrals to pet care services, destination information (including information concerning nearby restaurants, hotels, events, and activities), information regarding business services, information regarding gift deliveries, information related to replacing passports, information regarding doctors and medical facilities, legal referrals, and finding translation services. To access such informational assistance services, insureds must supply their policy number and other information.

39.     There is no significant demand in the market for the assistance benefits purportedly offered by AGA, in the form in which they are offered and separate from actual claim events. This is especially true of domestic travel. Reasonable consumers who insure their trips do not retain AGA's telephone numbers and their insurance policy numbers, and are not interested in paying AGA so that they have the option to call AGA for information encompassed within AGA's travel assistance services. Consumers who purchase airfare online and through mobile applications can readily find the information encompassed within AGA's assistance services for *free*, and on demand, using the internet and widely available applications (such as from Google,

Apple, Yelp, and many other service providers), or from more local or personalized sources than AGA can offer. Reasonable consumers are not interested in paying money to have the option to call AGA's toll-free hotline, after first searching for their insurance policy number and other information regarding their event, then spending several (and likely many) minutes on hold and/or speaking to multiple service representatives, having customer service agents note their inquiries, conduct searches related to those inquiries, and then eventually (hours or days later) email or call the insureds back with some of the requested information. That is an inefficient, slow, and belabored process for obtaining information, especially as compared to the widely available means of obtaining such information promptly and for free. Given that reality, and given that Defendants make no mention of any separate charges for such services at the time they present their insurance offers to consumers, consumers have no reason to suspect they are being charged for AGA's non-insurance assistance service at the time they insure their event ticket purchases. Consumers would not pay for such a service if given the choice whether to do so.

40.     In any event, the vast majority of insureds are not aware of the availability of those services or that they have been charged for them.

41.     AGA does post (on its website) pricings sheets for its supposed non-insurance assistance service, but (a) those pricing sheets are difficult to find (requiring access through multiple hyperlinks), (b) reasonable consumers do not actually find and visit those webpages prior to purchasing the insurance on other websites, (c) the pricing sheets are sometimes inconsistent with the fees Defendants actually charge consumers (for example, the AGA/BCS pricing sheet for the Domestic Trip Protector Plus represents that the standard assistance fee is 1%, but Plaintiff Chuanroong was charged varying amounts significantly above that percentage: $4.37 "for assistance" for her May 2019 purchase (airfare cost of $223.59), $2.25 "for assistance" for her January 2020 purchase (airfare cost of $158.20), and $4.98 "for assistance" for her March 2020 purchase (airfare cost of $136.80)), and (d) the pricing factors set forth in those documents belie AGA's characterization of the fees as merely for non-insurance assistance services. Defendants AGA and BCS state on pricing sheets that the price of assistance services is a percentage of the ticket cost, and AGA and Jefferson represent on other pricing sheets that fees

for assistance services for travel depend on the cost of the trip and the age of the insured. But those factors are also used to calculate premiums, and those factors bear no reasonable relation to the cost of the supposed assistance services, which should not vary dramatically in price depending on the trip cost and the age of the insured.

42.     If AGA were genuinely attempting to market an informational assistance service, it would likely offer it for free (using advertisements to cover costs) or it would charge a flat, attractive fee and highlight some competitive edge over the alternative sources of information available to consumers. Instead, AGA *hides* its agency fee and the assistance service from consumers at the point of purchase, uses a formula that *increases* the fee according the purchase and risk at issue, and does not actually invest in providing a convenient informational assistance service. To minimize attention to the additional fees it charges, AGA sends contradictory messages to two different audiences: (a) suggesting to consumers (during the solicitation) that there is just a single insurance premium (to keep them ignorant of the additional charge), while (b) suggesting to regulators that the fee for assistance services is distinct from the insurance premium (to present a lower premium figure and to try to avoid further scrutiny of the "non-insurance" fee).

43.     Regardless of how Defendants' "assistance" fees are ultimately characterized—whether as an artifice to collect an unlawful agent's fee or as genuinely for non-insurance services (that no one wants)—the result is the same: Defendants collect more from consumers than they should. Defendants did not receive approval from the California Department of Insurance to charge these mandatory, hidden fees on top of the premium. If Defendants followed the laws and regulations, they would not be charging such fees. And if Defendants disclosed the fees to consumers prior to purchase, consumers would not pay for the fees. Defendants are continuing to charge and collect sums that they are not allowed to collect by law and which are more than consumers would pay if they understood Defendants' practices.

44.     In sum, Defendants' practice of charging consumers for supposed "assistance" in connection with trip insurance is deceptive, unfair, and unlawful.

### III.     Plaintiff Elgindy's Experience

45.     On or about January 24, 2020, Plaintiff Elgindy visited the website Ticketmaster.com to purchase two tickets to a live event (a Rammstein concert at the Los Angeles Memorial Coliseum). The tickets were $74.50 each, with a $5 facility charge for each, a $15.90 service fee for each, and $5.75 order processing fee, for a total charge of about $196.85.

46.     During the checkout process for that purchase, Elgindy was presented with an offer from AGA and Jefferson to purchase insurance for the event tickets. The offer was presented in a manner substantially similar to the example set forth in paragraph 24 herein. There was a box/section on the checkout page presenting him with an option to insure his event ticket purchase. AGA designed, controlled, and possesses the exact offer text presented to Plaintiff Elgindy.

