1

2

3

4                             UNITED STATES DISTRICT COURT

5                            NORTHERN DISTRICT OF CALIFORNIA

6

7    ADAM ELGINDY, et al.,                    Case No. 20-cv-06304-JST

8                 Plaintiffs,

9          v.                                 **ORDER GRANTING IN PART AND
                                              DENYING IN PART MOTION TO**
10   AGA SERVICE COMPANY, et al.,             **DISMISS**

                 Defendants.                  Re: ECF No. 16
11

12

13         Before the Court is Defendants' motion to dismiss.  ECF No. 16.  The Court will grant the

14   motion in part and deny it in part.

15   **I.      BACKGROUND**

16         Plaintiffs Adam Elgindy and Julianne Chuanroong bring this putative class action on

17   behalf of themselves and other consumers who purchased an event ticket insurance policy or a

18   trip, travel, or flight insurance policy from Defendants during the class period.  Complaint

19   ("Compl."), ECF No. 1 ¶¶ 5, 6, 80.  Plaintiffs allege that Defendants' practice of bundling a non-

20   optional assistance services fee with the sale of these insurance policies, and not fully disclosing

21   the inclusion of that fee, constitutes unlawful, unfair, and deceptive conduct.  *Id.* ¶ 1.

22         **A.      Factual Background**

23         Defendants are all involved in the sale of insurance for event tickets and travel

24   arrangement purchases.  *Id.* ¶ 2.  Collectively, they are the dominant providers of event ticket

25   insurance in California, and are the main provider of insurance on the website Ticketmaster.com.

26   *Id.* ¶ 23.  They are also the largest providers of trip and travel insurance in California and the

27   United States.  *Id.* ¶ 33.  Defendants Jefferson Insurance Company and BCS Insurance Company

28   underwrite the insurance policies at issue.  *Id.* ¶¶ 8-9.  Defendant AGA Services Co. d/b/a Allianz

United States District Court
Northern District of California

Global Assistance ("AGA") is a registered agent and the registered administrator for insurance business transacted by Jefferson and BCS in California. *Id.* ¶ 7. As Jefferson's and BCS's agent, AGA is responsible for obtaining regulatory approval of the insurance policy products, as well as the marketing and sales of those products. *Id.* ¶ 22.

When a consumer purchases an event ticket on Ticketmaster.com, she is presented with an offer to purchase insurance. *Id.* ¶ 24. She is given only one vendor option to insure her purchase. *Id.* The same is true when a consumer purchases airfare and similar travel fares, including from websites for Hawaiian Airlines, American Airlines, and Jet Blue Airways. *Id.* ¶¶ 33-34.

On the Ticketmaster.com website, the offer to consumers is described as "Ticket Insurance" or "Event Ticket Insurance for an additional $[XX] per ticket." *Id.* ¶ 25. The offer page does not indicate that the price quoted reflects any costs beyond the cost of the insurance premium. *Id.* ¶¶ 25-26. Likewise, on travel websites, the offer lists a single total price for "Trip Insurance" to "protect" the trip for a specified price. *Id.* ¶ 35. On these travel websites, the offers sometimes, but not always, reference assistance for travel or medical emergency as one of the "benefits" of the insurance. *Id.* ¶¶ 34, 36.

Within the offer is a link where a consumer can access "Plan details and disclosures." *Id.* ¶¶ 26, 37. The link is in fine print and follows the sentence "Terms and exclusions (incl. for pre-existing conditions) apply." *Id.* Neither the link nor the surrounding text indicates that the plan details page will disclose a non-insurance service fee. *Id.* If a consumer clicks the "plan details and disclosure" link on the event ticket insurance page, the landing page explains the benefits of the policy as including "Ticket Cancellation Coverage," "Viewer Advantage," and "Pre-existing Medical Condition Exclusion Waiver." *Id.* ¶ 26. When a consumer clicks the same link on the travel ticket insurance page, the landing page calls the benefits "Trip Cancellation Coverage," "Trip Interruption Coverage," "Travel Delay Coverage," and "Baggage Loss Coverage." *Id.* ¶ 37. The plan details and disclosure webpage indicates that "24 Hour Assistance" is "Included," but does not say that the consumer is charged a separate fee for the benefit. *Id.* "Typically, a consumer will purchase the insurance without ever realizing that he or she paid AGA for access to a toll-free customer service line." *Id.* ¶ 25.

2

United States District Court
Northern District of California

After a consumer purchases a ticket or travel insurance policy, she receives a confirmation email with the policy number and total cost of insurance. *Id.* ¶¶ 27, 38. The confirmation email links to the "policy documents" which include a cover letter. *Id.* The cover letter identifies a separate charge for "assistance" services or "Viewer Advantage Services." *Id.*

AGA posts pricing sheets on its website that disclose the non-insurance assistance fee. *Id.* ¶¶ 29, 41. These pricing sheets explain that the fee charged for assistance services is dependent on the cost of the ticket being purchased and the length of time between the purchase and event date (the "booking window"). *Id.* The pricing sheets are difficult to find, unlikely to be accessed by consumers, and inconsistent with the prices actually charged to consumers. *Id.* For example, although the pricing sheet for Domestic Trip Protector Plus states that the standard assistance fee is 1%, Plaintiff Chuanroong was charged assistance fees of 1.95%, 1.42%, and 3.64% for trips that she insured in 2019 and 2020. *See id.* ¶ 41.

The assistance service, for which the additional fee is charged, is a toll-free line to a customer service representative. *Id.* ¶ 25. For event insurance, the assistance services entitle the insured to call a toll-free number to speak to a service representative for information on directions, nearby restaurants, hotels, parking garages, weather forecasts, destination information, passport-replacement information, doctors and medical facilities. *Id.* ¶ 27. For travel insurance, the assistance services entitle the insured to call a toll-free number to speak to a service representative for information on where to refill prescriptions or find child care equipment, pet care services, destination information, business service information, gift delivery information, passport-replacement information, doctor or medical facility information, legal referrals and translation services. *Id.* ¶¶ 38, 39

Plaintiffs allege that there is no significant demand for the assistance benefits offered by AGA. *Id.* They contend that the "services" offered by AGA under the assistance service fee is information that consumers can readily access for free on the internet. *Id.* Consumers would not pay for the assistance service product if given a choice not to do so. *Id.* ¶ 28. Additionally, Plaintiffs contend that the fee charged by Defendants is not actually used to invest in or provide the informational assistance service for which it is supposedly charged. *Id.* ¶ 30. "[G]iven that

United States District Court
Northern District of California

1   Defendants make no mention of any separate charges for [assistance] services at the time they

2   present their insurance offers to consumers, consumers have no reason to suspect they are being

3   charged for AGA's non-insurance assistance service at the time they insure their ticket purchases."

4   *Id.* ¶ 39.

5           **B.**     **Statutory and Regulatory Background**

6         Plaintiffs ground their claims on several different California insurance statutes and rules.

7   First, Insurance Code Section 1861.01 requires that "insurance rates subject to this chapter must

8   be approved by the commissioner prior to their use." Section 1861.05 details the approval of

9   insurance rates and provides, among other things, that rates will not be approved if "excessive,

10  inadequate, unfairly discriminatory." Cal. Ins. Code § 1861.05(a). Both of these provisions were

11  added to the Insurance Code by Proposition 103, approved by California voters on November 8,

12  1988. *See State Farm Mut. Auto. Ins. Co. v. Garamendi*, 32 Cal. 4th 1029, 1035 (2004). Beyond

13  the requirement of requirement for insurance rate pre-approval, Proposition 103 further

14  "provide[d] for consumer participation in the administrative ratesetting process." *Id.* (quoting

15  *Walker v. Allstate Indemnity Co.*, 77 Cal. App. 4th 750, 753 (2000). "In enacting Proposition 103,

16  the voters vested the power to enforce the Insurance Code in the public as well as the

17  Commissioner." *Donabedian v. Mercury Ins. Co.*, 116 Cal. App. 4th 968, 982 (2004) (quoting an

18  amicus brief filed by the California Department of Insurance).

