**GUTRIDE SAFIER LLP**
SETH A. SAFIER (State Bar No. 197427)
seth@gutridesafier.com
MARIE A. MCCRARY (State Bar No. 262670)
marie@gutridesafier.com
HAYLEY A. REYNOLDS (State Bar No. 306427)
hayley@gutridesafier.com
100 Pine St., Suite 1250
San Francisco, California 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

STEPHEN M. RAAB (appearing pro hac vice)
stephen@gutridesafier.com
305 Broadway, 7th Floor
New York, NY 10007
Telephone: (415) 639-9090 x109

*Attorneys for Plaintiffs*

**WINSTON & STRAWN**
GAYLE I. JENKINS (State Bar No. 168962)
gjenkins@winston.com
JANELLE A. LI-A-PING (State Bar No. 330805)
jliaping@winston.com
333 S. Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 615-1700
Facsimile: (213) 615-1750

ELIZABETH J. IRELAND (appearing pro hac vice)
eireland@winston.com
300 S. Tryon Street # 1600
Charlotte, NC 28205
Telephone: (704) 350-7700

*Attorneys for Defendants*
AGA Service Company,
Jefferson Insurance Company and
BCS Insurance Company

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADAM ELGINDY and JULIANNE CHUANROONG, on behalf of themselves, the general public, and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AGA SERVICE COMPANY (d/b/a ALLIANZ GLOBAL ASSISTANCE), JEFFERSON INSURANCE COMPANY, and BCS INSURANCE COMPANY,<br><br>Defendants. | Case No. 20-cv-06304-JST<br><br>**JOINT LETTER RE: DETAILED DISCOVERY OF REVENUES AND EXPENSES** |

After meeting and conferring on September 23, 2021, and a further written exchange on September 28th, 2021, the Parties submit this joint letter regarding discovery that Plaintiffs contend is necessary to determine whether and to what extent Defendants used revenues from assistance fees to cover what Plaintiffs contends are Defendants' insurance-related expenses. Defendants contend that their prior stipulated facts regarding the collection, distribution and use of funds paid by consumers for the protection plans (the "Stipulated Facts") provide the underlying facts that are relevant.

**Background**

Plaintiffs allege that Defendants' practice of charging fees for a supposed "non-insurance assistance service" is illegal, unfair and deceptive because, among other things: (1) the fees are embedded in the insurance transactions without any option to decline the fees; (2) the fees are not adequately disclosed to consumers; and (3) evidence will show that the fees are **not** genuinely for a separate non-insurance business but are used as an insurance agent's fee and/or as an unauthorized additional premium for Defendants' insurance business. Defendants contend that it is entirely legal to sell insurance benefits and non-insurance services in a single plan offered at a single price, and deny the remaining allegations. The parties dispute the proper scope of discovery regarding the third theory identified above.

Plaintiffs' first set of document requests sought: documents establishing the costs of the assistance services (RFPs 9, 10); communications with third-party retailers through whom the insurance is sold, regarding pricing and compensation (RFP 24); and contracts with the retailers (RFP 34). Defendants objected to the scope of those requests and stated reasons that they will not produce such documents. (See Ex. 1.) The parties previously filed a dispute letter regarding RFP 34 (the contracts). (ECF No. 50.) The Court ordered Defendants to produce (1) a redacted exemplar contract with a retail partner and (2) written stipulations. (ECF No. 60 at ¶ 4.) The Court indicated the parties could return to the Court if Plaintiffs believe further information was needed. On August 20, 2021, Defendants produced stipulated facts and a redacted exemplar contract, and amendment thereto, regarding travel insurance.

On August 23, 2021, Plaintiffs proposed an ESI search string that would identify documents responsive to RFP 24 and 34. Plaintiffs also requested a fully unredacted contract with Live Nation (Ticketmaster) to cover the event ticket insurance aspect of this case. Consistent with their objections, Defendants declined both.

**Plaintiffs' Statement**

"Follow the money" is the rule not only for good journalism but also for effective discovery in litigation. Defendants' refusal to allow discovery of financial facts is dragging this case out and depriving Plaintiffs of critical information.

