UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| ADAM ELGINDY, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>AGA SERVICE COMPANY, et al.,<br><br>    Defendants. | Case No. 20-cv-06304-JST (RMI)<br><br>**ORDER RE: DISCOVERY DISPUTE LETTER BRIEF**<br><br>Re: Dkt. No. 67 |

Now pending before the court is a jointly filed letter brief (dkt. 67) through which Plaintiffs seek to compel certain discovery. As set forth below, Plaintiffs' request is granted in part and denied in part.[1]

**BACKGROUND**

Plaintiffs' class action complaint presents three causes of action under California law: (1) unlawful, unfair, and fraudulent trade practices; (2) false advertising; and (3) common law fraud, deceit, and / or misrepresentation. *See* Compl. (dkt. 1) at 29-36. The gist of the allegations underlying these claims is that Plaintiffs, and others like them, were unfairly charged additional fees, in addition to the calculated premium, by the insurer Defendants, when Plaintiffs purchased insurance for event tickets and travel arrangements on certain vendors' websites. *Id*. at 2. Defendants allegedly justify these additional fees as representing the cost of certain assistance services that would allow customers to contact Defendants' customer service representatives to ask about things such as where one might refill prescriptions as well as information about child-

---

[1] Pursuant to Civil Local R. 7-1(b), the court finds that this matter is suitable for disposition without oral argument.

care equipment, pet-care services, business services, gift deliveries, passport replacement, legal referrals, translation services, driving directions, and weather reports. *Id*. at 2, 13. While Plaintiffs content that the process by which they were sold "ticket insurance" did provide them with a hyperlink for "plan details and disclosures," they maintain that those disclosures did not provide them with sufficient notice "that they are being charged for supposed non-insurance services on top of the premium for the insurance product." *Id*. at 7. Plaintiffs also allege that "[t]here is no significant demand in the market for the assistance benefits offered" by Defendants, and that the pricing sheets of the non-insurance services with which consumers are being saddled are difficult to find, "requiting access through multiple hyperlinks." *Id*. at 8-9.

Indeed, Plaintiffs allege that Defendants hide the agency fee and assistance service from consumers at the point of purchase; that they use a formula that increases the fee according to the purchase and risk at issue; that they do not actually invest in providing a convenient informational assistance service; that they send contradictory messages – telling consumers during the solicitation that there is just a single insurance premium, while telling regulators that the fee-for-assistance service is distinct from the insurance premium. *Id*. at 10. In short, Plaintiffs allege that "Defendants collect more from consumers than they should . . . [a]nd if Defendants disclosed the fees to consumers prior to purchase, consumers would not pay [] the fees." *Id*. Plaintiffs' Complaint presents an example of this by showing a screenshot from an airline reservation webpage indicating that "a single total price is identified for the 'trip insurance' prior to purchase." *Id*. at 12. After making such a purchase, customers are sent a confirmation email that contains a policy number and a hyperlink to policy documents – the policy documents include a cover letter which, for the first time, identifies a separate charge for these concierge type services. *Id*. at 13. While providing certain exemplars, Plaintiffs also allege that Defendants pricing sheets are even sometimes inconsistent with the fees Defendants actually charge customers. *Id*. at 14-15. The exemplars include one Plaintiff's experience on the website of Ticketmaster.com, involving the purchase of event insurance for a concert by Rammstein, a German musical ensemble – and another Plaintiff's experience while purchasing roundtrip air tickets from San Francisco to Honolulu on the website of Hawaiian Airlines, as well as a a one-way ticket from Newark to San

2

Francisco on the United Airlines website. *Id*. at 16-18, 18-20.