47.     AGA and Jefferson's offer was the only insurance option presented to Plaintiff Elgindy. There was no choice of plans or insurers during the checkout process, and very limited information was provided regarding the insurance. A single price of $18.50 was stated as the price of the "ticket insurance." There was no indication that any other fees other than an insurance premium was included in that price. There was no mention of "non-insurance assistance services" in the offer. (Unbeknownst to Plaintiff Elgindy at the time he accepted the offer of insurance, the total amount he was charged for the insurance comprised $16.38 in event insurance premium and $2.12 in mandatory assistance services fees, which may be characterized as an unlawful agent's fee.)

48.     Neither the insurance offer nor any other portion of the checkout pages disclosed (a) a specific breakdown of the components of the price for the insurance; (b) that the price included an unlawful agent's fee; (c) the existence and amount of the fee for supposed non-insurance assistance benefits; and/or (d) any material facts about the nature of such "assistance" services, or that the supposed "assistance" service is largely a sham (as purchasers of event ticket insurance are generally not aware of it, do not value it, and Defendants were and are not prepared to actually provide the service in a way that would provide actual value to consumers).

49.     Plaintiff Elgindy was not aware of the existence of any fee in addition to the insurance premium and was not aware of any of the foregoing facts at the time he purchased the ticket insurance. As a result of those material omissions, Plaintiff Elgindy agreed to pay AGA and Jefferson to insure his event tickets and believed that the amount he paid AGA and Jefferson was for the ticket insurance only and that the amount charged was determined by a regulated, lawful process. Plaintiff Elgindy was seeking only lawful and proper insurance; he was not seeking informational "assistance" services and did not place any value on the information services purportedly included in AGA's "Viewer Advantage Services." He was not aware of and did not agree to pay for any additional or unlawful agent's fee or any additional "assistance" service that Defendants purport to offer to their insureds.

50.     On or about January 24, 2020, AGA sent Plaintiff Elgindy a confirmation email regarding his purchase of event ticket insurance. The email identified the policy number and the total amount paid ($18.50); it did not identify either the insurance premium or the cost of any purported assistance benefits in the body of the email. The email confirmation includes a hyperlink to the "policy documents." The policy documents reached by way of that link include a confirmation letter, a "Declaration of Coverage," the Jefferson insurance policy/certificate form (including a description of the "Viewer Advantage Services" and an endorsement entitled "Required to Work"), and the privacy policy of AGA and Jefferson. The cover letter disclosed, for the first time, that Plaintiff Elgindy was being charged "$16.38 for insurance and $2.12 for assistance." However, Plaintiff Elgindy did not see the hyperlink to the policy documents, had no reason to believe that those documents would reveal a hidden charge for "assistance" services, and did not review those documents during the 10-day cancellation period for the policy.

51.     Plaintiff Elgindy would have declined the fee for Defendants' supposed "assistance" service, and the entire offer, if Defendants had fully and fairly disclosed: (a) that AGA charged an unlawful agent's fee in addition to the premium; or (b) the existence and amount of the fee/charge for supposed "assistance" services and basic information about the supposed "assistance service" (such as that it was a toll-free number for presenting inquiries to customers service representatives regarding the topics included in the Viewer Advantage Services), which

would have allowed him to understand that the supposed "assistance" service is worthless, does not provide actual material benefits to him or other consumers, and is a pretext for increasing Defendants' profits. Plaintiff Elgindy would have paid less than he did if AGA and Jefferson had complied with California law and charged him only an approved premium, rather than unfairly, unlawfully, and deceptively including an undisclosed, additional fee in the cost of the insurance. Plaintiff Elgindy would not have purchased insurance from AGA and Jefferson if he had doubts about their integrity and reliability, and he would have had such doubts if AGA and Jefferson had fully and fairly disclosed the material information referenced in the first sentence of this paragraph.

**IV.     Plaintiff Chuanroong's Experience**

      **A.     January 2018 Purchase**

      52.     On or about January 18, 2018, Plaintiff Chuanroong visited the website of Hawaiian Airlines (www.hawaiianairlines.com) to purchase a roundtrip flight from San Francisco, California, to Honolulu, Hawaii, in June 2018. The cost of that fare was $735.01

      53.     After selecting her flight, she reached a checkout screen, where she was presented with an offer to purchase insurance for the trip. The offer was presented in a manner substantially similar to the example set forth in paragraph 34 herein. AGA designed, controlled, and possesses the exact offer text presented to Plaintiff Chuanroong.

      54.     AGA and Jefferson's offer was the only insurance option presented to Plaintiff Chuanroong. There was no choice of plans or insurers during the checkout process, and very limited information was provided regarding the insurance. A single price of $42.26 was stated as the price of the "insurance." There was no indication that any other fees other than an insurance premium were included in that price. In particular, the insurance offer never mentioned any fee for "non-insurance assistance services." Such services were either not mentioned at all or else assistance benefits were only briefly mentioned without any indication that they were a non-insurance service subject to a separate charge.