19        In addition to the setting of rates, California insurance law also regulates the sale of

20  insurance and the practices of agents and brokers. *See generally* Cal. Ins. Code Art. 5.3 (§§ 769-

21  769.56). California Insurance Regulation Section 2189.3 details broker fee requirements and

22  allows a broker-agent to charge a consumer a fee so long as he is "acting in the capacity of a

23  broker." Cal. Code Regs., tit. 10, § 2189.3. This rule further requires that "[t]he broker is not an

24  appointed agent of the insurer with which the coverage is or will be placed." *Id.* § 2189.3(c).

25  "There is no authority allowing an insurance agent to charge such a fee." *Mercury Ins. Co. v.

26  Lara*, 35 Cal. App. 5th 82, 88 (2019). Finally, a fee-charging broker must also disclose,

27  "concurrent with the conveyance of an initial premium quotation, the fact that a broker fee may be

28  charged." Cal. Code Regs., tit. 10, § 2189.3(g).

1

### C.     Procedural Background

2      Plaintiffs filed their complaint on September 4, 2020.  ECF No. 1.  The complaint brings

3   three causes of action against Defendants.  First, Plaintiffs allege unlawful, unfair, and fraudulent

4   trade practices in violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof.

5   Code § 17200.  Compl. ¶¶ 90-102.  Second, Plaintiffs allege that Defendants made false,

6   deceptive, or misleading statements in connection with the sale of event and trip insurance policies

7   in violation of the California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500.

8   *Id.* ¶¶ 103-15.  Third, Plaintiffs bring a claim for common-law fraud, deceit, and/or

9   misrepresentation.  *Id.* ¶¶ 116-125.

10      On November 13, 2020, Defendants filed a motion to dismiss the complaint.  ECF No. 16.

11   Plaintiffs filed an opposition to the motion on December 16, 2020, ECF No. 21, and Defendants

12   filed a reply on January 6, 2021, ECF No. 27.  The Court held a hearing on the motion on January

13   27, 2021.

14   ## II.     SUBJECT MATTER JURISDICTION

15      The Court has jurisdiction over this putative class action pursuant to 28 U.S.C.

16   § 1332(d)(2) because the amount in controversy exceeds $5 million and at least one member in the

17   proposed class of over 100 members is a citizen of a state different from a Defendant.[1]

18   ## III.     LEGAL STANDARDS

19   ### A.     Federal Rule of Civil Procedure 12(b)(1)

20      "If the court determines at any time that it lacks subject-matter jurisdiction, the court must

21   dismiss the action."  Fed. R. Civ. P. 12(h)(3).  A defendant may raise the defense of lack of subject

22   matter jurisdiction by motion pursuant to Federal Rule of Civil Procedure 12(b)(1).  The party

23   asserting subject matter jurisdiction bears the burden of establishing it.  *Kokkonen v. Guardian*

24   *Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

25   ### B.     Federal Rule of Civil Procedure 12(b)(6)

26      A complaint must contain "a short and plain statement of the claim showing that the

27

28   _____

[1] Elgindy is a resident and citizen of California, and AGA is a citizen of Virginia.  Compl. ¶¶ 5, 7.

United States District Court
Northern District of California

pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) (citation omitted). A complaint need not contain detailed factual allegations, but facts pleaded by a plaintiff must be "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). The Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

### C. Federal Rule of Civil Procedure 9(b)

Any claims that are "grounded in fraud . . . must satisfy the traditional plausibility standards of Rules 8(a) and 12(b)(6), as well as the heightened pleading requirements of Rule 9(b)." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018). The heightened pleading standard of Federal Rule of Civil Procedure 9(b) requires that "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Allegations of fraud must "be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong. Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks, alteration, and citations omitted).

## IV. DISCUSSION

Plaintiffs' complaint is based on two distinct theories. In their first theory, Plaintiffs argue that Defendants have acted unlawfully and unfairly by bundling a non-optional assistance services fee with their offer of event and travel ticket insurance policies. Plaintiffs contend that this fee is either a disguised and impermissible "agent fee," or an upcharge on the insurance premium that has not been approved and authorized by the California Insurance Commissioner. Plaintiffs

6

1   ground their claims alleging violation of the UCL's unlawful prong and unfair prong on this

2   theory.  Plaintiffs' second theory is that Defendants have acted fraudulently by concealing the fact

3   that the "assistance services" fee is included in the total price that an individual is charged when

4   purchasing a policy.  Plaintiffs ground their claims alleging violation of the UCL's fraudulent

5   prong, violation of the FAL, and common-law fraud on that theory.

        **A.**       **Standing**

            **1.**      **Legal Standard**

8   To establish Article III standing, a plaintiff in federal court must meet three requirements.

9   First, the plaintiff must have suffered an "injury in fact" – an invasion of a legally protected

10  interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or

11  hypothetical.  Second, there must be a causal connection between the injury and the conduct

12  complained of – the injury has to be fairly traceable to the challenged action of the defendant, and

13  not the result of the independent action of some third party not before the court.  Third, it must be

14  likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

15  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

16  Whether a party has Article III standing to bring a cause of action in federal court is a

17  different analysis than whether the plaintiff has adequately established statutory standing under

18  California's UCL or FAL.  *Two Jinn, Inc. v. Gov't Payment Serv., Inc.,* No. 09-cv-2701-JLS, 2010

19  WL 1329077, at *3 (S.D. Cal. Apr. 1, 2010).  Beyond Article III's standing requirements, the

20  UCL further requires a plaintiff to demonstrate that she "lost money or property as a result of such

21  unfair competition."  *Hall v. Time Inc.,* 158 Cal. App. 4th 847, 849 (2008); *see also Rubio v.*

22  *Capital One Bank*, 613 F.3d 1195, 1203-04 (9th Cir. 2010).  FAL claims have a substantially

23  similar requirement.  *See Kwikset Corp. v. Super. Ct.,* 51 Cal. 4th 310, 322 (2011) (a plaintiff must

24  "establish a loss or deprivation of money or property sufficient to qualify as injury-in-fact" under

25  the UCL and FAL); *Meyer v. Sprint Spectrum L.P.,* 45 Cal. 4th 634, 646 (2009) ("[I]n order to

26  bring a CLRA action, not only must a consumer be exposed to an unlawful practice, but some kind

27  of damage must result.").

28

1

United States District Court
Northern District of California

### 2.   Injury-in-Fact

Defendants argue that Plaintiffs' complaint fails to establish either Article III standing or standing under the UCL and FAL because they have not shown "economic injury."  ECF No. 16 at 17.  Plaintiffs disagree, arguing that their alleged injury is simple – "Plaintiffs paid specific amounts of money that they would not have paid if Defendants had complied with the law, had not bundled the fees with the premiums, or had not hidden the existence of the fees."  ECF No. 21 at 27.  They explain that having paid more than they would have but for Defendants' conduct satisfies the UCL and Article III requirement that a plaintiff "lost money or property."  *Id.* at 28.

An alleged overpayment injury satisfies Article III's injury-in-fact requirement because "palpable economic injuries have long been recognized as sufficient to lay the basis for standing."  *Sierra Club v. Morton,* 405 U.S. 727, 733-34 (1972); *see also Comm. v. Reno,* 98 F.3d 1121, 1130 (9th Cir. 1996) ("Economic injury is clearly a sufficient basis for standing.").  It also satisfies the UCL/FAL "lost money or property" requirement where a consumer alleges that "because of the misrepresentation the consumer (allegedly) was made to part with more money than he or she otherwise would have been willing to expend."  *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 330 (2011).  "A consumer who relies on a product label and challenges a misrepresentation contained therein can satisfy the standing requirement of section 17204 by alleging . . . that he or she would not have bought the product but for the misrepresentation."  *Id.*

Plaintiffs argue that such an overpayment is present here.  As to their theory that the fees themselves are unlawful or unfair, Plaintiffs contend that "[i]f Defendants followed the laws and regulations, they would not be charging such fees."  Compl. ¶ 43.  Likewise, as to their theory that the fees were not properly disclosed, Plaintiffs contend that "if Defendants disclosed the fees to consumers prior to purchase, consumers would not pay for the fees."  *Id.*  On their face, these allegations appear to allege an economic injury.