It is unlawful for Defendants to charge and use assistance fees to pay expenses that should be included in the premiums of the policies, as a way of evading review and approval of the total cost of insurance. *See* Cal. Ins. Code §§ 1861.01(c), 1861.05; Cal. Code Regs. tit. 10, § 2360(c). In order to determine whether such unlawful activity occurred, Plaintiffs must review the actual revenues, expenses, and transfers that occurred after consumers were charged for both insurance and a supposedly separate "non-insurance" assistance service. That is the only way to resolve disputes between the parties regarding what the assistance fees were (and are) for and whether they were (and are) illegal or unfair. Defendants, of course, want to hide the details of that money trail and have proposed offering stipulations (which will be formulated by their attorneys to avoid providing specific facts that would help Plaintiffs' case) in lieu of evidence. That, however, is patently insufficient. *See Johnson v. Ameriprise Fin.*, No. C 07-3168 PJH (JL), 2008 U.S. Dist. LEXIS 143920, at *2, 9-10 (N.D. Cal. Aug. 19, 2008) (holding proposal of stipulated facts in lieu of producing tax return was insufficient when the evidence went directly "to the gravamen of Plaintiff's claim" and noting "a mere stipulation would not allow Defendant to see the actual dollars of business expenses" at issue and assess them); *Cohen v. Trump*, No. 13-CV-2519-GPC (WVG), 2015 U.S. Dist. LEXIS 74542, at *9 (S.D. Cal. June 9, 2015) (holding that "Plaintiff should not be forced to rely on a stipulation" in lieu of deposition testimony). Indeed, the stipulation and redacted exemplar contracts that Defendants have already produced confirm the need for deeper discovery on these topics. (Defendants have designated the stipulation as highly confidential but Plaintiffs are willing to submit those documents for in camera review.) The fact that insurance and supposedly "non-insurance" funds and expenses are commingled in a single account makes it essential to trace the amounts going into and out of that account, to determine whether Defendants' characterization of assistance services as a separate product is a fiction intended to circumvent insurance regulations.

On September 21, 2021, Plaintiffs served (a) an additional interrogatory on each Defendant, seeking revenue and expense numbers in multiple categories; and (b) corresponding document requests

(RFPs 64-79), seeking documents establishing that financial and transactional information. The deadline for Defendants' responses to those requests is not until October 21, 2021; however, Plaintiffs mention them here because the discovery sought is related to the information sought by Plaintiffs' first set of document requests, the parties have conferred about RFPs 9, 10, 24, and 34, and generally about Interrogatory 10 and RFPs 64-79, and Defendants continue to object to all such requests.

Plaintiffs tried to resolve this dispute by offering to defer most of the document discovery regarding these topics if Defendants (1) adequately answer the pending interrogatories; (2) provide annual accounting documents showing AGA's revenues and expenses as an insurance producer and as a provider of assistance services during the class period; and (3) provide a sample of documents, over a limited period, showing monthly sales figures, revenues, and compensation for five of the retailers with the highest revenue flows. Plaintiffs would then assess that information and confer with Defendants if Plaintiffs need additional documents or information. Defendants rejected that proposal.

Defendants repeated delays belie their arguments that they are just trying to be efficient with discovery. For example, on May 12, 2021, Plaintiffs served an interrogatory requiring Defendants to identify annual sales revenues for each insurance product sold in California during the class period. Defendants *still* have not done so, despite multiple follow-ups and despite representing to the Court in a joint filing that they would produce such information by August 28 (ECF No. 55). Defendants also redacted key information from the exemplar contract and produced the exemplar contract and stipulation three hours after the court-ordered deadline. There is a deadline for class certification on February 4, 2022. Plaintiffs respectfully and urgently request that the Court order Defendants to produce the key information in this case which will help drive the resolution of this case, including ordering Defendants: (1) to produce the long overdue answer to Plaintiffs' Interrogatory No. 3; (2) to produce marketing contracts with Defendants' top five retail partners and with Ticketmaster with unredacted compensation terms; (3) to run Plaintiffs' proposed ESI search and produce communications with retailers regarding the payments at issue; and (4) to produce any other documents in Defendants' possession responsive to RFPs 9, 10, 24, and 34.

///

**Defendants' Statement**

Plaintiffs' claim: (1) that bundling of insurance benefits and non-insurance services in a single protection plan is illegal under California law (even though the California Department of Insurance approves bundled plans); and (2) that where both components exist in a single plan, the entirety of expense for the entire plan can only be "paid for" with funds generated by premium rather than the non-insurance component. While Plaintiffs are non-injured consumers fabricating imagined wrongs where none exist, this is pure regulatory interpretation—i.e., does insurance law require that all marketing cost related to a combined product be "covered" by the premium? The two cases cited by Plaintiffs do not involve this issue, and Plaintiffs seek reams of documents that do not answer the legal question at issue.

That Plaintiffs could not articulate a solid justification for this discovery was evident during the meet and confer. Defendants repeatedly urged Plaintiffs to identify underlying facts the discovery would establish; Plaintiffs could only identify conclusions. Plaintiffs posit in the Brief that ""[i]t is unlawful for Defendants . . to use assistance fees to pay any expenses that are supposed to be included in the premiums of the policies." (emphasis added.) If Plaintiffs' position is that "all marketing expenses" for a plan with two components are "insurance-related expenses" that must be included in the premium and cannot be divisible among the two components, this is a narrow legal question *for which none of the requested discovery is needed*. Plaintiffs' disputed requests are therefore not "proportional to the needs of the case" under Fed. R. Civ. P. 26(b)(1).