Through their class-allegations, Plaintiffs identify two classes: the event ticket insurance class and the trip insurance class – both of which are concerned with purchases from September 4, 2016 to the present. *Id*. at 26. In this regard, Plaintiffs posit that the questions of law and fact that are common to the classes include: whether the fees Defendants charges for their assistance services constitute unlawful agents' fees; whether Defendants have conspired to circumvent regulatory scrutiny while charging unlawful and excessive agents' fees and / or premium charges, thus charging consumers more than they are legally permitted to charge; whether the premium rates and the assistance fee rates at issue were approved for use in California; and, *inter alia*, whether class members are entitled to restitution, injunctive and other equitable relief, and whether class members are entitled to the payment of actual, incidental, consequential, exemplary, and / or statutory damages and interest. *Id*. at 27-28.

## LEGAL STANDARD

When moving to compel discovery, the moving party has the burden of demonstrating relevance. *See e.g.*, *Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995). Further, "[w]hile it is true that the standard for relevance is not very demanding (*see* Fed. R. Evid. 401 – evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action), the rule still requires that any evidence that is to be offered must 'logically advance a material aspect of the party's case.'" *In re Glumetza Antitrust Litig.*, No. 19-cv-05822-WHA (RMI), 2020 U.S. Dist. LEXIS 113361, at *31-32 (N.D. Cal. June 29, 2020) (quoting *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014)). Beyond that, in order to succeed on a motion to compel, a moving party bears the burden of not only demonstrating the above-described entitlement to the requested discovery, but also that it has satisfied proportionality and other requirements of Rule 26. *See Rodriguez v. Barrita, Inc.*, No. 09-04057 RS-PSG, 2011 U.S. Dist. LEXIS 134079, at *4 (N.D. Cal. Nov. 21, 2011). In light of this, courts are required to limit discovery if its burden or expense outweighs its likely benefit; this is "the essence of proportionality," a frequently ignored or overlooked discovery principle. *In re Glumetza Antitrust Litig.*, 2020 U.S. Dist. LEXIS 113361,

3

at *31-32 (citing *Apple Inc. v. Samsung Elecs. Co.*, No. 12-cv-0630-LHK (PSG), 2013 U.S. Dist. LEXIS 116493, at *34-36 (N.D. Cal. Aug. 14, 2013)).

## DISCUSSION

The currently pending letter brief presents a dispute regarding a number of Plaintiff's requests for production ("RFP") and a single interrogatory. *See generally* Ltr. Br. (dkt. 67). As to the interrogatory, on May 12, 2021, Plaintiffs served an interrogatory asking Defendants to identify annual sales revenues for each insurance product sold in California during the class period. *Id*. at 4. Plaintiffs add that Defendants have still not responded to this interrogatory, "despite representing to the Court in a joint filing that they would produce such information by August 28." *Id*. (citing dkt. 55). A review of the Parties' Fourth Joint Case Management Statement does indeed reflect a statement to the effect that "Defendants agreed to produce, on or before August 28, 2021 . . . a list of all products sold in California during the class period, with annual sales identified for each product [] [and that] Defendants are willing to thereafter produce the policy forms for any product(s) Plaintiffs request[]." *See* Case Mgmt. Statement (dkt. 55) at 5. Defendants' portion of the letter brief does not address this matter. *See* Ltr. Br. (dkt. 67) at 5-6. Accordingly, as to this interrogatory, Defendants are **ORDERED** to provide Plaintiffs with this information forthwith.

As to the RFPs, Plaintiffs' motion to compel addresses 4 individual RFPs – specifically, RFP Nos. 9, 10, 24, and 34. *See id*. at 2, 3-4. Further, the undersigned will note that Plaintiffs' portion of the letter brief is dominated by generalized legal statements, rather than clear and concise statements that individually establish relevance and proportionality for each RFP that Plaintiffs seek to compel. For example, Plaintiffs note that "it is unlawful for Defendants to charge and use assistance fees to pay expenses that should be included in the premiums of the policies, as a way of evading review and approval of the total cost of insurance." *Id*. at 3. Plaintiffs' then add that "[i]n order to determine whether such unlawful activity occurred, Plaintiffs must review the actual revenues, expenses, and transfers that occurred after consumers were charged for both insurance and a supposedly separate 'non-insurance' service [] [and] [t]hat is the only way to resolve disputes between the parties regarding what the assistance fees were (and are) for[,] and

4

whether they were (and are) illegal or unfair." *Id*. Plaintiffs also suggest that "Defendants, of course, want to hide the details of that money trail and have proposed offering stipulations (which will be formulated by their attorneys to avoid providing specific facts that would help Plaintiffs' case) in lieu of evidence." *Id*.