      55.     On or about January 18, 2018, AGA sent Plaintiff Chuanroong a confirmation email regarding her purchase of trip insurance. The email did not identify either the insurance

premium or the cost of any purported assistance benefits in the body of the email. The email included an attachment, consisting of a confirmation letter, the Jefferson insurance policy/certificate form, and the privacy policy of AGA and Jefferson. The policy documents identified the total cost of the insurance plan as $42.26, without identifying a specific amount for assistance services. Based on Defendants' practices described herein, the statement in the policy that it "includes both insurance coverage and assistance services," the repeated references in the cover letter to "important" assistance benefits, it is reasonable to infer that Defendants charged Plaintiff Chuanroong an unauthorized, unlawful, unfair, and undisclosed amount for assistance services that can be determined through discovery, and that she did not agree to, did not want, and would have declined.

**B.     June 2018 Purchase**

56.     On or about June 15, 2018, Plaintiff Chuanroong visited the website of United Airlines (www.united.com) to purchase a one-way flight from Newark, New Jersey, to San Francisco, California, in September 2018. The cost of that fare was $146.20.

57.     After selecting her flight, she reached a checkout screen, where she was presented with an offer to purchase insurance for the trip. The offer was presented in a manner substantially similar to the example set forth in paragraph 34 herein. AGA designed, controlled, and possesses the exact offer text presented to Plaintiff Chuanroong.

58.     AGA and Jefferson's offer was the only insurance option presented to Plaintiff Chuanroong. There was no choice of plans or insurers during the checkout process, and very limited information was provided regarding the insurance. A single price of $21 was stated as the price of the "insurance." There was no indication that any other fees other than an insurance premium was included in that price. In particular, there was no mention in the offer of any fee for "non-insurance assistance services" in the offer. Such services were either not mentioned at all or else assistance benefits were only briefly mentioned without any indication that they were a non-insurance service subject to a separate charge.

59.     On or about June 15, 2018, AGA sent Plaintiff Chuanroong a confirmation email regarding her purchase of trip insurance. The email did not identify either the insurance premium

or the cost of any purported assistance benefits in the body of the email. The email included an attachment, consisting of a confirmation letter, the Jefferson insurance policy/certificate form, and the privacy policy of AGA and Jefferson. The policy documents identified the total cost of the insurance plan as $21, without identifying a specific amount for assistance services. Based on Defendants' practices described herein, the statement in the policy that it "includes both insurance coverage and assistance services," the repeated references in the cover letter to "important" assistance benefits, it is reasonable to infer that Defendants charged Plaintiff Chuanroong an unauthorized, unlawful, unfair, and undisclosed amount for assistance services that can be determined through discovery, and that she did not agree to, did not want, and would have declined.

**C.     May 2019 Purchase**

60.     On or about May 18, 2019, Plaintiff Chuanroong visited the website of JetBlue Airways (www.jetblue.com) to purchase a roundtrip flight from San Francisco to Long Beach, California in June 2019. The cost of that fare was $223.59.

61.     After selecting her flight, she reached a checkout screen, where she was presented with an offer to purchase insurance for the trip. The offer was presented in a manner substantially similar to the example set forth in paragraph 34 herein. AGA designed, controlled, and possesses the exact offer text presented to Plaintiff Chuanroong.

62.     AGA and BCS's offer was the only insurance option presented to Plaintiff Chuanroong. There was no choice of plans or insurers during the checkout process, and very limited information was provided regarding the insurance. A single price of $22.75 was stated as the price of the "insurance." There was no indication that any other fees other than an insurance premium was included in that price. In particular, the insurance offer never mentioned any fee for "non-insurance assistance services." Such services were either not mentioned at all or else assistance benefits were only briefly mentioned without any indication that they were a non-insurance service subject to a separate charge.

63.     On or about May 18, 2019, AGA sent Plaintiff Chuanroong a confirmation email regarding her purchase of trip insurance. The email identified the policy number and the total

amount paid ($22.75); it did not identify either the insurance premium or the cost of any purported assistance benefits in the body of the email. The email confirmation includes a hyperlink to the "policy documents." The policy documents reached by way of that link include a confirmation letter, a "Declaration of Coverage," the BCS insurance policy/certificate form (including a description of the purported travel assistance services and concierge services), and the privacy policies of BCS and of AGA and Jefferson. The cover letter disclosed, for the first time, that Plaintiff Chuanroong was being charged "$18.38 for insurance and $4.37 for assistance." However, Plaintiff Chuanroong did not see the hyperlink to the policy documents, had no reason to believe that those documents would reveal a hidden charge for "assistance" services, and did not review those documents during the 10-day cancellation period for the policy.

**D.      January 2020 Purchase**

64.      On or about January 15, 2020, Plaintiff Chuanroong visited the website of American Airlines (www.aa.com) to purchase a flight from San Francisco, California, to Dallas, Texas, in January 2020. The cost of that fare was $158.20.

65.      After selecting her flight, she reached a checkout screen, where she was presented with an offer to purchase insurance for the trip. The offer was presented in a manner substantially similar to the example set forth in paragraph 34 herein. AGA designed, controlled, and possesses the exact offer text presented to Plaintiff Chuanroong.

66.      AGA and BCS's offer was the only insurance option presented to Plaintiff Chuanroong. There was no choice of plans or insurers during the checkout process, and very limited information was provided regarding the insurance. A single price of $17.25 was stated as the price of the "insurance." There was no indication that any other fees other than an insurance premium was included in that price. In particular, the insurance offer never mentioned any fee for "non-insurance assistance services." Such services were either not mentioned at all or else assistance benefits were only briefly mentioned without any indication that they were a non-insurance service subject to a separate charge.