Nonetheless, Defendants urge the Court to reject that overpayment injury argument because Plaintiffs got what they paid for.  *See* ECF No 16 at 17.  The fact that Plaintiffs do not find the assistance services valuable does not change the fact that they received the offered plan in exchange for the advertised price which they agreed to pay.  ECF No. 27 at 9.  This argument

United States District Court
Northern District of California

1  makes a great deal of sense, and the Court might adopt it if there were no law to the contrary.  But

2  precedent is not on Defendants' side.

3  Rather, the argument is foreclosed by *Hinojos v. Kohl's Corp.*, 718 F.3d 1098 (9th Cir.

4  2013).  There a consumer alleged to have bought merchandise because it was advertised as "on

5  sale," when really the merchandise was actually sold at its normal price.  *Id.* at 1101.  Following

6  the standard set forth by the California Supreme Court in *Kwikset*, the court found the "lost money

7  or property" standing requirement of the UCL satisfied because Hinojos "allege[d] that the

8  advertised discounts conveyed false information about the goods he purchased," and "that he

9  would not have purchased the goods in question absent this misrepresentation."  *Id.* at 1105.  The

10  court explained that a consumer who is presented with "[m]isinformation about a product's

11  'normal' price" suffers an economic injury "because the bargain hunter's expectations about the

12  product he just purchased is *precisely* that it has a higher perceived value and therefore has a

13  higher resale value."  *Id.* at 1106 (emphasis in original).

14  Plaintiffs allege an analogous injury here.  They contend that they were deceived to believe

15  that they were paying a certain amount for insurance, when in reality the insurance was worth less

16  than the total price paid – it was worth the offer price *minus* the added service fee.  *See* Compl.

17  ¶¶ 51, 74, 105, 112, 117, 124.  Just as in *Hinojos*, the fact that Plaintiffs were willing to pay the

18  quoted price does not change the economic injury that occurs due to a misrepresentation about the

19  value of the product.  Defendants attempt to distinguish *Hinojos* by painting Plaintiffs' injury as

20  consisting entirely of a subjective devaluation of the product that they received.  ECF No. 27 at 9.

21  But *Hinojos* rejected a similar argument that because "there was no difference in value between

22  the product 'as labeled' and the product 'as it actually is,'" there was no economic injury.

23  *Hinojos*, 718 F.3d at 1105 (internal quotation marks omitted).  Misinformation about a product's

24  price can be a source of economic injury.  *See id.* at 1106.  The extent of Plaintiffs' actual

25  economic injury is a question for another day.  For purposes of this motion, the Court finds that

26  Plaintiffs have satisfied the Article III and UCL/FAL injury-in-fact standing requirements by

27  alleging that they paid more than they would have but for Defendants' conduct.

28

### 3.      Standing to Seek Injunctive Relief

Defendants further argue that Plaintiffs lack standing to seek injunctive relief because their allegations of future harm are not plausible.  ECF No. 16 at 14.  In short, Defendants say that now that Plaintiffs know that the event and ticket insurance policies include an assistance service fee, any contentions "that they intend to purchase event or trip protection from Defendants in the future . . . are implausible." *Id.* at 15.

"Injunctive relief is not available without a showing of an actualized, imminent threat that the same harm will be suffered again." *Peacock v. 21st Amendment Brewery Cafe, LLC*, No. 17-cv-01918-JST, 2018 WL 452153, at *9 (N.D. Cal. Jan. 17, 2018).  In the Ninth Circuit, "a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an 'actual and imminent, not conjectural or hypothetical' threat of future harm." *Davidson*, 889 F.3d at 969 (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)).  This harm may be demonstrated in two ways: (1) based on "the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to," or (2) based on "the consumer's plausible allegations that she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved." *Id.* at 969-70.

In *Davidson*, the plaintiff alleged false advertising of flushable wipes that were not, in fact, "suitable for disposal down a toilet." *Id.* at 961.  The Ninth Circuit held that she had adequately pleaded imminent or actual harm by alleging "that she 'continues to desire to purchase wipes that are suitable for disposal in a household toilet'; 'would purchase truly flushable wipes manufactured by [Kimberly-Clark] if it were possible'; 'regularly visits stores . . . where [Kimberly-Clark's] "flushable" wipes are sold'; and is continually presented with Kimberly-Clark's flushable wipes packaging but has 'no way of determining whether the representation "flushable" is in fact true.'" *Id.* at 970-71.

This case fits squarely within the ambit of *Davidson*.  Plaintiff Elgindy alleges that he "will

10

1    purchase event tickets and airfare in the future and will be presented with the option to insure

2    those purchases through Defendants" and that he "desires to insure his event ticket purchases but,

3    absent the injunctive relief sought, will not be able to determine whether he will be charged a

4    hidden fee or an unlawful mandatory agent's fee in addition to the insurance premium."  Compl.

5    ¶ 77.  Plaintiff Chuanroong's allegations are similar.  *Id.* ¶ 78.  These allegations are sufficient to

6    confer standing to seek injunctive relief.  *See, e.g., Schwartz v. Bai Brands, LLC*, No. 19-cv-6249-

7    FMO(RAOX), 2020 WL 5875019, at *8 (C.D. Cal. July 31, 2020) ("Similar to the allegations

8    in *Davidson*, Schwartz alleges that he was deceived by defendant's labeling, and 'would like to

9    and does intend to purchase the [Cocofusion beverages] in the future, but is concerned about the

10   inability to rely on the labeling of the Beverages.'  These allegations are sufficient to confer

11   standing to seek injunctive relief." (citing *Davidson*, 889 F.3d at 970-71)); *Tucker v. Post*

12   *Consumer Brands, LLC*, No. 19-cv-03993-YGR, 2020 WL 1929368, at *6 (N.D. Cal. Apr. 21,

13   2020) ("Here, plaintiff has sufficiently alleged that he was deceived by the front of the Honey

14   Bunches of Oats packaging and that he may purchase the cereal again in the future if the label is

15   accurate.  Absent injunctive relief, plaintiff would not know whether honey is in fact a significant

16   sweetener in defendant's product based on the front of the cereal box.  Nor is the onus on plaintiff

17   to consult the ingredient list to try to discern this fact."); *Schneider v. Chipotle Mexican Grill, Inc.*,

18   328 F.R.D. 520, 528 (N.D. Cal. 2018) (allegations that the plaintiffs would patronize Chipotle in

19   the future if it had a non-GMO/GMO-free menu).

20          Injunctive relief is also available with regard to Plaintiffs' claims based on an "unlawful or

21   unfair fee."  Plaintiffs argue that the nature of the harm they seek to prevent is the requirement that

22   they pay an unlawful and unfair fee in order to purchase insurance with their event and travel

23   ticket purchases.  ECF No. 21 at 26-27.  They argue that their harm is certain to reoccur absent

24   injunctive relief that prohibits Defendants from continuing to charge a non-optional fee for

25   assistance services as part of their insurance offers.  *Id.*  Defendants have not raised any argument

26   nor cited any authority that would suggest that Plaintiffs lack standing for injunctive relief under

27   this theory.  *See* ECF No. 16 at 14-16; ECF No. 27 at 7-8.  The Court agrees that Plaintiffs have

28   shown, as to this theory, that there is a "sufficient likelihood" they will be injured again in a

1    "similar way" absent injunctive relief.  *See Davidson*, 889 F.3d at 971.

2         The Court finds that Plaintiffs have standing to sue and have standing to seek injunctive

3    relief as to their theory that Defendants' assistance services fee is unlawful and unfair.

4         **B.     UCL Claim**

5         California's UCL "prohibits any unfair competition, which means 'any unlawful, unfair or

6    fraudulent business act or practice.'"  *In re Pomona Valley Med. Grp.*, 476 F.3d 665, 674 (9th Cir.

7    2007) (quoting Cal. Bus. & Prof. Code § 17200 *et seq.*).  The UCL's coverage is "sweeping," and

8    its standard for wrongful business conduct is "intentionally broad."  *In re First Alliance Mortg.*

9    *Co.*, 471 F.3d 977, 995 (9th Cir. 2006).  A claim that sufficiently pleads any one of these prongs

10   will survive a motion to dismiss.  *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544,

11   1554 (2007).