First, Plaintiffs' argument is that they need to know how Defendants "use" incoming fees attributable to the non-insurance component. "Use" is imprecise, and deliberately so, because Plaintiffs can "follow the money" from Allianz's' stipulated facts, i.e., how funds are collected from consumers and into which accounts those funds then go, and from which accounts funds are paid out to retailers that are the subject of RFPs 24 and 36. Defendants' Stipulated Facts fully inform Plaintiffs without resorting to formal and costly discovery, including providing Plaintiffs the confidential facts regarding how its funds flow. Yet Plaintiffs still seek all documents regarding communications with third party partners under RFPs 24 and 36 (there are thousands of California retailers), and Defendants estimate the cost of reviewing such documents would run at least $300,000. But Plaintiffs fail to explain is *how* the discovery allows them to "follow the money" if the Stipulated Facts from this Court's prior hearing do not.

Second, Plaintiffs then generically argue that "the only way to test Defendants' generic statements about why assistance fees were priced the way they were" is to review all "transfers" to, and communications with, third party marketing partners. But this is a red herring designed to mislead the Court into authorizing needless discovery. If Plaintiffs' legal position is that *all* marketing dollars paid out for marketing the plans must *only* be paid for with premium and cannot be allocated between the two components, then the issue is one of law and not fact. In short, the lack of connection between the requests and the legal theory proves that Plaintiffs' continued demand for the overbroad "all communications" with third parties who *receive* the marketing funds (Requests 24 and 34) is nothing more than simply seeking to bury Defendants in never-ending document production that is wholly unrelated to the facts Plaintiffs purportedly seek to establish.

Even worse, Plaintiffs' counsel stated during the meet and confer that they were interested in this large tranche of documents with Allianz's largest marketing partners in case there were "*other* things" that they were not aware of that could give rise to liability unrelated to their current claims. This is an abuse of the right to conduct legitimate discovery. *Zogenix, Inc. v. Fed. Ins. Co.,* No. 20CV06578YGRRMI, 2021 WL 4026911, at *3–4 (N.D. Cal. Sept. 3, 2021).

Third, as to RFPS 9 and 10 regarding costs—the relevance of which was never discussed in the meet and confer—Plaintiffs have silently conceded its irrelevance by serving new discovery regarding revenue and expenses. While the new discovery cannot be fairly described as narrowly tailored either (although crammed into a single interrogatory), Plaintiffs served it exactly because they *do* have sufficient information from the prior Stipulated Facts to know *how* retail partners are compensated. The current effort to compel seeks irrelevant documents.

Plaintiffs also disingenuously suggest that they made a good faith attempt to avoid this dispute, but their only purported offer accompanied their letter brief, thereby demonstrating that Plaintiffs were merely ticking the box during the meet and confer. *In re Glumetza Antitrust Litig.*, No. 19CV05822WHARMI, 2020 WL 3498067, at *5 (N.D. Cal. June 29, 2020), *motion for relief from judgment denied,* No. C 19-05822 WHA, 2020 WL 4362247 (N.D. Cal. July 22, 2020). This is not the first time Plaintiffs have used the Court's standing order in this manner (retroactively claiming the 5-day period to brief is running; then say on day 3 "agree to x or brief this in 48 hours"), a pattern that should not be encouraged.

JOINT LETTER BRIEF NO. 3; CASE NO. 20-CV-06304-JST

|   |   |   |
|---|---|---|
| | | Respectfully, |
| Dated: September 30, 2021 | | **GUTRIDE SAFIER LLP** |
| | | /s/Seth Safier/s/ |
| | | Seth A. Safier |
| | | Marie A. McCrary |
| | | Hayley A. Reynolds |
| | | 100 Pine Street, Suite 1250 |
| | | San Francisco, CA 94111 |
| | | |
| | | Stephen M. Raab (appearing pro hac vice) |
| | | stephen@gutridesafier.com |
| | | 305 Broadway, 7th Floor |
| | | New York, NY 10007 |
| | | Telephone: (415) 639-9090 x109 |
| | | |
| | | *Attorneys for Plaintiffs* |
| Dated: September 30, 2021 | | **WINSTON & STRAWN LLP** |
| | | /s/Gayle Jenkins/s/ |
| | | Gayle I. Jenkins |
| | | Elizabeth J. Ireland (*pro hac vice*) |
| | | Janelle A. Li-A-Ping |
| | | |
| | | *Attorneys for Defendants* |

## **ATTESTATION**

In accordance with Civil Local Rule 5-1(i)(3), I attest that concurrence in the filing of this document has been obtained from the other signatory.

DATED:  September 30, 2021            **GUTRIDE SAFIER LLP**

By: /s/Seth Safier/s/
Seth A. Safier