Defendants respond in opposition by arguing that Plaintiffs' requests are over-broad and burdensome – and that Defendants can "fully inform Plaintiffs" by way of stipulated facts "without resorting to formal and costly discovery . . . [because] Defendants estimate the cost of reviewing such documents would run at least $300,000 . . . [and that] Plaintiffs fail to explain ***how*** the discovery allows them to 'follow the money' if the [offered stipulations of fact] do not." *Id*. at 5 (emphasis in original). Defendants also take issue with Plaintiffs' arguments that the only way to test Defendants' statements about why the assistance fees were priced the way they were is to review all associated financial transactions and communications with Defendants' third-party marketing partners. *Id*. at 6. At bottom, Defendants contend that "the lack of connection between the requests and the legal theory proves that Plaintiffs' continued demand for the overbroad 'all communications' with third parties who *receive* the marketing funds (Requests 24 and 34) is nothing more than simply seeking to bury Defendants in never-ending document production that is wholly unrelated to the facts Plaintiffs purportedly seek to establish." *Id*. (emphasis in original). According to Defendants, "Plaintiffs' counsel stated during the meet and confer [session] that they were interested in this large tranche of documents with [Defendants'] largest marketing partners in case there were '*other*' things' that they were not aware of that could give rise to liability unrelated to their current claims." *Id*. (emphasis in original).

As a basic proposition, it is axiomatic that parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense, and that information within this scope of relevancy need not be admissible in evidence in order to be discoverable. *See Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, No. 16-cv-00236-WHO (DMR), 2018 U.S. Dist. LEXIS 91336, at *11 (N.D. Cal. May 31, 2018). However, while relevancy (for discovery purposes) is defined broadly, that breadth is by no means limitless. *See Gonzales v. Google, Inc.*, 234 F.R.D. 674, 679-80 (N.D. Cal. 2006). As noted above, the relevance gauge of

Rule 26(b) cannot be used as a license to engage in a scattershot, burdensome, or speculative fishing expedition; instead, Rule 26(b) mandates that discovery must be proportional to the needs of the case, and in evaluating proportionality, Rule 26(b)(1) directs courts to consider the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the case, and whether the burden or expense of the proposed discovery outweighs its likely benefit. In light of this, courts retain discretion to limit the frequency or the extent of discovery, under Rule 26(b)(2)(C), as necessary to prevent undue burden and cost. In short, courts must engage in a balancing of the costs and potential benefits of the requested discovery to determine if the discovery sought is appropriate. *See generally Apple Inc. v. Samsung Elecs. Co.*, No. 12-CV-0630-LHK (PSG), 2013 U.S. Dist. LEXIS 116493, at *34 (N.D. Cal. Aug. 14, 2013); *Neustar, Inc. v. F5 Networks, Inc.*, No. 5:12-cv-02574-EJD (PSG), 2013 U.S. Dist. LEXIS 149799, at *4 (N.D. Cal. Oct. 17, 2013); *Hunter v. City & Cnty. of S.F.*, No. 11-4911 JSC, 2012 U.S. Dist. LEXIS 146492, at *30-31 (N.D. Cal. Oct. 10, 2012); *Dilley v. Metro. Life Ins. Co.*, 256 F.R.D. 643, 644 (N.D. Cal. 2009).