67.      On or about January 15, 2020, AGA sent Plaintiff Chuanroong a confirmation email regarding her purchase of trip insurance. The email identified the policy number and the

total amount paid ($17.25); it did not identify either the insurance premium or the cost of any purported assistance benefits in the body of the email. The email confirmation includes a hyperlink to the "policy documents." The policy documents reached by way of that link include a confirmation letter, a "Declaration of Coverage," the BCS insurance policy/certificate form (including a description of the purported travel assistance services and concierge services), and the privacy policies of BCS and of AGA and Jefferson. The cover letter disclosed, for the first time, that Plaintiff Chuanroong was being charged "$15.00 for insurance and $2.25 for assistance." However, Plaintiff Chuanroong did not see the hyperlink to the policy documents, had no reason to believe that those documents would reveal a hidden charge for "assistance" services, and did not review those documents during the 10-day cancellation period for the policy.

**E.      March 2020 Purchase**

68.     On or about March 13, 2020, Plaintiff Chuanroong visited the website of United Airlines (www.united.com) to purchase a roundtrip flight from San Francisco to Los Angeles, California, in November 2020. The cost of that fare was $136.80.

69.     After selecting her flight, she reached a checkout screen, where she was presented with an offer to purchase insurance for the trip. The offer was presented in a manner substantially similar to the example set forth in paragraph 34 herein. AGA designed, controlled, and possesses the exact offer text presented to Plaintiff Chuanroong.

70.     AGA and BCS's offer was the only insurance option presented to Plaintiff Chuanroong. There was no choice of plans or insurers during the checkout process, and very limited information was provided regarding the insurance. A single price of $31.11 was stated as the price of the "insurance." There was no indication that any other fees other than an insurance premium was included in that price. In particular, the insurance offer never mentioned any fee for "non-insurance assistance services." Such services were either not mentioned at all or else assistance benefits were only briefly mentioned without any indication that they were a non-insurance service subject to a separate charge.

71.     On or about March 13, 2020, AGA sent Plaintiff Chuanroong a confirmation email regarding her purchase of trip insurance. The email identified the policy number and the total

amount paid ($31.11); it did not identify either the insurance premium or the cost of any

purported assistance benefits in the body of the email. The email confirmation includes a

hyperlink to the "policy documents." The policy documents reached by way of that link include a

confirmation letter, a "Declaration of Coverage," the BCS insurance policy/certificate form

(including a description of the purported travel assistance services and concierge services), and

the privacy policies of BCS and of AGA and Jefferson. The cover letter disclosed, for the first

time, that Plaintiff Chuanroong was being charged "$26.13 for insurance and $4.98 for

assistance." However, Plaintiff Chuanroong did not see the hyperlink to the policy documents,

had no reason to believe that those documents would reveal a hidden charge for "assistance"

services, and did not review those documents during the 10-day cancellation period for the policy.

### F.    All Purchases

72.     In each of the foregoing transactions, neither the insurance offer nor any other

portion of the checkout pages disclosed (a) a specific breakdown of the components of the price

for the insurance; (b) that the price included an unlawful agent's fee; (c) the existence and amount

of the fee for supposed non-insurance assistance benefits; and/or (d) any material facts about the

nature of such "assistance" services, or that the supposed "assistance" service is largely a sham

(as consumers are generally not aware of it, do not value it, and Defendants were and are not

prepared to actually provide the service in a way that would provide actual value to consumers).

73.     In each case, Plaintiff Chuanroong was not aware of the existence of any fee in

addition to the insurance premium and was not aware of any of the foregoing facts at the time she

purchased the trip insurance. As a result of those material omissions, Plaintiff Chuanroong agreed

to pay AGA and Jefferson, or AGA and BCS, to insure her trips and believed that the amounts

she paid Defendants were for the trip insurance only and that the amounts charged were

determined by a regulated, lawful process. In each instance, Plaintiff Chuanroong was seeking

only lawful and proper insurance; she was not seeking informational "assistance" services and

would have placed no, or hardly any, value on the information services purportedly included with

the travel insurance she purchased. She was not aware of and did not agree to pay for any

additional or unlawful agent's fee or any additional "assistance" service that Defendants purport to offer to their insureds.

74.     With respect to each transaction, Plaintiff Chuanroong would have declined the fee for Defendants' supposed "assistance" service, and the entire offer, if Defendants had fully and fairly disclosed: (a) that AGA charged an unlawful agent's fee in addition to the premium; or (b) the existence and amount of the fee/charge for supposed "assistance" services and basic information about the supposed "assistance service" (such as that it was a toll-free number for presenting inquiries to customers service representatives regarding the topics included in the alleged services), which would have allowed her to understand that the supposed "assistance" service was practically worthless to her, would not provide actual material benefits to her or most other consumers, and is a pretext for increasing Defendants' profits. On each of these occasions, Plaintiff Chuanroong would have paid less than she did if AGA and Jefferson had complied with California law and charged her only an approved premium, rather than unfairly, unlawfully, and deceptively including an undisclosed, additional fee in the cost of the "insurance." Plaintiff Chuanroong would not have purchased insurance from Defendants if she had doubts about their integrity and reliability, and she would have had such doubts if Defendants had fully and fairly disclosed the material information referenced in the first sentence of this paragraph.