12        Defendants challenge Plaintiffs' UCL claim as to each of the three prongs.  As to the

13   unlawful prong, Defendants contend that Plaintiffs fail to plausibly allege that their conduct has

14   violated any statute.  ECF No. 16 at 24.  As to the unfair prong, Defendants argue that none of

15   their conduct is plausibly characterized as "unfair," particularly where there has been no unlawful

16   conduct.  *Id.* at 27.  As to the fraudulent prong, Defendants argue that the complaint fails the

17   heightened pleading requirements of Rule 9(b) and that it fails the "reasonable consumer" test for

18   whether a marketing practice is deceptive or misleading.  *Id.* at 18, 20.  The Court examines each

19   prong in turn.

20        **1.     Unlawful Prong of the UCL**

21        Section 17200's unlawful prong "borrows violations of other laws and treats them as

22   unlawful practices that the unfair competition law makes independently actionable."  *Davis v.*

23   *HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012) (citations omitted).  "Accordingly, to

24   state a claim under the unlawful prong of the UCL, a plaintiff must sufficiently plead a predicate

25   violation."  *MacDonald v. Ford Motor Co.,* 37 F. Supp. 3d 1087, 1097 (N.D. Cal. 2014).  An

26   alleged violation of the California Insurance Code can serve as the predicate basis for a claim of

27   an unlawful practice under the UCL.  *Friedman v. AARP, Inc.*, 855 F.3d 1047, 1052 (9th Cir.

28   2017) (citing *Stevens v. Superior Court*, 75 Cal. App. 4th 594, 606-07 (1999)).

United States District Court
Northern District of California

Plaintiffs suggest two ways in which Defendants' practice of bundling of the assistance services fee into the event and travel ticket insurance policies are "unlawful." First, Plaintiffs contend that the assistance services fee is actually an illegal agent fee or agent commission in violation of California insurance regulations, Cal. Code Regs., tit. 10, §§ 2189.3 and 2189.5. ECF No. 21 at 11. Second, Plaintiffs argue that the assistance fee is just an additional charge for the insurance policy premium, which was not approved by the California Insurance Commissioner, in violation of California Insurance Code §§ 1861.01(c) and 1861.05. *Id.*

### a.   Agent Fee

Defendants do not appear to dispute that they are prohibited from charging an agent fee with the sale of trip and event insurance policies. ECF No. 16 at 24. Rather, Defendants argue that the fee they charge is not an agent fee but a service fee. *Id.* at 26 ("Plaintiffs' own allegations reflect that these assistance services exist, and 'entitle[] insureds to call a toll-free number to speak with customer service representatives to obtain various types of information, including directions, information concerning nearby restaurants, hotels, and parking garages, weather forecasts, destination information, information relating to passports, and information regarding doctors and medical facilities.'" (citing Compl. ¶ 27)). Plaintiffs state that the characterization of the fee as a "non-insurance service fee" is not dispositive, particularly where, as here, they allege that there is no demand for the services offered and Plaintiffs did not request or agree to purchase the services in the first place. ECF No. 21 at 12.

The only case cited by either party that defines an "agent fee" is *Friedman v. AARP*, 855 F.3d 1047 (9th Cir. 2017). In *Friedman*, the court held that the plaintiff had sufficiently alleged that AARP was receiving an agent fee in violation of California Insurance Code Section 1631 (prohibiting unlicensed persons from soliciting for the sale of insurance). *Id.* at 1055. The court considered two key factors in determining that the 4.95% fee on each sale of UnitedHealth Medigap coverage was an insurance commission. *Id.* at 1050. First, the complaint alleged that all purchases of Medigap coverage were required to be made through AARP, making AARP the only "source" for such coverage. *Id.* at 1053. Second, the court observed that the fee received by AARP was "directly tied to the portion of policies 'sold' by AARP, and [was], in effect, a 'percent

13

of the price of the product.'" *Id.* (quoting *Wayne v. Staples, Inc.*, 135 Cal. App. 4th 466, 478 (2006)).  Rejecting AARP's argument that the payment received was a "royalty" rather than a fee, the court explained that "royalties have nothing to do with the premiums of beneficiaries." *Id.* The court also observed that, to make the payment to AARP, "[n]one of the money [was] taken out of any of the premiums." *Id.*  Taking these factors into account, the court concluded that the plaintiff had "met the not especially onerous burden imposed at the pleading stage of alleging facts making it plausible" that the payment in question was an agent fee. *Id.*

*Friedman* is directly on point.  Plaintiffs' complaint alleges that to purchase ticket insurance for the event tickets bought on Ticketmaster.com or trip insurance for the airline tickets bought on travel websites like Hawaiianairlines.com or United.com, the only offer presented to consumers is the AGA policy.  Compl. ¶¶ 24, 34, 45-47, 52-54, 56-58.  In effect, AGA is the only "source" for insurance on Plaintiffs' ticket purchases.  *See Friedman*, 855 F.3d at 1053.  Plaintiffs also allege that the fee received by AGA for assistance services is calculated based on the cost of the ticket purchased, Compl ¶¶ 29, 41, making it a "percent of the price of the product." *Friedman*, 855 F.3d at 1053.  As Plaintiffs allege, this calculation is consistent with the calculation for the cost of the insurance premium, but bears no reasonable relation to the cost of the service itself.  Compl. ¶¶ 29, 41.

Defendants' only response is that because they offer a service, and because Plaintiffs have not alleged that the service is unavailable, the complaint "confirm[s] that fees allocated to Concierge Services are *not* fees for procuring insurance."  ECF No. 16 at 26 (referring to Compl. ¶ 27).  This mischaracterizes the complaint's allegations and asks the Court to make an unsupported assumption.  First, the complaint alleges that, after a purchase, AGA "identifies a separate charge for 'assistance' services."  Compl. ¶ 27; *see also id.* ¶ 38.  Plaintiffs do not allege that the fees are "allocated" to the provision of Concierge Services; they suggest the opposite.  *See id.* ¶ 30 ("AGA hides its agency fee and the assistance service from consumers at the point of purchase, uses a formula that increases the fee according to the purchase and risk at issue, and does not actually invest in providing a convenient informational assistance service.").  Second, the *name* given to a fee does not determine the *nature* of the fee.  *See Dietrick v. Securitas Sec. Servs.*

14

*USA, Inc.*, 50 F. Supp. 3d 1265, 1276 (N.D. Cal. 2014) (quoting Abraham Lincoln's adage that "calling a tail a leg doesn't make it one"). Were it otherwise, any insurance agent could circumvent the agent fee prohibition by offering an illusory low- or no-cost "service" – including one for which consumers have no use, as Plaintiffs allege here. *See Lara*, 35 Cal. App. 5th at 102 (rejecting the argument that because a fee was for "separate services," it was not part of the premium, finding this would lead to "the absurd result of eviscerating the rate statutes' requirements by allowing insurance company agents to charge 'broker fees' without any CDI oversight or approval"). The relationship between the fees in question and the services Defendants provided raises questions of fact that will be resolved later in the litigation.

The Court concludes that Plaintiffs have plausibly alleged that the fee charged by AGA in connection with purchases of event and travel ticket insurance policies are disguised "agent fees" in violation of California insurance regulations.

**b.      Unapproved premium**

Defendants rely on a similar challenge against Plaintiffs' allegation that the assistance services fee is part of the underlying premium, and that they acted unlawfully by treating it as a separate fee and failing to obtain approval by the California Insurance Commissioner. Defendants point to the complaint's acknowledgement that "the price quoted for the ticket protection is later broken down to the insurance premium and a distinct amount for Concierge Services." ECF No. 16 at 25 (citing Compl. ¶ 25). Therefore, Defendants argue, "the portion of the cost . . . allocated to non-insurance services is not itself an insurance premium that warrants commissioner approval." *Id.* Defendants also argue, more broadly, that courts have acknowledged and approved of the practice of bundled product or service offerings. *Id.* Defendants contend that it makes sense to sell "protection plans with both insurance and assistance components" due to "consumer demand." *Id.* at 26. Defendants cite no authority to guide the Court in how to distinguish a fee that is part of the insurance premium from a fee that is not. *See id.* at 25-26; ECF No. 27 at 14-15.