Regarding relevance, it is also important to distinguish "claim or defense," as the term is used in Rule 26(b)(1), from "allegation." Had the drafters of Rule 26 used the term "allegation," the legal landscape governing relevance would be radically different. For example, Plaintiffs' Complaint contains three claims which essentially assert – under various provisions – that Plaintiffs and others like them were deceived at the point of purchase by paying for insurance *and* assistance fees while believing they were only paying for insurance. *See* Compl. (dkt. 1) at 29 (First Cause of Action for unlawful, unfair, and fraudulent trade practices: "To the extent Defendants charge consumers for a non-insurance service without properly disclosing that practice, Defendants violate the FAL and Cal Ins. Code § 332 because they fail to disclose material facts regarding the price of the insurance and mislead consumers as a result); *see also id*. at 32 (Second Cause of Action for false advertising: "Defendants continued to advertise their insurance policies as part of a scheme with the intent not to sell the insurance as advertised and to mislead consumers regarding the nature and extent of the services they were obtaining from

6

Defendants, and regarding the prices of those insurance and non-insurance services."); *see also id*. at 34-35 (Third Cause of Action for common law fraud: "Defendants made representations and statements by omission and commission that led reasonable customers to believe that they were agreeing to pay for approved and lawful premiums for event ticket insurance policies and for trip / travel insurance policies, without hidden, unapproved fees being included within the supposed 'premium' for the policies."). Thus, the case is relatively simple when viewed through the lens of Plaintiff's three claims. However, Plaintiffs' Complaint is also rife with editorial commentary, with conclusory statements, and with speculative assertion – two examples of which are evident in Plaintiffs' musings about how the fees for the assistance services might constitute "unlawful agent's fees" (*id*. at 27), or that Defendants might have intended to "circumvent regulatory scrutiny [by] charging unlawful and excessive agent fees and / or premium charges" (*id*.). As discussed below, the broad scope of the 4 RFPs in question (which are attended with both relevancy and proportionality issues) leads the undersigned to conclude that the scope of Plaintiffs' 4 RFPs are more geared to proving or disproving Plaintiffs' speculative and editorial musings rather than their actual claims. Thus, relevance must be tethered to a claim, not simply to an allegation as seems to be implied by Plaintiffs' suggestion that we must "follow the money" in order to determine whether Defendants "use[d] assistance fees to pay expenses that should be included in the premiums of the policies." *See* Ltr. Br. (dkt. 67) at 3; *see e.g.*, *Aubin v. Columbia Cas. Co.*, No. 16-290-BAJ-EWD, 2017 U.S. Dist. LEXIS 189759, at *16 (M.D. La. Nov. 16, 2017) ("[T]he undersigned disagrees that this conclusory allegation is sufficient to show that these records are relevant or that the request for ten years of employment records is proportional to the needs of this case given the claims and defenses at issue.") *see also Cadillac Ins. Co. v. American Nat'l Bank*, 1992 U.S. Dist. LEXIS 2815 (N.D. Ill. 1992) (conclusory allegation of commingling accounts was insufficient to persuade the court to broaden the scope of discovery by requiring production of otherwise irrelevant documentation).

      The introduction section of the letter brief (*see* Ltr. Br. (dkt. 67) at 2) describes RFP Nos. 9 and 10 as seeking "the cost of the assistance services," which immediately appears to be of questionable relevance to any of the claims or defenses at play in this case. RFP No. 9 asks for