**V.    Because Defendants Intend to Continue Their Deceptive and Unfair Conduct, a
       <u>Public Injunction Is Needed to Protect the Public from Future Harm.</u>**

75.     To protect the general public from the threat of future injury, Plaintiff seeks a public injunction, under *McGill v. Citibank*, N.A., 2 Cal. 5th 945 (2017), prohibiting Defendants from continuing the deceptive, unfair, and unlawful practices alleged herein.

76.     To stop Defendants' deceptive, unfair, and unlawful conduct, Defendants should be required to plainly and truthfully disclose all premiums, fees, and charges to consumers prior to the sale of insurance; and Defendants' should be prohibited from charging supposedly separate fees for "assistance" services as a mandatory fee in connection with the sale of insurance policies and from charging fees and/or premiums that have not been approved for sale in California.

77.     Plaintiff Elgindy will purchase event tickets and airfare in the future and will be presented with the option to insure those purchases through Defendants. Plaintiff Elgindy desires to insure his event ticket purchases but, absent the injunctive relief sought, will not be able to determine whether he will be charged a hidden fee or an unlawful mandatory agent's fee in addition to the insurance premium. Plaintiff Elgindy has a right to know the insurance premiums and the additional fees for any putative insurance transaction and Defendants are infringing those rights. Plaintiff Elgindy is unable, and will continue to be unable, to rely on Defendants' representations regarding the price of their insurance products, unless the injunctive relief requested in this Complaint is awarded. That present and continuing uncertainty is an ongoing harm to him as a consumer and infringes the rights protected by the UCL, FAL, and insurance laws and regulations. Even if he were able to determine that Defendants will impose an unlawful agent's fee in addition to charging a premium, absent an injunction prohibiting Defendants from doing so, he will be forced to either forgo the insurance he desires (and the only insurance available) or else pay an unlawful fee.

78.     Plaintiff Chuanroong will purchase airfare in the future and will be presented with the option to insure those purchases through Defendants. Plaintiff Chuanroong desires to insure her travel purchases but, absent the injunctive relief sought, will not be able to determine whether she will be charged a hidden fee or an unlawful mandatory agent's fee in addition to the insurance premium. Plaintiff Chuanroong has a right to know the insurance premiums and the additional fees for any putative insurance transaction and Defendants are infringing those rights. Plaintiff Chuanroong is unable, and will continue to be unable, to rely on Defendants' representations regarding the price of their insurance products, unless the injunctive relief requested in this Complaint is awarded. That present and continuing uncertainty is an ongoing harm to her as a consumer and infringes the rights protected by the UCL, FAL, and insurance laws and regulations. Even if she were able to determine that Defendants will impose an unlawful agent's fee in addition to charging a premium, absent an injunction prohibiting Defendants from doing so, she will be forced to either forgo the insurance she desires (and the only insurance available) or else pay an unlawful fee.

79.     Accordingly, there is a risk that Plaintiff and those similarly situated will be harmed again in the same manner, or be deprived of the opportunity to purchase lawfully and fairly priced insurance, which would be available on ticketing sites but for Defendants' unlawful, deceptive, and unfair practices.

## CLASS ALLEGATIONS

80.     Plaintiff brings this class action lawsuit on behalf of the following proposed classes ("Classes") of similarly situated persons, pursuant to Rule 23 of the Federal Rules of Civil Procedure, defined as follows:

> The Event Ticket Insurance Class: All natural persons who purchased event ticket insurance policies from Defendants while residing in California at any point from September 4, 2016, until the present, but excluding those persons who used AGA's assistance services.

> The Trip Insurance Class: All natural persons who purchased trip or travel or flight insurance policies from Defendants while residing in California at any point from September 4, 2016, until the present, but excluding those persons who used AGA's assistance services.

81.     The following persons and entities are excluded from the Classes: Defendants and their officers, directors, employees, subsidiaries, and affiliates; and all judges assigned to this case and any members of their immediate families.

82.     Plaintiffs reserve the right to propose additional or alternative classes or subclasses, or to narrow the above class definition. This reservation includes but is not limited to classes or subclasses involving consumers in multiple states or involving particular issues.

83.     This action has been brought and may properly be maintained as a class action against Defendants because there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable.

84.     Numerosity:  Plaintiffs do not know the exact size of the Classes, but they estimate each is composed of more than 500 persons. At a minimum, there are tens of thousands of Class Members in each Class but very likely many more. The persons in each Class are so numerous that the joinder of all such persons is impracticable and the disposition of their claims in a class action rather than in individual actions will benefit the parties and the courts.

85.     Common Questions Predominate:  This action involves common questions of law and fact to the potential Classes because each class member's claim derives from the same deceptive, unlawful and/or unfair statements, omissions, and practices. The common questions of law and fact predominate over individual questions, as proof of a common or single set of facts will establish the right of each member of the Classes to recover.  The questions of law and fact common to the Classes include, but are not limited to, the following:

a.  whether Defendants have engaged, and continue to engage, in unfair or fraudulent practices by misrepresenting in insurance offers that the prices charged were solely for the insurance premium, and by failing to disclose that the amounts charged to Plaintiffs and class members included mandatory assistance fees;

b.  whether the fees Defendants' charged for their supposed assistance services constitute unlawful agent's fees;

c.  whether Defendants have engaged, and continue to engage, in unfair practices by circumventing regulatory scrutiny and charging unlawful and excessive agent fees and/or premium charges, and thus charging consumers more than they are legally allowed to charge;

d.  whether the premium rates and the assistance fee rates at issue were approved for use in California;