Plaintiffs ask the Court to consider allegations that "[t]he charges at issue are mandatory, bundled with the calculated premium into a single price, and are based on underwriting risks, not the costs of the supposed assistance service." ECF No. 21 at 13. They direct the Court to two

1    cases for their proposition that the fee in question can be deemed part of the insurance premium.

2    *Id.* at 12 (citing *Mercury Ins. Co. v. Lara*, 35 Cal. App. 5th 82 (2019) and *Troyk v. Farmers Grp.,*

3    *Inc.*, 171 Cal. App. 4th 1305 (2009)).

4           In *Troyk*, the California Court of Appeal upheld the trial court's determination that a

5    service charge, imposed for the payment in full of the stated premium for an automobile insurance

6    policy's one-month term, was a "premium" as used in the California insurance statute mandating

7    the required contents of an insurance policy.  171 Cal. App. 4th at 1315.  The court started by

8    acknowledging that "[n]either section 381 nor any other provision of the Insurance Code defines

9    the term 'premium.'"  *Id.* at 1322-23.  Therefore, as a matter of first impression, the court

10   recognized the common understanding "that a premium is the amount paid for certain insurance

11   for a certain period of coverage."  *Id.* at 1324 (quoting *Interinsurance Exchange of the Automobile*

12   *Club v. Superior Court*, 148 Cal. App. 4th 1218, 1230 (2007)).  Moreover, as a consumer

13   protection statute, the meaning of "premium" was to be devised "from the perspective of the

14   consumer."  *Id.*  The court found that, because the plaintiff was "*required* to pay a service charge

15   in addition to the stated premium [in order] to obtain and pay for . . . insurance coverage," from

16   the insured's perspective, the combined total of the premium and the "service fee" was the

17   "premium" for purposes of the statute.  *Id.*

18          The court in *Lara* relied heavily on *Troyk*, including for the well-established principle that

19   "premium is comprised of the net premium and 'the direct and indirect costs associated with

20   providing' the insurance and 'any profit or additional assessment charged.'"  35 Cal. App. 5th at

21   97 (quoting *Troyk*, 171 Cal. App. 4th at 1325).  Rejecting the trial court's finding that the "broker

22   fees" could not be premium because they were paid for separate comparative rate shopping

23   services, the court credited the Commissioner's finding that the fees were actually agent fees,

24   "which are part of premium and must be included in a rate application for prior approval."  *Id.* at

25   99; *see also id.* at 94 (explaining the Commissioner's determination as "[b]ased on the language of

26   the rate statutes and regulations, the purpose of Proposition 103, and Bulletin 80-6").  The court

27   further distinguished the Installment Payment cases, *In re Insurance Installment Fee Cases*, 211

28   Cal. App. 4th 1395 (2012) and *Interinsurance* Exchange, 148 Cal. App. 4th 1218 (2007),

1   explaining that the fees in those cases were not premium because they were optional depending on

2   the payment plan chosen by the consumer and were paid only by consumers who received the

3   benefit.  *Lara*, 35 Cal. App. 5th at 103.

4          Once again, the Court finds that Plaintiffs have plausibly alleged that the fee in question is

5   part of the insurance premium, required to be approved by the California Insurance Commissioner

6   under Sections 1861.01(c) and 1861.05 of the Insurance Code.  First, if it is ultimately determined,

7   as Plaintiffs have plausibly alleged, that the fee charged by AGA for "assistance services" is

8   actually an agent fee, then, under *Lara*, it is "part of premium and must be included in a rate

9   application for prior approval."  *See Lara*, 35 Cal. App. 5th at 99.  Moreover, even if not an agent

10  fee, it is plausible that a factfinder could find the fee part of the overall premium, particularly in

11  light of Plaintiffs' allegations that the offer was presented to consumers as a single total cost for

12  the insurance policy.  *See, e.g.*, Compl. ¶ 25 ("The offer is plainly described as 'Ticket Insurance'

13  and 'Event Ticket Insurance for an additional $[amount] per ticket.'  Accordingly, reasonable

14  consumers understand the insurance premium to equal the quoted price.").

15         In sum, the Court finds that Plaintiffs have plausibly alleged that the assistance services fee

16  is an agent fee charged in violation of Cal. Code Regs., tit. 10, §§ 2189.3 and 2189.5, and/or an

17  additional cost of the premium charged without approval by the Insurance Commissioner in

18  violation of Cal. Ins. Code, §§ 1861.01(c) and 1861.05.  Having plausibly alleged predicate

19  violations, therefore, Plaintiffs have stated a claim for a violation of the UCL's unlawful prong.

20                    **2.      Unfair Prong of the UCL**

21         There is a split among California courts as to the correct test for the "unfair" prong of the

22  UCL.  *See Graham v. Bank of Am., N.A.*, 226 Cal. App. 4th 594, 612 (2014); *MacDonald*, 37 F.

23  Supp. 3d at 1098-99.  Under one test, "the court examines the practice's 'impact on its alleged

24  victim, balanced against the reasons, justifications and motives of the alleged wrongdoer . . .

25  weigh[ing] the utility of the defendant's conduct against the gravity of the harm to the alleged

26  victim.'"  *Graham*, 226 Cal. App. 4th at 612 (quoting *Smith v. State Farm Mutual Auto. Ins. Co.*,

27  93 Cal. App. 4th 700, 718-19 (2001)).  Under a second test, a party alleges an "unfair business

28  practice" where "defendant's conduct is tethered to an underlying constitutional, statutory or

United States District Court
Northern District of California

17

1   regulatory provision." *Id.* (quoting *Wilson v. Hynek*, 207 Cal. App. 4th 999, 1008 (2012))

2   (internal quotations and alterations omitted).  Under this test, "a business practice may be

3   'unfair . . . in violation of the UCL even if the practice does not violate any law.'" *Rovai v. Select*

4   *Portfolio Servicing, Inc.*, No. 14-cv-1738-BAS-WVG, 2018 WL 3140543, at *16 (S.D. Cal. June

5   27, 2018) (quoting *Olszewski v. Scripps Health*, 30 Cal. 4th 798, 827 (2003)).  In that case, the test

6   is satisfied if the practice "offends an established public policy." *Id.* (quoting *Smith*, 93 Cal. App.

7   4th at 719). [2]

8       Defendants argue that Plaintiffs fail to state a claim for unfair conduct under any test, but

9   their argument is largely premised on the contention that Plaintiffs fail to plausibly allege any

10   unlawful conduct.  ECF No. 16 at 26-27.  The Court has now rejected that argument and

11   separately finds that Plaintiffs have plausibly alleged that Defendants conduct was unfair.

12       Under the balancing test, Plaintiffs have alleged that "the utility of [Defendants'] conduct"

13   is outweighed by "the gravity of the harm" to Plaintiffs and class members.  *See Fraley v.*

14   *Facebook, Inc.*, 830 F. Supp. 2d 785, 813 (2011) (quoting *S. Bay Chevrolet v. Gen. Motors*

15   *Acceptance Corp.*, 72 Cal. App. 4th 861, 886-87 (1999)).  Defendants argue that there are

16   "benefits [to] selling multiple products or services in a single package," and that there is

17   "consumer demand" for a "single product.  ECF No. 16 at 25-26.  Plaintiffs allege, however, that

18   multiple products in a single package is not what is being offered at the point of sale, and that

19   Defendants' marketing practices cannot be explained by "consumer demand."  Compl. ¶¶ 2, 31,

20   43, 48, 72; *see also id.* ¶ 28 ("Consumers would not pay for such a service if given the choice

21   whether to do so.).  Further, Plaintiffs have alleged financial injury as a result of Defendants'

22   practice.  *See, e.g., id.* ¶ 74 ("Plaintiff Chuanroong would have paid less than she did if AGA and

23   Jefferson had complied with California law and charged her only an approved premium, rather

24

25   ─────────────────────
    [2] There is a third test under which a party alleges an "unfair practice" if "(1) [t]he consumer injury
26   [is] substantial; (2) the injury [is not] outweighed by any countervailing benefits to consumers or
    competition; and (3) it [is] an injury that consumers themselves could not reasonably have
27   avoided." *Graham*, 226 Cal. App. 4th at 613, (quoting *Camacho v. Auto. Club of S. Cal.*, 142 Cal.
    App. 4th 1394, 1403 (2006)).  The Ninth Circuit has rejected the *Camacho* test except as to claims
28   of unfair competition between direct competitors. *See Lozano v. AT&T Wireless Servs., Inc.*, 504
    F.3d 718, 736 (9th Cir. 2007).