documents sufficient to identify the costs (total and constituent parts thereof) on an annual or quarterly basis, of providing the assistance or concierge services to U.S. consumers and / or California consumers who purchased ticket / trip insurance during the class period. *See* Ltr. Br., Exh. 1 (dkt. 68) at 17. As mentioned above, Plaintiffs' portion of the letter brief is dominated by general legal statements, and some general ruminations about what might be revealed if we "follow the money." What is missing, however, is the pair of sentences that would explain why *this* request is relevant to "any party's claim or defense" and why it is proportional to the needs of the case. Momentarily putting aside the fact that Plaintiffs have failed to carry their burden to establish relevancy and proportionality, the undersigned cannot independently establish a logical link between this document request, and Plaintiffs' three causes of action (which essentially all boil down to the assertion that customers are deceived about what they are paying for at the time of purchasing insurance). In other words, it does not appear that this document request is tethered to a claim or defense – rather, it appears to be a scattershot effort at shedding some light on the speculative or conclusory matter contained within the complaint. Additionally, the request is overbroad and overly burdensome. Even if Plaintiffs had established relevancy (which is not the case as it remains unclear how this information would prove any fact of consequence to any of their three claims), this same information could have been solicited in a far less burdensome manner, such as by accepting the stipulation mentioned above, or by propounding an interrogatory or a request for admission. In any event, because Plaintiffs' portion of the brief fails to establish relevancy or proportionality, Plaintiffs' request to compel the production of materials responsive to RFP No. 9 is **DENIED**. RFP No. 10 is a differently worded version of substantially the same request, and for the same reasons, Plaintiff's request to compel production pursuant to RFP No. 10 is similarly **DENIED**.

The introduction section of the letter brief (*see* Ltr. Br. (dkt. 67) at 2) describes RFP No. 24 as seeking "communications with third-party retailers through whom the insurance is sold, regarding pricing and compensation." The exact wording of RFP No. 24 asks for "all communications that were with or regarding any company selling event tickets or travel tickets, reservations, or services, any company through which Defendants presented ticket / trip insurance

8

offers to consumers, any company qualifying as a 'travel supplier' for any purpose of any ticket / trip insurance, and / or any company identified as a 'Covered Supplier' for purposes of any ticket/ trip insurance plan; and were regarding any ticket / trip insurance and / or assistance / concierge services (including regarding offers for, pricing of, and / or any compensation to be paid in connection with ticket / trip insurance and / or assistance / concierge services), offered or sold during the class period." *See See* Ltr. Br., Exh. 1 (dkt. 68) at 34-35. First, Plaintiffs have failed to establish relevancy for this request to any of their claims or any of Defendants' defenses (as stated above, Plaintiffs' generalized statements that we must "follow the money" do not tether this request to a claim or defense); second, the phrasing of the actual RFP is far broader than its characterization in the letter brief and Plaintiffs have failed to even approach establishing the proportionality of this request. Hence, Plaintiffs' request to compel the materials described in RFP No. 24 is **DENIED**.

In RFP No. 34, Plaintiffs seek "all agreements and / or contract (including all modifications or revisions thereof) regarding any marketing of any ticket / trip insurance and / or assistance / concierge services that were available during the class period." *See id*. at 46. Once again, for the reasons stated above, Plaintiffs have failed to establish a logical link between this request and any claim or defense involved in this case. Further, even if one were able to overlook Plaintiffs' failure to establish relevancy, Plaintiffs have failed to establish that the request is proportional to the needs of the case as it is totally unclear what information Plaintiffs' want from these contracts and why they believe they should have it. Thus, Plaintiffs' request to compel the material encompassed in RFP No. 34 is likewise **DENIED**. Since Plaintiffs have mentioned propounding further discovery in the recent past, and an interest in doing so again in the near future (*see* Ltr. BR. (dkt. 67) at 3-4), Plaintiffs would be well served to take a greater account of the relevancy and proportionality requirements described herein when formulating their discovery requests.

//

//

//

9

**CONCLUSION**

In short, even putting aside Plaintiffs' failure to establish a clear logical link between these RFPs and any claim or defense in this case, it is abundantly clear to the court that the cost of gathering and producing these materials grossly outweighs their supposed importance in resolving this case – thus, the burden and expense of the proposed discovery grossly outweighs its likely benefit. Accordingly, denial of Plaintiffs' RFPs is necessary in order to protect Defendants from shouldering undue burdens and unnecessary costs.

**IT IS SO ORDERED.**

Dated: November 2, 2021

ROBERT M. ILLMAN
United States Magistrate Judge