e.  whether Defendants knew or should have known that reasonable consumers did not value the assistance services offered by AGA;

f.  whether Defendants knew or should have known that reasonable consumers interpreted Defendants' insurance offers as a single premium and were unaware of any additional fee for AGA;

g.  whether Defendants' conduct is unlawful, unfair, or fraudulent in violation of the Unfair Competition Law, California Business and Professions Code §17200, *et seq.*;

h.  whether Defendants' conduct constitutes untrue or misleading statements within the meaning of California Business and Professions Code § 17500, *et seq.*;

i.   whether Defendants engaged in the alleged conduct knowingly, recklessly, or negligently;

j.   the amount of profits and revenues earned by Defendants and/or the amount of monies or other obligations lost by class members as a result of the misconduct;

k.   whether class members are entitled to restitution, injunctive and other equitable relief and, if so, what is the nature (and amount) of such relief; and

l.   whether class members are entitled to payment of actual, incidental, consequential, exemplary and/or statutory damages plus interest thereon, and if so, what is the nature of such relief.

86.    Typicality:  Plaintiffs' claims are typical of the claims of other members of the Classes because, among other things, all such claims arise out of the same wrongful course of conduct in which the Defendants engaged in violation of law as described herein. Further, the damages of each member of the Classes were caused directly by Defendants' wrongful conduct in violation of the law as alleged herein. Plaintiffs and members of the Classes have suffered injury in fact as a result of Defendants' misleading, deceptive, unfair, and unlawful conduct. Plaintiffs and members of the Classes would not have paid the assistance fees but for Defendants' misconduct.

87.    Adequacy of Representation:  Plaintiffs will fairly and adequately protect the interests of all class members because it is in their best interests to prosecute the claims alleged herein to obtain full compensation due to them for the unfair and illegal conduct of which they complain. Plaintiffs also have no interests that are in conflict with, or antagonistic to, the interests of class members. Plaintiffs have retained highly competent and experienced class action attorneys to represent their interests and that of the Classes. By prevailing on their own claims, Plaintiffs will establish Defendants' liability to all class members. Plaintiffs and their counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiffs and counsel are aware of their fiduciary responsibilities to the class members and are determined to diligently discharge those duties by vigorously seeking the maximum possible recovery for class members.

88.     Superiority:  There is no plain, speedy, or adequate remedy other than by maintenance of this class action. The prosecution of individual remedies by members of the Classes will tend to establish inconsistent standards of conduct for Defendants and result in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Furthermore, as the damages suffered by each individual member of the class may be relatively small, the expenses and burden of individual litigation would make it difficult or impossible for individual members of the class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action.

89.     Plaintiffs are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## CAUSES OF ACTION

## PLAINTIFFS' FIRST CAUSE OF ACTION
**(Unlawful, unfair, and fraudulent trade practices violation of Business and Professions Code § 17200, *et seq.* ("UCL"))**

90.     Plaintiffs reallege and incorporate by reference the paragraphs of this Class Action Complaint as if set forth herein.

91.     Within four (4) years preceding the filing of this lawsuit, and at all times mentioned herein, Defendants have engaged, and continue to engage, in unlawful, unfair, and fraudulent trade practices in California by engaging in the unlawful, unfair, and fraudulent business practices outlined in this complaint.

92.     Defendants have engaged, and continue to engage, in unlawful practices by, without limitation, violating the following state laws: (i) section 17500, *et seq.* of the California Business and Professions Code (the "FAL"), as described herein; and/or (ii) the California Insurance Code and regulations, including without limitation Cal. Ins. Code § 332 (requiring disclosure of all facts material to the insurance contract), Cal. Ins. Code § 790.02 (prohibiting unfair and deceptive practices in the business of insurance), Cal. Ins. Code §§ 1861.01(c) and

1861.05 and applicable case law (insurance rates must be approved by the commissioner prior to their use); and Cal. Code Regs. tit. 10, §§ 2189.3 and 2189.5, and applicable case law (prohibiting appointed agents from charging fees). To the extent Defendants charge consumers for a non-insurance service without properly disclosing that practice, Defendants violate the FAL and Cal. Ins. Code § 332 because they fail to disclose material facts regarding the price of the insurance and mislead consumers as a result. To the extent the supposed "assistance" fees are actually mandatory agent fees (or additional premium) and are determined by factors similar to those typically used to determine agent fees and premiums, then Defendants violate Cal. Ins. Code §§ 1861.01(c) and 1861.05 (because they did not get the required prior approval for those fees) and/or Cal. Code Regs. tit. 10, §§ 2189.3 and 2189.5 (which authorize only brokers, not agents, to collect fees, and only pursuant to strict disclosure requirements).

93.     Defendants have engaged, and continue to engage, in unfair and fraudulent practices by, without limitation: (a) misrepresenting in the relevant insurance offers that the prices charged were solely for the insurance premium, when they also included a hidden fee for a non-insurance service (if Defendants' characterization of the fees is proper), and failing to disclose that the amounts charged to Plaintiffs and class members included mandatory assistance fees, or (b) circumventing regulatory scrutiny and charging unlawful and excessive agent fees and/or premium charges (to the extent Defendants' characterization of the fees as for non-insurance assistance services is improper), and thus charging consumers more than they are legally allowed to charge.