United States District Court
Northern District of California

1    than unfairly, unlawfully, and deceptively including an undisclosed, additional fee in the cost of

2    the 'insurance.'").  The financial injury to consumers of being charged an additional fee, on top of

3    the insurance premium, for a service they do not want or need outweighs any potential benefit of a

4    bundled product in these circumstances – particularly when Defendants could easily make their

5    assistance services available as an optional "add-on."

6        Under the "public policy" test, Plaintiffs have alleged a UCL claim that Defendants'

7    conduct violates California's long-standing public policy to ensure that the costs of insurance are

8    fair, transparent and affordable.  *See Lara*, 35 Cal. App. 5th at 88 ("The Insurance Code has

9    prohibited the charging of unfair premiums since 1947."); *see also Donabedian*, 116 Cal. App. 4th

10   at 981 (quoting Proposition 103, which added premium rate-review requirements under California

11   law, as having the purpose "to protect consumers from arbitrary insurance rates and practices . . .

12   and to ensure that insurance is fair, available, and affordable for all Californians"); *Garamendi*, 32

13   Cal. 4th at 1042 ("[Proposition 103] addresses the underlying factors that may impermissibly

14   affect rates charged by insurers and lead to insurance that is unfair, unavailable, and

15   unaffordable.").  Plaintiffs allege that Defendants' practice of bundling a mandatory but unwanted

16   assistance services product with the sale of insurance policies results in "Defendants collect[ing]

17   more from consumers than they should."  Compl. ¶ 31; *see also id.* ¶ 42 (alleging that AGA "uses

18   a formula that increases the fee according the purchase and risk at issue, and does not actually

19   invest in providing a convenient informational assistance service").  As such, an additional, non-

20   optional fee, even if it comes with "assistance services," may be contrary to California's

21   established policy seeking to ensure fair and affordable insurance products.

22       In sum, at the pleading stage, Plaintiffs have plausibly alleged a practice injurious to

23   consumers and contrary to California's public policy.  They have stated a claim for a violation of

24   the UCL's unfair prong.

25                    **3.       Fraudulent Prong of the UCL**

26       Plaintiffs' final UCL allegation, under the fraudulent prong, is rooted in their second

27   theory – that Defendants acted deceptively by misrepresenting their offers of insurance, using

28   language suggesting that the price advertised was solely for the insurance premium, when it also

United States District Court
Northern District of California

included a hidden fee for a non-insurance service.  Compl. ¶ 93.  This same theory also supports

Plaintiffs' FAL cause of action.  *Id.* ¶ 105. The California Supreme Court has recognized that any

violation of the FAL necessarily violates the UCL.  *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 950

(2002).  Accordingly, courts often analyze the two claims together.  *See Hadley v. Kellogg Sales

Co.*, 273 F. Supp. 3d 1052, 1063-64 (N.D. Cal. 2017) (analyzing FAL and UCL claims

together); *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 n.8 (2009) (same); *Consumer Advocates v.

Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1360 (2003) (same).  "Both parties have chosen

to address these claims together, and so, the Court will address the fraudulent prong of [Plaintiffs']

UCL claim with its FAL claim below."  *Schrenk v. Carvana, LLC*, No. 2:19-cv-01302 TLN CKD,

2020 WL 4339969, at *5 (E.D. Cal. July 28, 2020).

### C.    FAL Claim

The FAL prohibits any "unfair, deceptive, untrue, or misleading advertising."  Cal. Bus. &

Prof. Code § 17500.  Defendants argue that Plaintiffs' FAL and other fraud-based claims should

be dismissed for (1) failure to satisfy the heightened pleading standard of Rule 9, and (2) failure to

allege a misrepresentation that satisfies the "reasonable consumer" test.  ECF No. 16 at 18, 20.

#### a.    Rule 9 Sufficiency of pleadings

If a complaint alleges fraud, Rule 9(b) requires the plaintiff to "state with particularity the

circumstances constituting fraud . . . ."  Fed. R. Civ. P. 9(b). "To satisfy Rule 9(b), a pleading must

identify the who, what, when, where, and how of the misconduct charged, as well as what is false

or misleading about [the allegedly fraudulent] statement, and why it is false."  *United States ex rel.

Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (quotation marks

and citations omitted).  Likewise, when UCL and FAL claims "are premised on misleading

advertising or labeling," whether affirmative misrepresentations or material omissions, "Rule 9(b)

requires the plaintiff to allege 'the particular circumstances surrounding [the] representations' at

issue."  *In re Arris Cable Modem Consumer Litig.*, No. 17-cv-01834-LHK, 2018 WL 288085, at

*8 (N.D. Cal. Jan. 4, 2018) (citing *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir.

2009)); *see also Von Koenig v. Snapple Beverage Corp.*, 713 F. Supp. 2d 1066 (2010).  These

circumstances include what the alleged misrepresentations "specifically stated . . . when [the

plaintiff] was exposed to them . . . which ones he found material," and which ones "he relied upon in making his decision to buy" the product. *Kearns*, 567 F.3d at 1126. "[A] plaintiff must set forth *more* than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Vess*, 317 F.3d at 1106 (quoting *Decker v. GlenFed, Inc.*, 42 F.3d 1541, 1548 (9th Cir. 1994)).

In *Von Koenig*, the plaintiffs satisfied the Rule 9(b) pleading standard by identifying that defendant Snapple Beverage Corporation (the "who") had labeled its drink products with the phrase "All Natural" (the "what") during the period from March 2005 to March 2009 (the "when"). 713 F. Supp. 2d at 1077. Plaintiffs submitted examples of the labels from several bottles of the defendant's products, all of which contained the allegedly deceptive phrase "All Natural," and explained why they were deceived by this labeling (the "where" and "how"). *Id.* This, the court held, satisfied the Rule 9(b) standard. *Id.* at 1078.

Similarly, here Plaintiffs have alleged the "who" and "what" in their allegations that Defendant AGA, as the agent of Defendants Jefferson and BCS, presented Plaintiffs with offers for insurance without properly disclosing that the quoted price of insurance included a fee for assistance services. Compl. ¶¶ 10, 22, 25, 35-36, 46, 57, 61, 65, 69. The "when" is captured by the specific dates of purchase alleged by each Plaintiff. *Id.* ¶¶ 45, 52, 56, 60, 64, 68. And as in *Von Koenig*, the "where" and "how" have been demonstrated by Plaintiffs' inclusion of exemplary screenshots of the allegedly deceptive offers, and their description of how those offers were misleading. *Id.* ¶¶ 24, 34, 47, 54, 58, 62, 66, 70; *Von Koenig*, 713 F. Supp. 2d at 1077; *see also Peviani v. Nat. Balance, Inc.*, 774 F. Supp. 2d 1066, 1071 (S.D. Cal. 2011) (crediting plaintiff's sample pictures of the product's labels and list of challenged statements and their deceptive explanation as satisfying the "where" and "how").

Defendants argue that these allegations fall short for two reasons. First, Defendants argue that Plaintiffs have not alleged that any statements are "actually false." ECF No. 16 at 19. The Court disagrees. Plaintiffs have alleged that the offers presented by Defendants on event and travel websites quote a total price for "insurance" and omit the fact that the price includes a services fee and that the actual cost of the insurance is lower than the price being quoted to the

United States District Court
Northern District of California

consumer. Compl. ¶¶ 24-25, 34-35, 47, 73. They argue that these offers are deceptive and inaccurate because they do not tell consumers that they are being charged for non-insurance services on top of the insurance product premium. *Id.* ¶¶ 25, 35-36; *see also id.* ¶ 49 ("Plaintiff Elgindy was not aware of the existence of any fee in addition to the insurance premium . . . at the time he purchased the ticket insurance. As a result of [Defendants'] material omissions, Plaintiff Elgindy agreed to pay AGA and Jefferson to insure his event tickets and believed that the amount he paid AGA and Jefferson was for the ticket insurance only . . . ."). Under *Hinojos*, and construing the allegations in the light most favorable to Plaintiffs, Defendants' offers qualify as false statements. *Hinojos*, 718 F.3d at 1107 (describing defendant's representation that a good's price was a "sale" as "false price information"). This also distinguishes *Chuang*, where plaintiffs pointed to aspects of the product's labeling but "d[id] not adequately allege how the images and statements [were] false" and where other evidence before the court indicated that the labeling was entirely accurate. *See Jonathan Chuang v. Dr. Pepper Snapple Grp., Inc.*, No. CV 17-01875-MWF (MRWx), 2017 WL 4286577, at *4 (C.D. Cal. Sept. 20, 2017).