94.     Plaintiffs and those similarly situated relied to their detriment on Defendants' unlawful, unfair, and fraudulent business practices. Had Plaintiffs and those similarly situated been adequately informed and not deceived by Defendants, they would not have paid the assistance or agent fees charged by Defendants.

95.     Defendants' acts and omissions are likely to deceive the general public.

96.     Defendants engaged in these unfair, deceptive, and unlawful practices to increase their profits. Accordingly, Defendants have engaged in unlawful trade practices, as defined and prohibited by section 17200, *et seq.* of the California Business and Professions Code.

97.     The aforementioned practices, which Defendants have used to their significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendants' competitors as well as injury to the general public.

98.     As a direct and proximate result of such actions, Plaintiffs and the other class members, have suffered and continue to suffer injury in fact and have lost money and/or property as a result of such deceptive and/or unlawful trade practices and unfair competition in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court. Among other things, Plaintiffs and the class members lost the amount they paid for the supposed assistance services.

99.     As a direct and proximate result of such actions, Defendants have enjoyed, and continue to enjoy, significant financial gain in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

100.    In the alternative to the damages Plaintiffs seek in their third cause of action, and in the event they are unable to recover on that claim, Plaintiffs seek, on behalf of themselves and those similarly situated, full restitution of monies paid for AGA's supposed assistance services, or as unfair and unlawful agent's fees, to restore any and all monies acquired by Defendants from Plaintiffs, the general public, or those similarly situated by means of the deceptive, unfair, and/or unlawful trade practices complained of herein, plus interest thereon. In the event Plaintiffs are unable to recover on their third cause of action, they will have no other adequate remedy at law, and thus are entitled to restitution.

101.    Plaintiffs seek, on behalf of those similarly situated, a declaration that the above-described trade practices are fraudulent, unfair, and/or unlawful.

102.    Plaintiffs seek, on behalf of those similarly situated, an injunction to prohibit Defendants from continuing to engage in the deceptive, unfair, and/or unlawful trade practices complained of herein. Such misconduct by Defendants, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendants will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require

current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendants to which they were not entitled.  Plaintiffs, those similarly situated, and the general public, have no other adequate remedy at law to ensure future compliance with the laws alleged to have been violated herein.

## PLAINTIFFS' SECOND CAUSE OF ACTION
### (False Advertising, Business and Professions Code § 17500, *et seq.* ("FAL"))

103.    Plaintiffs reallege and incorporate by reference the paragraphs of this Class Action Complaint as if set forth herein.

104.    Beginning at an exact date unknown to Plaintiffs, but continually within three (3) years preceding the filing of the Class Action Complaint, Defendants made untrue, false, deceptive and/or misleading statements in connection with the advertising, marketing, and sale of event ticket insurance and trip insurance on third party websites.

105.    Defendants made representations and statements (by omission and commission) that led reasonable customers to believe that they were agreeing to pay approved and lawful premiums for event ticket insurance policies and for trip/travel insurance policies, without hidden, unapproved fees being included within the supposed "premium" for the policies.

106.    Defendants knew or should have known that consumers did not demand or value the supposed "assistance" services they offered, that consumers would not pay for it, and that consumers did not know Defendants were charging them for it. Nevertheless, Defendants continued to advertise their insurance policies as part of a scheme with the intent not to sell the insurance as advertised and to mislead consumers regarding the nature and extent of the services they were obtaining from Defendants, and regarding the prices of those insurance and non-insurance services. Defendants knew or should have known that they misled consumers regarding: the nature of the price paid for the insurance, the existence of an additional fee for Defendants, and the existence of Defendants' assistance services.

107.    Defendants created a situation where they could charge for a service while hiding its existence to consumers they had charged, thus making it even more unlikely that insureds would use the service for which they had been charged (and thus making Defendants' performance of the supposed assistance services illusory).

108.    Plaintiffs and the Class Members relied to their detriment on Defendants' false, misleading and deceptive advertising and marketing practices, including each of the misrepresentations and omissions set forth above. Had Plaintiffs and those similarly situated been adequately informed and not misled by Defendants, they would have acted differently by, without limitation, declining the fee for assistance services and, if necessary, declining the entire insurance transaction.

109.    Defendants' acts and omissions are likely to deceive the general public.

110.    Defendants engaged in these false, misleading and deceptive advertising and marketing practices to increase their profits. Accordingly, Defendants have engaged in false advertising, as defined and prohibited by section 17500, *et seq.* of the California Business and Professions Code.

111.    The aforementioned practices, which Defendants used, and continue to use, to its significant financial gain, also constitutes unlawful competition and provides an unlawful advantage over Defendants' competitors as well as injury to the general public.

112.    As a direct and proximate result of such actions, Plaintiffs and the Class Members have suffered, and continue to suffer, injury in fact and have lost money and/or property as a result of such false, deceptive and misleading advertising in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court. In particular, Plaintiffs and Class Members lost money or property as a result of Defendants' violations because they would not have paid for Defendants' supposed assistance fees absent Defendants' misleading, unfair, and unlawful conduct.

113.    In the alternative to the damages Plaintiffs seek in their third cause of action, and in the event they are unable to recover on that claim, Plaintiffs seek, on behalf of themselves and those similarly situated, full restitution of monies, as necessary and according to proof, to restore any and all monies acquired by Defendants from Plaintiffs, the general public, or those similarly situated by means of the false, misleading and deceptive advertising and marketing practices complained of herein, plus interest thereon. In the event Plaintiffs are unable to recover on their

third cause of action, they will have no other adequate remedy at law, and thus are entitled to restitution

114.    Plaintiffs seek, on behalf of themselves and the Class Members, a declaration that the above-described practices constitute false, misleading and deceptive advertising.