Second, Defendants argue that the example screenshots are not enough because Plaintiffs have not alleged which of the sample offers they saw. ECF No. 16 at 19. The Court agrees with Plaintiffs that they are not required to submit screenshots of the actual offers that were presented to them on the day of their purchases, ECF No. 21 at 21, just as the *Von Koenig* plaintiffs were not required to include photographs of the specific Snapple beverage that they had previously purchased (and presumably consumed). *See Von Koenig*, 13 F. Supp. 2d at 1077. Plaintiffs identify each date of purchase and specifically allege that the offers that they were presented with were "substantially similar" to the examples they provide. Compl. ¶¶ 46, 53, 57, 61, 65, 69. This satisfies the standard.[3] The Court finds that Plaintiffs have satisfied the Rule 9(b) pleading requirements for their fraud-based claims.

### b.       Reasonable Consumer Test

Claims alleging fraudulent conduct under the UCL or false advertising under the FAL are

---

[3] Moreover, if any party is likely to have access to the precise offer that was presented to Plaintiffs, it is Defendants.

governed by the "reasonable consumer" test.  *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (citing *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) and *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 506-07 (2003).  "Under this test, a plaintiff must show that members of the public are likely to be deceived."  *Peacock v. Pabst Brewing Co., LLC*, No. 2:18-cv-00568 TLN CKD, 2020 WL 5847244, at *3 (E.D. Cal. Oct. 1, 2020).  Because the UCL and FAL prohibit "not only advertising which is false, but also advertising which although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public," *Leoni v. State Bar*, 39 Cal. 3d 609, 626 (1985), the determination of "whether a business practice is deceptive will usually be a question of fact," *Williams*, 522 F.3d at 938.  "For that reason, courts grant motions to dismiss under the reasonable consumer test only in rare situations in which the facts alleged in the complaint 'compel the conclusion as a matter of law that consumers are not likely to be deceived.'"  *Organic Consumers Ass'n v. Sanderson Farms, Inc.*, 284 F. Supp. 3d 1005, 1014 (N.D. Cal. 2018) (quoting *Chapman v. Skype Inc.*, 220 Cal. App. 4th 217, 226-27 (2013).

Here, Plaintiffs plausibly allege that a reasonable consumer could find Defendants' offers for event and travel insurance misleading.  Plaintiffs Elgindy and Chuanroong each allege that in each instance they were presented with an offer to purchase insurance, a single price was stated as the price of the "insurance," and that they were not aware that the price listed included a separate fee for non-insurance services.  Compl. ¶¶ 45-47, 49, 52-54, 56-58, 60-62, 64-66, 68-70, 73.  In addition, the complaint alleges that consumers who purchase event and travel tickets online and through mobile applications, and would thus be exposed to Defendants' insurance offer, also use the internet and online search tools to accomplish the exact services for which Defendants charge the assistance fee.  *Id.* ¶¶ 28, 39.  " Given that reality, and given that Defendants make no mention of any separate charges for such services at the time they present their insurance offers to consumers, consumers have no reason to suspect they are being charged for AGA's non-insurance assistance service at the time they insure their event ticket purchases."  *Id.*

Despite this, Defendants ask the Court to find that consumers are not likely to be deceived by the insurance offers as a matter of law.  ECF No. 16 at 20.  They argue that Plaintiffs were

United States District Court
Northern District of California

given notice of the "protection plan details," both during the offer stage and during the post-purchase cancellation period. *Id.* at 21. First, Defendants point to the offer's reference to the "24/7 assistance" feature and the statement that the insurance allows a consumer to "get help when you need it." Compl. ¶ 34. Notably, Plaintiffs allege that Defendants made this disclosure in their offers for travel insurance but not those for event tickets. *See id.* ¶ 24. Moreover, the reference to "24/7 assistance" in the trip insurance offers might reasonably be understood to be an aspect of the insurance coverage, given that the offers did not mention any separate fee for such assistance. *Id.* ¶¶ 36, 72-73, 105, 117. Second, Defendants highlight that each offer includes a hyperlink to the plan disclosures, and that "the entire scope of the plan and the allocated portion of the cost is yet again disclosed in the cover letter and policy documents emailed to [the] consumer immediately after purchase, with the option to cancel the purchase within 10 days." ECF No. 16 at 23 (citing Compl. ¶¶ 34, 50, 63). If Defendants' offers are misleading, the problem is not cured by a disclosure somewhere other than the offer. *See Williams*, 552 F.3d at 940 ("We disagree with the district court that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box.").

### D.     Common-Law Fraud Claim

"The elements of a cause of action for fraud in California are: '(1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or "scienter"); (3) intent to defraud, i.e. to induce reliance; (4) justifiable reliance; and (5) resulting damage." *Kearns*, 567 F.3d at 1126 (citing *Engalla v. Permanente Med. Grp., Inc.,* 15 Cal. 4th 951, 974 (1997)). Beyond their Rule 9(b) and reasonable consumer arguments, Defendants also move to dismiss Plaintiffs' common-law fraud claim for failure to plead a misrepresentation, intent, or reliance. ECF No. 16 at 29-30.

The Court rejects Defendants' argument that Plaintiffs have failed to allege a misrepresentation for the reasons set forth above. Plaintiffs have plausibly alleged that Defendants' offers of insurance conceal or fail to sufficiently disclose that the quoted price for the product includes a fee for non-insurance services. Compl. ¶¶ 24-25, 34-36, 47, 73.

The Court agrees, however, that the complaint falls short of alleging intent.  "While the heightened pleading requirements of Rule 9(b) do not apply to allegations of knowledge or intent, Plaintiffs must still plead facts establishing scienter with the plausibility required under Rule 8(a)."  *DeLeon v. Wells Fargo Bank, N.A.*, No. 10-cv-01390-LHK, 2011 WL 311376, at *8 (N.D. Cal. Jan. 28, 2011) (internal citation omitted).  The complaint contains only conclusory allegations that Defendants "knew or should have known" that consumers did not understand they were being charged for an assistance services fee, and that "[n]evertheless, Defendants continued to advertise their insurance policies as part of a scheme with the intent not to sell the insurance as advertised and to mislead consumers regarding the nature and extent of the services . . . [and] the prices of those insurance and noninsurance services."  Compl. ¶ 119.  "'[M]ere conclusory allegations' that representations or omissions 'were intentional and for the purpose of defrauding and deceiving plaintiffs . . . are insufficient.'"  *Pemberton v. Nationstar Mortg. LLC*, 331 F. Supp. 3d 1018, 1047 (S.D. Cal. 2018) (quoting *Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115 (2007)) (ellipsis in original).  Because Plaintiffs do not allege any facts as to Defendants' knowledge that consumers were being misled, these allegations do not support an inference of intent.  *Cf. Ahn v. Scarlett*, No. 5:16-cv-05437-EJD, 2017 WL 1196828, at *3 (N.D. Cal. Mar. 31, 2017) (finding knowledge of falsity where plaintiffs "described the circumstances surrounding [defendant's] representation" making it clear that "the difference between the earlier and the later statements is not merely the difference between two permissible judgments, but rather the result of a falsehood").   Absent a plausible allegation of fraudulent intent, Plaintiffs' common-law fraud claim must be dismissed.