115.    Plaintiffs seek, on behalf of themselves and the Class Members, an injunction to prohibit Defendants from continuing to engage in the false, misleading and deceptive advertising and marketing practices complained of herein. Such misconduct by Defendants, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendants will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendants to which it is not entitled. Plaintiffs, those similarly situated and/or other consumers nationwide have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

### PLAINTIFFS' THIRD CAUSE OF ACTION
**(Common Law Fraud, Deceit and/or Misrepresentation)**

116.    Plaintiffs reallege and incorporate by reference the paragraphs of this Class Action Complaint as if set forth herein.

117.    Defendants made representations and statements (by omission and commission) that led reasonable customers to believe that they were agreeing to pay approved and lawful premiums for event ticket insurance policies and for trip/travel insurance policies, without hidden, unapproved fees being included within the supposed "premium" for the policies. Defendants represented that their offers were for "Ticket Insurance," "Trip Insurance," "Event Ticket Insurance for an additional $[amount] per ticket," "add Trip Insurance," and the like. Accordingly, reasonable consumers understood the quoted price to fully equal the insurance premium.

118.    Defendants had duties under the Insurance Code and regulations, as well as the common law, to disclose material facts regarding their insurance offers. *See, e.g.,* Cal. Ins. Code

-33-

§§ 332, 790.02, 1861.01, and Cal. Code Regs. tit. 10, §§ 2189.3 and 2189.5. Defendants knew that the additional cost of and the nature of the assistance service was material to consumers and that consumers, including Plaintiffs, would have declined to pay for the assistance service if Defendants had disclosed that they were charging consumers for the assistance service and the nature of that service.

119.    Defendants knew or should have known that consumers did not demand or value the supposed "assistance" services they offered, that consumers would not pay for it if they had a choice, and that consumers did not know Defendants were charging them for it. Nevertheless, Defendants continued to advertise their insurance policies as part of a scheme with the intent not to sell the insurance as advertised and to mislead consumers regarding the nature and extent of the services they were obtaining from Defendants, and regarding the prices of those insurance and non-insurance services. Defendants knew or should have known that they misled consumers regarding: the nature of the price paid for the insurance, the existence of an additional fee for Defendants, and the existence of Defendants' assistance services.

120.    These misrepresentations and omissions were known exclusively to, and actively concealed by, Defendants, not reasonably known to Plaintiffs, and material at the time they were made. Defendants' knew that their misrepresentations and omissions concerned material facts that were essential to the analysis undertaken by Plaintiffs as to whether to purchase insurance at the stated price, and intended for Plaintiffs and similarly situated consumers to rely on those misrepresentations and omissions in accepting Defendants' offers of insurance. In misleading Plaintiffs and not so informing Plaintiffs, Defendants breached their duties to them. Defendants also gained financially from, and as a result of, their misrepresentations and omissions.

121.    Plaintiffs and the Class Members relied to their detriment on Defendants' misrepresentations and fraudulent omissions. Had Plaintiffs and those similarly situated been adequately informed and not intentionally deceived by Defendants, they would have acted differently by, without limitation, declining the fee for assistance services and, if necessary, declining the entire insurance transaction.

122.    By and through such fraud, deceit, misrepresentations and/or omissions, Defendants intended to induce Plaintiffs and those similarly situated to alter their position to their detriment.  Specifically, Defendants fraudulently and deceptively induced Plaintiffs and those similarly situated to, without limitation, purchase the insurance together with the supposed assistance services.

123.    Plaintiffs and those similarly situated justifiably and reasonably relied on Defendants' misrepresentations and omissions, and, accordingly, were damaged by Defendants.

124.    As a direct and proximate result of Defendants' misrepresentations and/or omissions, Plaintiffs and those similarly situated have suffered damages, including, without limitation, the amounts they paid for the assistance services.

125.    Defendants' conduct as described herein was wilful and malicious and was designed to maximize Defendants' profits even though Defendants knew that it would cause loss and harm to Plaintiffs and those similarly situated.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves, those similarly situated, and the general public, respectfully requests that the Court enter judgment against Defendants as follows:

A.  Certification of the proposed Class, including appointment of Plaintiffs' counsel as class counsel;

B.  An order temporarily and permanently enjoining Defendants from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

C.  An award of restitution in favor of Plaintiffs and class members, and requiring Defendants to disgorge revenues and profits wrongfully obtained, in an amount to be determined at trial (sought as an alternative to an award of damages on Plaintiffs' third cause of action);

D.  On Plaintiffs' third cause of action (for common law fraud, deceit and/or misrepresentation), an award of compensatory damages, the amount of which is to be

determined at trial, and an award of punitive damages, also in an amount to be determined at trial;

E. An order requiring Defendants to pay both pre- and post-judgment interest on any amounts awarded;

F. For reasonable attorney's fees and the costs of suit incurred; and

G. For such further relief as this Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiffs hereby demand a trial by jury.

Dated: September 4, 2020          **GUTRIDE SAFIER LLP**

_/s Seth A. Safier/s/_____
Seth A. Safier, Esq.
100 Pine Street, Suite 1250
San Francisco, CA 94111