### E.    Remedies

The final arguments raised by Defendants' motion to dismiss address Plaintiffs' requested remedies.  First, Defendants argue that Plaintiffs have failed to state a claim entitling them to equitable relief because they have an adequate remedy at law.  ECF No. 16 at 31.  Second, Defendants argue that Plaintiffs have failed to state a claim entitling them to punitive damages because they have not alleged oppression, fraud or malice by Defendant entities.  *Id.* at 33.

United States District Court
Northern District of California

1.   **Adequacy of Remedies at Law**

"[A] federal court must apply traditional equitable principles before awarding restitution under the UCL and CLRA." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 841 (9th Cir. 2020). This includes the equitable principle that in order to obtain an equitable remedy, a plaintiff must lack an "adequate remedy at law." *Mort v. U.S.*, 86 F.3d 890, 892 (9th Cir. 1996); *see also Anderson v. Apple Inc.*, No. 3:20-cv-02328-WHO, 2020 WL 6710101, at *7 (N.D. Cal. Nov. 16, 2020) ("[The adequate remedy at law] principle applies squarely to an award of restitution – an equitable remedy – under the UCL.").

Defendants contend that because "Plaintiffs' claims for equitable relief and damages are based on the same theory and factual allegations," they are not pleaded in the alternative. ECF No. 16 at 32. Accordingly, Defendants argue, Plaintiffs are "'required to allege facts suggesting that damages under [their other claims] would not provide adequate relief.'" *Id.* (quoting *Duttweiler v. Triumph Motorcycles (Am.) Ltd.*, 2015 WL 4941780, *8 (N.D. Cal. Aug. 19, 2015)).

As the Court has described above, Plaintiffs' claims under the unlawful and unfair prongs of the UCL are rooted in a different theory than Plaintiffs' common-law fraud, FAL, and UCL fraudulent prong claims. Only equitable claims are available on Plaintiffs' theory that Defendant's services fee violates California insurance statutes and regulations. Therefore, Plaintiffs are entitled to pursue equitable relief under this theory. *See In re JUUL Labs, Inc., Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 19-MD-02913-WHO, 2020 WL 6271173, at *55 (N.D. Cal. Oct. 23, 2020) (suggesting that a UCL claim can survive the adequate remedy at law challenge where "the allegations regarding unfair conduct are not otherwise coextensive with plaintiffs' legal claims").

Plaintiffs' fraud-based claims, however, are all rooted in the same theory and factual allegations and therefore are not pleaded in the alternative. *See In re Ford Tailgate Litig.*, No. 11-cv-2953-RS, 2014 WL 1007066, at *5 (N.D. Cal. Mar. 12, 2014) ("[W]here the unjust enrichment claim relies upon the same factual predicates as a plaintiff's legal causes of action, it is not a true alternative theory of relief but rather is duplicative of those legal causes of action." (citation omitted)). To show they are entitled to equitable relief, Plaintiffs must demonstrate that they lack

1    an adequate remedy at law.

2         As to their request for forward-looking injunctive relief, Plaintiffs contend that a legal

3    damages claim would do nothing to prevent Defendants' continuation of their allegedly deceptive

4    conduct in the future.  ECF No. 21 at 24; *see also* Compl. ¶¶ 102, 115.  Plaintiffs suggest,

5    therefore, that damages are inadequate to remedy their potential future harms.  *Id.*  The Court has

6    already held, however, that Plaintiffs lack standing under their fraud-based theory to seek

7    injunctive relief.

8         As to their request for restitution to remedy their past harms, Plaintiffs argue that the

9    significant differences in proof and certainty establish that their common-law fraud claim cannot

10   serve as an adequate remedy at law displacing their fraud-based UCL and FAL claims.  ECF No.

11   21 at 24-25; *see also* Compl. ¶¶ 100, 113.  Defendants do not engage in this argument, and instead

12   merely restate the inadequate remedy rule with a conclusory assertion that Plaintiffs have failed to

13   satisfy it.  ECF No. 27 at 20.  Since Defendants do not cite any authority holding that a fraud claim

14   for damages by definition defeats a fraudulent UCL/ FAL claim for restitution, the Court proceeds

15   to evaluate the sufficiency of Plaintiffs' inadequate remedy argument.

16        The Court finds that Plaintiffs have shown that they lack an alternative remedy at law to

17   their claims seeking restitution under the fraudulent prong of the UCL and the FAL.  Although

18   rooted in the same theory, the elements of a common-law fraud claim require proof of conduct

19   beyond that which must be shown to establish liability under the UCL and FAL.  *See Naeyaert v.*

20   *Kimberly-Clark Corp.*, No. ED CV17-00950 JAK (JPRx), 2018 WL 6380749, at *6 (C.D. Cal.

21   Sept. 28, 2018) ("A claim under the fraudulent prong of the UCL does not require a showing that

22   the statement was false, that the party who made it knew that it was false or that the plaintiff

23   reasonably relied on the statement."); *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009) (the

24   UCL "focus[es] on the defendant's conduct, rather than the plaintiff's damages, in service of the

25   statute's larger purpose of protecting the general public against unscrupulous business practices.");

26   *see also Hadley*, 273 F. Supp. 3d at 1063 (the same standard for fraudulent activity governs the

27   UCL and FAL).  These differences are highlighted by the fact that the Court has held that

28   Plaintiffs have stated a claim for fraudulent conduct under the UCL and false advertising under the

United States District Court
Northern District of California

27

1   FAL, but failed to state a claim for common-law fraud.  Thus, Plaintiffs have shown that they lack

2   a remedy at law that is "equally prompt and certain" as their equitable claims.  *See Am. Life Ins.*

3   *Co. v. Stewart*, 300 U.S. 203, 214 (1937).  *Sonner* does not bar these claims.

### 2.   Punitive Damages

5   Finally, Defendants argue that Plaintiffs fail to plead the "oppression, fraud, or malice"

6   required to support an award of punitive damages.  ECF No. 16 at 33; Cal. Civ. Code § 3294(a).

7   "Something more than the mere commission of a tort is always required for punitive damages.

8   There must be circumstances of aggravation or outrage, such as spite or malice, or a fraudulent or

9   evil motive on the part of the defendant, or such a conscious and deliberate disregard of the

10   interests of others that his conduct may be called willful or wanton."  *Taylor v. Superior Court*, 24

11   Cal. 3d 890, 894-895 (1979) (internal quotation marks, alterations, and citation omitted).

12   Defendants reason that, because a corporate entity cannot commit willful and malicious

13   conduct, Plaintiffs' claim for punitive damages fails if they have not alleged that any officer,

14   director, or managing agent of Defendants acted with fraud, oppression, or malice.  *Id.* (citing *In*

15   *re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d 1113, 1147–48 (N.D. Cal.

16   2018)).  However, "Plaintiffs may meet the standard for pleading punitive damages against

17   corporate employers by showing that the harm alleged could not have occurred in the absence of

18   authorization or ratification by corporate employer."  *Anaya v. Machines de Triage et Broyage*,

19   No. 18-cv-01731-DMR, 2019 WL 359421, at *5 (N.D. Cal. Jan. 29, 2019).  In *Shaterian*, that

20   standard was met because, even though plaintiff did not plead authorization or ratification, the

21   court found that allegedly fraudulent loan would not have been made if it was not authorized or

22   ratified by corporate employer.  *Shaterian v. Wells Fargo Bank, N.A.*, 829 F. Supp. 2d 873, 888

23   (N.D. Cal. 2011).  The same is true here.

24   Although the Court rejects Defendants' corporate employer argument, it nonetheless

25   dismisses Plaintiffs' punitive damages claim because the Court has dismissed Plaintiffs' fraud

26   claim, which is the only claim that would support an award of punitive damages.

### CONCLUSION

28   For the foregoing reasons, the Court grants Defendants' motion to dismiss as to Plaintiffs'

28

1    claim of common-law fraud.  The Court denies the motion as to Plaintiffs' claims under the UCL

2    and FAL.  Plaintiffs are granted leave to amend.  An amended complaint is due 21 days from the

3    date of this order.  Failure to timely file an amended complaint will result in dismissal of the

4    common-law fraud claim with prejudice.

5         **IT IS SO ORDERED.**

6    Dated:  March 29, 2021

7    _____

8                    JON S. TIGAR
                United States District Judge