1
2
3
4
5
6

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

7
8
9
10

| | |
|---|---|
| ADAM ELGINDY, JULIANNE CHUANROONG, and ANDREW TASAKOS, on behalf of themselves, the general public, and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AGA SERVICE COMPANY (d/b/a ALLIANZ GLOBAL ASSISTANCE), JEFFERSON INSURANCE COMPANY, and BCS INSURANCE COMPANY,<br>Defendants. | Case No. 20-cv-06304-JST<br><br>**[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |

11
12
13
14
15
16

17      Plaintiffs Adam Elgindy, Julianne Chuanroong, and Andrew Tasakos ("Plaintiffs") have

18  moved the Court for final approval of a proposed class action settlement with Defendants AGA

19  Service Company (d/b/a Allianz Global Assistance) ("AGA"), Jefferson Insurance Company

20  ("JIC"), and BCS Insurance Company ("BCS") (collectively, "Defendants"), the terms and

21  conditions of which are set forth in the Settlement Agreement filed with the Court on

22  December 21, 2022 ("Settlement Agreement"). For the reasons described more fully below, the

23  Court GRANTS final approval of the Settlement. The capitalized terms used in this Order shall

24  have the same meaning as defined in the Settlement Agreement except as otherwise expressly

25  provided.

26                                   **RECITALS**

27      **A.      Procedural History**

28      This case contains allegations regarding Defendants' practice of advertising and selling

Travel and/or Event Protection Plans for a total price that includes an insurance premium

component and an Assistance Fee for AGA's assistance services. Plaintiffs allege that it was unlawful, unfair, and/or deceptive for Defendants to include Assistance Fees in the plan price. Defendants dispute Plaintiffs' allegations and contend that their conduct was not wrongful in any way and does not give rise to any liability.

The history of this litigation is summarized in Part 1 of the Settlement Agreement. On September 4, 2020, Plaintiffs Adam Elgindy and Julianne Chuanroong ("California Plaintiffs") filed the above-captioned action against Defendants (the "*Elgindy* Action"). The California Plaintiffs asserted three claims on behalf of themselves, those similarly situated, and the general public: (a) for violations of California's Unfair Competition Law (the "UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*; (b) for violations of California's False Advertising Law (the "FAL"), Cal. Bus. & Prof. Code §§ 17500 *et seq.*; and (c) for common law fraud. On March 29, 2021, this Court denied Defendants' motion to dismiss the California Plaintiffs' UCL and FAL claims but granted Defendants' motion to dismiss the California Plaintiffs' common law fraud claim. Following that decision, the California Plaintiffs conducted extensive discovery, secured production of tens of thousands of pages of documents and thousands of voluminous spreadsheets (which would constitute over a million pages if printed), obtained critical and voluminous information pursuant to interrogatories and stipulations, conducted eight depositions of AGA employees from the product, underwriting, marketing, compliance, finance and assistance departments, and consulted with experts.

On April 2, 2022, Andrew Tasakos filed a class action complaint in the Western District of Washington against AGA and JIC, entitled *Tasakos et al. v. AGA Service Co. et al.*, No. 2:22-cv-00433 (the "*Tasakos* Action"). In the *Tasakos* Action, Plaintiff Tasakos alleges that AIG and JIC violate Washington law by unlawfully, unfairly, and/or deceptively requiring consumers to pay a fee for "non-insurance assistance services" "on top of" the authorized insurance premium to obtain the insurance they seek with each Travel and/or Event Protection Plan. In the *Tasakos* Action, Plaintiff Tasakos asserted two claims on behalf of himself, those similarly situated, and the general public: (a) for violation of Washington's Consumer Protection Act (the "CPA"), RCW

19.86.010 *et seq.*; and (b) for breach of Defendants' duty of good faith in insurance matters. On June 13, 2022, AGA and JIC filed a motion to dismiss Plaintiff Tasakos' complaint, which he opposed. The *Tasakos* Court has not ruled on the motion. On November 16, 2022, the *Tasakos* Action was stayed pending approval of the Settlement. The *Elgindy* Action and *Tasakos* Action are collectively referred to herein as "the Actions."

On December 21, 2022, pursuant to a stipulation of the Parties, Plaintiffs filed an amended complaint to include Tasakos and his claims in this Consolidated Action for settlement purposes only.

Throughout the pendency of the Actions, the Parties have engaged in extensive, contested litigation. Before entering into this Settlement, the Parties in the *Elgindy* Action engaged in extensive fact discovery for over two years, with much of the discovery elicited in the *Elgindy* Action providing information that informed Plaintiffs and their counsel as to the strengths and weaknesses in both the *Elgindy* Action and the *Tasakos* Action.

The Parties also engaged in extensive settlement discussions before reaching this Settlement. On June 14, 2022, the Parties attended their first mediation session before Rodney Max, a member of the nationally recognized mediation firm of Upchurch, Watson, White & Max, where they commenced discussions relating to a potential consolidated settlement of the two Actions. The parties engaged in a second all-day mediation session on September 6, 2022. A framework and certain of the material terms were reached at a third all-day session on September 21, 2022. Between each of these in-person mediation sessions, diligent efforts to try to reach a resolution of the Actions, including with the assistance of Mr. Max, continued. That lengthy mediation process resulted in the Settlement that is the subject of this Order Granting Final Approval.

### B.   Summary of Settlement Terms

The terms of the Settlement were summarized in the proposed Long-Form Notice to Settlement Class Members. ECF No. 128 Ex. E. Defendants have agreed to create a common fund of $19.75 million, which will be used to pay Cash Payments to Settlement Class Members as

follows: (a) Authorized Claimants who purchased Tranche 1 Plans shall receive 75% of the Assistance Fees AGA collected from those Authorized Claimants who purchased those Tranche 1 Plans, as reflected in AGA's records provided to the Settlement Administrator, subject to potential adjustments; and (b) Authorized Claimants who purchased Tranche 2 Plans shall receive 40% of the Assistance Fees AGA collected from those Authorized Claimants who purchased those Tranche 2 Plans, as reflected in AGA's records provided to the Settlement Administrator, subject to potential adjustments. Authorized Claimants shall not receive a Cash Payment for any Qualifying Travel and/or Event Protection Plan for which either (a) the Authorized Claimant already received a complete refund or (b) AGA opened and documented an assistance case.

If the total amount of payments for all Authorized Claimants calculated pursuant to the foregoing percentages exceeds the Net Settlement Fund, then the amount to be paid to each Authorized Claimant for each Valid Claim shall be reduced pro rata. On the other hand, if the Net Settlement Fund exceeds the total amount of payments for all Authorized Claimants calculated pursuant to the foregoing percentages, then the amount to be paid to each Authorized Claimant for each Valid Claim shall be increased pro rata, up to the Maximum Potential Payment as follows: (a) Authorized Claimants who purchased Tranche 1 Plans may receive up to, but not more than, 150% of the Assistance Fees AGA collected from those Authorized Claimants who purchased those Tranche 1 Plans, as reflected in AGA's records provided to the Settlement Administrator; and (b) Authorized Claimants who purchased Tranche 2 Plans may receive up to, but not more than, 80% of the Assistance Fees AGA collected from those Authorized Claimants who purchased those Tranche 2 Plans, as reflected in AGA's records provided to the Settlement Administrator.

As part of the Settlement, Class Counsel seeks an award of $4,937,500.00 in attorneys' fees and an award of costs in the amount of $188,870.47 plus costs through final approval (up to a maximum total of $205,000, as well as $5,000.00 as an Incentive Award to each Plaintiff.

**C.      Notice and Settlement Administration**

The Settlement is being administered by a well-known, independent claims administrator, Angeion Group. Following the Court's Preliminary Approval Order, Angeion Group established

the Settlement Website at www.AssistanceFeeSettlement.com, which includes: the Long-Form Notice (explaining the procedures for Class Members to submit claims or exclude themselves), a contact information page that includes address and telephone numbers for the Settlement Administrator and the parties, the Settlement Agreement, the signed Preliminary Approval Order, online and printable versions of the Claim Form and the opt out forms, and answers to frequently asked questions. In addition, the papers in support of final approval and Plaintiff's application for Attorneys' Fees and Expenses and Incentive Award were placed on the Settlement Website after they were filed. The Settlement Administrator also operated a toll-free number for Class Member inquiries.

Notice of the Settlement was provided by: (1) direct Email Notice to those Class Members for whom an email address was available, with at least two reminder emails being sent; (2) direct Postcard Notice mailed to those Class Members for whom a physical mailing address was available but an email address was not available; and (3) publication on the Settlement Website.

Class Members were given until January 25, 2024, to object to or exclude themselves from the proposed Settlement. A total of 537,852 Claim Forms were received by the Settlement Administrator (527,764 through the online portal and 10,088 by mail). Of these, 482,515 Valid Claims were identified, with 1,216,882 Travel and/or Event Ticket Protection Plans associated with these Valid Claims. Using the 40% and 75% refund percentages set forth in paragraph 6.1 of the Settlement Agreement, the initial amount of refunds associated with the valid Claim Forms is approximately $7,102,428.00. Pursuant to paragraph 6.4 of the Settlement Agreement, the refund amounts ultimately paid to Authorized Claimants may be increased (up to double) if there is sufficient money in the Net Settlement Fund. The Settlement Administrator estimates that the Net Settlement Fund will be approximately $12.75 million after accounting for Notice and Administration Expenses ($1,825,764.44), Taxes and Tax Expenses (to be determined), Attorneys' Fees and Expenses (Class Counsel seeks up to $5,126,370.47, consisting of $4,937,500 in fees and $188,870.47 in expenses), and Incentive Awards (Plaintiffs request $5,000 each, for a total of $15,000). Accordingly, Authorized Claimants will likely receive a Cash Payment that is

1.8 times the amount of their initially calculated refund, and the total Cash Payments to be issued to Authorized Claimants is estimated to be approximately $12.75 million (the entirety of the Net Settlement Fund after the above deductions).

## ANALYSIS

### A.    Jurisdiction

This court has jurisdiction under 28 U.S.C. § 1332(d)(2).

### B.    Certification of the Settlement Class

The Court finds that the prerequisites of Rule 23 have been satisfied for certification of the Settlement Class for settlement purposes only because: Settlement Class Members are so numerous that joinder of all members is impracticable; there are questions of law and fact common to the Settlement Class; the claims and defenses of the Class Representatives are typical of the claims and defenses of the Settlement Class they represent; the Class Representatives have fairly and adequately protected the interests of the Settlement Class with regard to the claims of the Settlement Class they represent; common questions of law and fact predominate over questions affecting only individual Settlement Class Members, rendering the Settlement Class sufficiently cohesive to warrant a class settlement; and the certification of the Settlement Class is superior to individual litigation and/or settlement as a method for the fair and efficient resolution of this matter.

For purposes of the Settlement and this Final Approval Order, the Court hereby finally certifies the following Settlement Class: all Persons—except Excluded Persons and those individuals identified in Exhibit 1 hereto, who timely and properly excluded themselves from the Settlement—who purchased at least one or more (a) Qualifying California Travel and/or Event Protection Plan from September 4, 2016, through and including September 30, 2023, and, for that purchase, provided a billing address in the State of California or if no billing address was supplied directly to AGA, the Travel and/or Event Protection Plan identified the plan owner as having a California address; and/or (b) Qualifying Washington Travel and/or Event Protection Plan from April 2, 2018, through and including September 30, 2023, and, for that purchase, provided a

billing address in the State of Washington or if no billing address was supplied directly to AGA, the Travel and/or Event Protection Plan identified the plan owner as having a Washington address.

The following Persons are excluded from the Settlement as Excluded Persons: (a) each and every presiding District Judge and Magistrate Judge in the Actions, and their staff, and their immediate family members; (b) the officers, directors, agents, servants, and current and former employees of Defendants who were employed by Defendants at any time on or after the start of the Class Periods, and the immediate family members of such Persons; (c) any Person who received a complete refund for each and every Qualifying Travel and/or Event Protection Plan purchased by that Person; (d) any Person for whom AGA opened and documented an assistance case in connection with each and every Qualifying Travel and/or Event Protection Plan purchased by that Person; and (e) any Person for whom each purchased Qualifying Travel and/or Event Protection Plan falls outside this Settlement because the Person received a complete refund for the purchased Qualifying Travel and/or Event Protection Plan or AGA opened and documented an assistance case in connection with the purchased Qualifying Travel and/or Event Protection Plan.

For the purpose of this Settlement, the Court hereby finally approves Plaintiffs as the Class Representatives and the law firm of Gutride Safier LLP as Class Counsel.

## C.   Notice and Claims Administration

From the Class data provided, the Settlement Administrator developed an initial Notice List of 19.9 million parent transaction records (merging only those records with an exact match of both name and email address). ECF No. 128 ¶¶ 7-11. From there, it delivered about 17.5 million initial Email Notices and 1.74 million Postcard Notices to Class Members. *Id.* ¶¶ 15, 19-21. Thus, more than 95% of the Class received actual, direct notice. The Settlement Administrator then sent two reminder notices by email (*id.* ¶¶ 16-17), and a third notice after the Claims Deadline was extended (ECF No. 137 ¶ 5).This notice comports with due process. *See, e.g., Ellison v. Steven Madden, Ltd.*, No. CV115935PSGAGRX, 2013 WL 12124432, at *3 (C.D. Cal. May 7, 2013) (approving a notice plan reaching 77 percent); *In re: Whirlpool Corp. Front–loading Washer Prod. Liab. Litig.*, No. 1:08-WP-65000, 2016 WL 5338012, at *9 (N.D. Ohio Sept. 23, 2016)

(approving notice plan reaching approximately 77.5 percent of class members). The implemented notice procedures adhere to the previously approved Notice Plan and the Court finds that the parties have sufficiently provided notice to the settlement Class Members. *See Perkins v. LinkedIn Corp.*, No. 13-cv-04303-LHK, 2016 U.S. Dist. LEXIS 18649, 2016 WL 613255, at *7 (N.D. Cal. Feb. 16, 2016) (finding class notice adequate where the approved notice was sent in accordance with the approved notice plan, which was "consistent with the requirements of Rule 23 and due process").

**D.    Final Approval of Settlement**

A court may approve a proposed class action settlement of a certified class only "after a hearing and on finding that it is fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2).[1] In reviewing the proposed Settlement, the Court need not address whether the settlement is ideal or the best outcome, but only whether the settlement is fair, free of collusion, and consistent with plaintiff's fiduciary obligations to the

---

[1] Prior to the amendments to Rule 23, which took effect December 1, 2018, the Ninth Circuit had enumerated a similar list of factors to consider in evaluating a proposed class settlement. *See Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (enumerating the following factors: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement"). In the notes accompanying the Rule 23 amendments, the Advisory Committee explained that the amendments were not designed "to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Accordingly, this Court applies the framework of Rule 23 while "continuing to draw guidance from the Ninth Circuit's factors and relevant precedent." *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 U.S. Dist. LEXIS 213045 *13 (N.D. Cal. Dec. 17, 2018).

class. *See Hanlon v. Chrysler Corp.*, 150 F.3d at 1027.

For the reasons further detailed below and discussed at oral argument, the Court finds that the proposed Settlement is fair and appropriate under the Rule 23(e)(2) factors. There are disputes as to whether the inclusion of Assistance Fees in the plan price for Defendants' Travel and/or Event Protection Plans was unlawful, unfair, or deceptive. There would also have been a battle of the experts regarding consumer understanding of Defendants' offers and regarding the computation of restitution/damages, if any. Proceeding to trial would have been costly; recovery was not guaranteed; and there was the possibility of protracted appeals. Counsel for both Parties were highly experienced, Class Counsel provided detailed declarations explaining why they supported the Settlement, and there is no factual basis to support any allegation of collusion or self-dealing.

### 1. Class Representatives and Class Counsel Have Adequately Represented the Class.

In the Preliminary Approval Order, this Court found that the Class Representatives and Class Counsel adequately represented the interests of the Class. This Court has seen no evidence to contradict my previous finding, and I reconfirm it here. Class Counsel has vigorously prosecuted this action through discovery and formal mediation. Class Counsel therefore "possessed sufficient information to make an informed decision about settlement." *Hefler*, 2018 U.S. Dist. LEXIS 213045 *18.

### 2. The Settlement Was Negotiated at Arm's Length.

This Court finds that the Settlement is the product of serious, non-collusive, arms' length negotiations by experienced counsel with the assistance of a well-respected and experienced mediator, Rodney Max, of Upchurch Watson White and Max. *See, e.g., G. F. v. Contra Costa Cty.*, 2015 WL 4606078, at *13 (N.D. Cal. July 30, 2015) (noting that "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive"); *Hefler*, 2018 U.S. Dist. LEXIS 213045 *19 ("[T]he Settlement was the product of arm's length negotiations through two full-day mediation sessions and multiple follow-up calls supervised by

former U.S. District Judge Layn Phillips."). Further, before agreeing upon the terms of the Settlement, the Parties engaged in extensive factual investigation, which included a deposition, document production, interrogatories, and informal discovery. The record was thus sufficiently developed that the parties were fully informed as to the viability of the claims and able to adequately evaluate the strengths and weaknesses of their respective positions and risks to both sides if the case did not settle.

The Court has independently and carefully reviewed the record for any signs of collusion and self-dealing, and finds that no collusion or self-dealing occurred. Specifically, the Court finds that Class Counsel did not compromise the claims of the Settlement Class in exchange for higher fees.

### 3.      The Cash Payments Provide Adequate Recovery to the Class.

Although not articulated as a separate factor in Rule 23(e), "[t]he relief that the settlement is expected to provide to class members is a central concern." Fed. R. Civ. P. 23(e)(2)(C)-(D) advisory committee's note to 2018 amendment. "The Court therefore examines 'the amount offered in settlement.'" *Hefler*, 2018 U.S. Dist. LEXIS 213045 *18 (quoting *Hanlon*, 150 F.3d at 1026).

Defendants agreed to provide monetary benefits to Settlement Class Members. Defendants have agreed to create a common fund of $19.75 million, which will be used to pay Cash Payment to Settlement Class Members as follows: (a) Authorized Claimants who purchased Tranche 1 Plans shall receive 75% of the Assistance Fees AGA collected from those Authorized Claimants who purchased those Tranche 1 Plans, as reflected in AGA's records provided to the Settlement Administrator, subject to potential adjustments; and (b) Authorized Claimants who purchased Tranche 2 Plans shall receive 40% of the Assistance Fees AGA collected from those Authorized Claimants who purchased those Tranche 2 Plans, as reflected in AGA's records provided to the Settlement Administrator, subject to potential adjustments. Authorized Claimants shall not receive a Cash Payment for any Qualifying Travel and/or Event Protection Plan for which either (a) the Authorized Claimant already received a complete refund or (b) AGA opened and documented an

assistance case. If the total amount of payments for all Authorized Claimants calculated pursuant to the foregoing percentages exceeds the Net Settlement Fund, then the amount to be paid to each Authorized Claimant for each Valid Claim shall be reduced pro rata.

On the other hand, if the Net Settlement Fund exceeds the total amount of payments for all Authorized Claimants calculated pursuant to the foregoing percentages, then the amount to be paid to each Authorized Claimant for each Valid Claim shall be increased pro rata, up to the Maximum Potential Payment as follows: (a) Authorized Claimants who purchased Tranche 1 Plans may receive up to, but not more than, 150% of the Assistance Fees AGA collected from those Authorized Claimants who purchased those Tranche 1 Plans, as reflected in AGA's records provided to the Settlement Administrator; and (b) Authorized Claimants who purchased Tranche 2 Plans may receive up to, but not more than, 80% of the Assistance Fees AGA collected from those Authorized Claimants who purchased those Tranche 2 Plans, as reflected in AGA's records provided to the Settlement Administrator.

Based on the record evidence and argument the parties submitted in connection with the Settlement, as well as the familiarity the Court has developed with this case, the Court finds that this monetary recovery is fair, reasonable and adequate, given the risks of proceeding to trial and the maximum recovery potentially available to Settlement Class Members if the Class Representatives had prevailed at trial.

### 4. The Risk of Continuing Litigation.

No class had been certified prior to the Settlement. Plaintiffs faced serious risk at the certification stage, and if they prevailed, at trial. There were critical disputes as to whether Defendants' practices were unlawful or unfair, both sides believed they had persuasive facts to support their positions, and there are limited precedents available regarding the Parties' competing theories. There were also critical disputes about whether Defendants' offers were misleading and regarding the significance of certain linked disclosures. Both class certification and trial would have involved a clash of experts as to whether Defendants' offers were misleading to reasonable consumers, the methods of calculating restitution to Settlement Class Members, and ultimately

[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT

what restitution, if any, should be awarded to Settlement Class Members.

### 5. Effectiveness of Distribution Method.

As noted above, the Court concludes that the distribution method and claims process is reasonable. Settlement Class Members who seek benefits under the Settlement must only submit a relatively simple Claim Form with basic questions about class membership to obtain a Cash Payment. This process would be no different than that required after trial.

### 6. The Terms of the Proposed Award of Attorneys' Fees and Expenses.

As noted in section E below, the Court finds the proposed award of Attorneys' Fees and Expenses is reasonable.

### 7. Other Agreements.

The Court is required to consider "any agreements required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(iv).  Class Counsel has attested, and the Court finds, that there are no such agreements.

### 8. The Proposal Treats Settlement Class Members Equitably Relative to Each Other

All Settlement Class Members are entitled to obtain Cash Payments, although the Settlement provides different proposed amounts for certain purchases depending on the time period in which the purchase was made. In particular, Authorized Claimants who purchased Tranche 1 Plans shall receive 75% (and, if there is sufficient Net Settlement Fund, up to a maximum of 150%) of the Assistance Fees collected from those Authorized Claimants who purchased those Tranche 1 Plans, and Authorized Claimants who purchased Tranche 2 Plans shall receive 40% (and, if there is sufficient Net Settlement Fund, up to a maximum of 80%) of the Assistance Fees collected from those Authorized Claimants who purchased those Tranche 2 Plans.

This allocation plan treats all Settlement Class Members fairly based on the strength of their claims. Settlement Class Members who purchased Tranche 2 Plans received different disclosures than consumers who purchased Tranche 1 Plans. The evidence produced by AGA in discovery established that AGA made the following enhanced disclosures for sales of all Tranche

2 Plans: (a) including, on the disclosure page for each Travel and/or Event Protection Plan, language to the effect that the "Plan charge includes the cost of insurance benefits and assistance services;" (b) following that disclosure with a hyperlink for "Plan and Pricing Details," which allowed consumers to visit a webpage that specifically identified the method of calculating the charge for AGA's assistance service; and (c) sending a welcome letter with the approved forms for each Travel and/or Event Protection Plan to each purchaser, following each online purchase, in which AGA specifically and separately identified the Assistance Fee component and the insurance premium component of the total price for the Travel and/or Event Protection Plan.

The Settlement fairly directs more monetary benefits to the Class Members who did not receive the enhanced disclosures, while providing lesser settlement benefits to Class Members who had access to more pricing information regarding the Assistance Fees they were charged. *See In re Macbook Keyboard Litig.*, No. 5:18-cv-02813-EJD, 2022 U.S. Dist. LEXIS 214066, at *19-21 (N.D. Cal. Nov. 28, 2022) (approving settlement that tailored distribution among three groups of class members, with compensation being greater for those who experienced the greatest harm); *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, No. 15-md-02672-CRB, 2022 U.S. Dist. LEXIS 204422, at *21 (N.D. Cal. Nov. 9, 2022) (approving settlement where class members were divided into three groups corresponding to the strength of their claims, with those with the strongest claims receiving more compensation); Fed. R. Civ. P. 23(e)(2)(D), 2018 Advisory Committee Notes (noting that one consideration is "whether the apportionment of relief among class members takes appropriate account of differences among their claims"). In addition, the Incentive Award to each Plaintiff is appropriate for the reasons stated below.

### 9. The Response of Class Members

Out of an estimated 12 million to 16 million Class Members, there were 661 opt-outs and only two objections. In comparison, there were [475,411] Valid Claims, according to the report of the Settlement Administrator. This is an overwhelmingly positive response. *See Churchill Village, LLC v. General Electric,* 361 F.3d 566, 577 (9th Cir. 2004) (explaining that a court may infer appropriately that a class action settlement is fair, adequate, and reasonable when few class

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

members object to it); *Zepeda v. PayPal, Inc*., 2017 WL 1113293, at *16 (N.D. Cal. Mar. 24, 2017) (holding "the indisputably low number of objections and opt-outs, standing alone, presents a sufficient basis upon which a court may conclude that the reaction to settlement by the class has been favorable); *Cruz v. Sky Chefs, Inc.*, 2014 WL 7247065, at *5 (N.D. Cal. Dec. 19, 2014) ("A court may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it.").

### 10.     Costs of Administering the Settlement

The Settlement Administrator has estimated its expenses incurred to date and expected to be incurred through the completion of its work, in the amount of $1,825,764.44. The Court finds that such amounts are reasonable.

### E.     Objections to Settlement

The Court has considered the objection of Eric Alan Isaacson (ECF No. 126) and finds it to be without merit. First, this Court already determined in its Order Granting Preliminary Approval that Notices and Claim Form "are written in plain English, are easy to comprehend, and fully comply with the requirements of the Due Process Clause of the United States Constitution, Rule 23, and any other applicable law." ECF No. 122 ¶ 9. The Court also has considered and denied Mr. Isaacson's motion to unseal the limited redactions of Defendants' financial information in the motion for approval of the Settlement. ECF No. 144. The limited redactions in the motion papers did not prevent Mr. Isaacson or any other Class Member from accessing the information subject to the protective order. Moreover, notice to a settlement class need not include "an estimate of the potential value" of the settled claims. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 946 (quoting *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012)); *see also Rodriguez*, 563 F.3d at 962-63 (notice need not include "the expected value of fully litigating the case"). Second, contrary to Mr. Isaacson's objection, subclasses are not required here. While the Settlement Agreement provides separate refund calculations for Tranche 1 and Tranche 2 Plans, that distinction was reasonable in this case and did not present an irreparable conflict of interest sufficient to warrant the need for subclasses, additional representatives, and/or separate

representation. *See, e.g., In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 895 F.3d 597, 606-09 (9th Cir. 2018) (approving a settlement that provided for different restitution calculations for various categories of class members, and stating "we see no indication of an 'irreparable conflict of interest,' either in the structure of the class or the terms of the settlement, that prevented the named class representatives from adequately representing sellers, or prohibited the commingling of the two in a single class"). Mr. Isaacson also did not identify any "irreparable conflict of interest" between the California and Washington Class Members or any other groups of Class Members. Third, Mr. Isaacson has identified no issues with regards to the adequacy of class representation. A "smooth sailing" provision is not by itself evidence of collusion and Mr. Isaacson has presented no evidence to suggest collusion here. Fourth, "[t]he availability of *cy pres* as a mechanism to distribute unclaimed funds rests on the premise that class action settlements will sometimes have just that—unclaimed funds." *In re Easysaver Rewards Litig.*, 906 F.3d 747 (9th Cir. 2018). In *In re Easysaver Rewards Litig.*, the Ninth Circuit rejected an objection to the *cy pres* distribution of $3 million left in a settlement fund where the objector had "not identified any flaws in the notice procedure used in this case." *Id*. Thus, Mr. Isaacson's objection that *cy pres* is permissible only if it is impossible to distribute more money to the class is wrong. In any event, the Settlement Administrator now estimates that the entirety of the Net Settlement Fund, after the approved deductions, will be issued as payments to Authorized Claimants. Finally, Mr. Isaacson has not demonstrated that the requested attorneys' fees are not justified. Indeed, 25% is the benchmark for attorneys' fees in a common-fund settlement in the Ninth Circuit. And courts often award fees more than 25% of a common fund. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-49 (9th Cir. 2002). Accordingly, Mr. Isaacson's objections are overruled.

The Court has also considered the objection of Nicole Butterfield (ECF No. 128, Ex. I) and finds it to be without merit. Ms. Butterfield objected because "[t]he defendants provided professional services without any undue stress." *Id.* She does not complain that the Settlement provided too little relief to Class Members, but that it provided too much relief, which, if

[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT

anything, supports reasonableness. Ms. Butterfield likewise lacks standing to raise this objection because she is not injured by the Settlement's monetary benefits. Accordingly, her objection is overruled.

## F.    Attorneys' Fees and Expenses

Class Counsel requests an award of $4,937,500 in attorneys' fees and an award of costs in the amount of $188,870.47. Defendants do not oppose this request. *See, e.g., In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, 2017 WL 1047834, at *4 (N.D. Cal., Mar. 17, 2017 ("Volkswagen's agreement not to oppose the application does not evidence collusion and was not obtained by Class Counsel to Class Members' detriment."). The record is undisputed that the settlement negotiation was overseen by an experienced mediator. *See, e.g., G. F. v. Contra Costa Cty.*, 2015 WL 4606078, at *13 (N.D. Cal. July 30, 2015) (noting that "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive").

Class Counsel are entitled to reimbursement of reasonable out-of-pocket expenses. Fed. R. Civ. P. 23(h); *see Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (holding that attorneys may recover reasonable expenses that would typically be billed to paying clients in non-contingency matters.); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (approving reasonable costs in class action settlement). Costs compensable under Rule 23(h) include "nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).

Here, Class Counsel seeks reimbursement of $188,870.47 in litigation expenses and provide records that document their claim. (ECF No. 112-3). No objection has been made to any cost item or amount. Accordingly, the Court finds that these submissions support an award of $188,870.47 in costs.

Class Counsel also seeks $4,937,500 in attorneys' fees. Under Ninth Circuit standards, it is appropriate for a District Court to analyze an attorneys' fee request and issue an award either (1) as a percentage of the total benefit made available to the settlement class or (2) using the "lodestar" method. *See e.g., Bluetooth Headset Prods. Liability Litig.*, 654 F.3d 935, 942 (9th Cir.

2011). Plaintiffs' fee request is reasonable under either of these approaches.

In the Ninth Circuit, the benchmark for an attorney fee is 25% of the total settlement value. *See Six Mexican Workers v. Arizona Citrus Workers*, 904 F.2d 1301, 1311 (9th Cir. 1990). Here, Class Counsel requests an award of $4,937,500 in attorneys' fee, which represents 25% of the Settlement Amount, and is thus substantially in alignment with the benchmark for attorneys' fees in common fund cases. *See Valliere v. Tesoro Ref. & Mktg. Co. LLC*, No. 17-cv-00123-JST, 2020 U.S. Dist. LEXIS 264984, at *25 (N.D. Cal. Dec. 16, 2020) (approving an award of 25% of the fund and noting that it "aligns with the Ninth Circuit's 25% benchmark attorney's fee"). This award is reasonable in this case based on the skill and expertise of Class Counsel, Class Counsel's efficient litigation of the Actions, the substantial benefits made available to the Class, the risk undertaken by Class Counsel in litigating these Actions, and the potential for lengthy litigation but for the successfully negotiated settlement. *See Valliere*, 2020 U.S. Dist. LEXIS 264984, at *25.

Under the lodestar approach, "[t]he lodestar (or touchstone) is produced by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate." *Lealao v. Beneficial California, Inc.*, 82 Cal. App. 4th 19, 26 (2000); *see also Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016) ("[A] court calculates the lodestar figure by multiplying the number of hours reasonably expended on a case by a reasonable hourly rate. A reasonable hourly rate is ordinarily the 'prevailing market rate [] in the relevant community.'") (alteration in original) (internal citation omitted) (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010)). Once the court has fixed the lodestar, it may increase or decrease that amount by applying a positive or negative "multiplier to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained and the contingent risk presented." *Lealao*, 82 Cal. App. 4th at 26; *see also Serrano v. Priest*, 20 Cal. 3d 25, 48-49 (1977); *Ramos v. Countrywide Home Loans, Inc.* 82 Cal. App. 4th 615, 622 (2000); *Beasley v. Wells Fargo Bank*, 235 Cal. App. 3d 1407, 1418 (1991) (multipliers are used to compensate counsel for the risk of loss, and to encourage counsel to undertake actions that benefit the public interest).

[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiff's Counsel's lodestar through the date of this application is approximately $3.8 million. (ECF No. 138-1 ¶¶ 2-4). This includes: (1) significant pre-filing investigation; (2) drafting and filing the class action complaints; (3) drafting and filing case management conference statements and case management stipulations; (4) drafting discovery requests and responses; (5) meeting-and-conferring with Defendants' counsel regarding the scope of discovery, the sufficiency of discovery responses and production, deposition notices, the retention of electronic documents, Defendants' searches for electronically stored information, the terms and scope of a stipulated protective order, the terms and scope of a stipulated electronically stored information order, and the timing of production; (6) reviewing documents produced by Defendants; (7) preparing Plaintiffs' document productions; (8) conducting depositions of AGA; (9) preparing Plaintiffs for depositions; (10) drafting a mediation statement and participating in three mediation sessions before Mr. Max; (11) negotiating and drafting the Settlement Agreement along with corresponding documents, including the claim form and notice forms; (12) drafting this motion for approval and supporting documents, including a proposed preliminary approval order and a proposed final approval order; (13) working with the Administrator to implement the Notice Plan; (14) communicating with Class Members about the Settlement; and (15) preparing the papers in support of final approval. ECF No. 112 ¶¶ 4-24; ECF No. 138-1 ¶ 2.

Class Counsel calculated their lodestar using their regular 2023 billing rates, which for the attorneys involved range from $825 to $1175 per hour and for the paralegals range from $305 to $395 per hour. ECF No. 138-1 ¶¶ 3-4. These are reasonable market rates for attorneys of Class Counsel's background and experience. ECF No. 112 ¶¶ 42-57; *see Glob. Indus. Inv. Ltd. v. 1955 Capital Fund I GP LLC*, No. 21-cv-08924-HSG, 2023 U.S. Dist. LEXIS 173343, at *12 (N.D. Cal. Sep. 27, 2023) (granting fees, minus certain work, at hourly rates between $1,085 and $1,650 for counsel and partners and between $645 and $960 for associates); *Hessefort v. Super Micro Comput., Inc.*, No. 18-cv-00838-JST, 2023 U.S. Dist. LEXIS 198353, at *25 (N.D. Cal. May 5, 2023) (approving rates from $770 to $1,350 for partners or of counsel attorneys); *Elder v. Hilton Worldwide Holdings, Inc.*, No. 16-cv-00278-JST, 2021 U.S. Dist. LEXIS 204099, at *24-25 (N.D.

Cal. Feb. 4, 2021) (approving rates of $800 and $1,000 for senior attorneys); I*n re Animation Workers Antitrust Litig.*, 2016 U.S. Dist. LEXIS 156720, 2016 WL 6663005, at *6 (N.D. Cal. Nov. 11, 2016) (approving hourly rates of senior attorneys of between $845 and $1,200).

Class Counsel's requested $4,937,500 fee results in a lodestar multiplier of approximately 1.3. This multiplier is within the range that courts in this Circuit routinely award. *See, e.g., Vizcaino*, 290 F.3d at 1051 (granting a multiple of 3.65 and noting that multipliers of one to four are frequently awarded); *Noll v. eBay, Inc.*, 309 F.R.D. 593, 610 (N.D. Cal. 2015) (listing multipliers as high as 5.2 among "the range of acceptable lodestar multipliers"); *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 334 (N.D. Cal. 2014) ("A 2.83 multiplier falls within the Ninth Circuit's presumptively acceptable range of 1.0–4.0."); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) ("Multipliers in the 3–4 range are common in lodestar awards for lengthy and complex class action litigation.").

Multipliers are appropriate in contingent-fee class action cases like this one. That is because law firms that focus on contingent-fee class action cases do not get paid in every case. Frequently, they get nothing or are awarded fees equal to only a small percentage of the amount worked. Where a plaintiff's firm does succeed, therefore, a multiplier serves to compensate for the risks the firm regularly undertakes. This Court has discretion to apply a multiplier to account for various factors, including, *inter alia*, the contingent nature of the fee award (both from the point of view of eventual victory on the merits and the point of view of establishing eligibility for an award), the novelty and complexity of the questions involved, the value of class benefits obtained, the efficiency and skill displayed by class counsel, and the importance of other relief obtained. *See Serrano III*, 20 Cal. 3d at 49; *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001); *City of Oakland*, 203 Cal. App. 3d at 78; *Downey Cares v. Downey Community Dev. Comm'n*, 196 Cal. App. 3d 983 (1987), 995 n11; *see also Maria P. v. Riles*, 43 Cal. 3d 1281, 1294 n8 (1987); *Press v. Lucky Stores, Inc.*, 34 Cal. 3d 311, (1983), 322; *Serrano v. Unruh* ("*Serrano IV*"), 32 Cal.3d 621, 625 n6 (1982). Each of these factors exists here. Here, Plaintiff's Counsel reached an excellent settlement securing monetary benefits to all Settlement Class Members before class certification and thus

should be rewarded for its efficiency (and the concomitant savings to the judicial system).

The Court finds that the hours Class Counsel claimed were reasonably worked and that the rates charged are reasonable and commensurate with those charged by attorneys with similar experience who appear in this Court, and that the multiplier is warranted. The Court also finds that Plaintiff's counsel represented their clients with skill and diligence and obtained an excellent result for the Class, taking into account the possible outcomes at, and risks of proceeding to, trial. Accordingly, $4,937,500 is awarded to Class Counsel as attorneys' fees.

## G.   Class Representative Incentive Awards

The district court must evaluate named plaintiffs' awards individually, using relevant factors including "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003). "Such awards are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958-959 (9th Cir. 2009). Here each of the Plaintiffs is seeking an Incentive Award of $5,000, which is presumptively reasonable in the Ninth Circuit. *Cunha v. Chico Produce*, No. 17-cv-00597-JST, 2021 U.S. Dist. LEXIS 148406, at *13 (N.D. Cal. Feb. 16, 2021); *Dixon v. Cushman & Wakefield W., Inc.*, No. 18-cv-05813-JSC, 2022 U.S. Dist. LEXIS 73512, at *40 (N.D. Cal. Apr. 21, 2022).

Plaintiffs worked with Class Counsel to obtain relief for the Class, to provide information throughout the litigation, and to search for evidence, and the California Plaintiffs prepared for depositions. ECF No. 112 ¶ 60.

Accordingly, the Court approves an Incentive Award of $5,000 to each Plaintiff.

## H.   Compliance with Class Action Fairness Act

The record establishes that the Settlement Administrator served the required notices under the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, with the documentation required by 28

U.S.C. § 1715(b)(1-8).

## I.    Releases and Effect of This Order

### 1.    Releases by Settlement Class Members

By operation of this Order, Settlement Class Members shall have unconditionally, completely, and irrevocably released and discharged the Released Defendants from any and all claims and causes of action of every nature and description, whether known or unknown, whether arising under federal, state, common, or foreign law, based in law or equity, that have been brought or that could have been brought in the Consolidated Action and each Action and that arise out of or relate to the allegations that sales of Travel and/or Event Protection Plans purchased prior to September 30, 2023 were unlawful, unfair, falsely advertised, or deceptive with respect to the marketing, offering, solicitation, pricing, sale, accessibility, availability, and/or payment of Assistance Fees for the assistance services included in the Travel and/or Event Protection Plans or any regulatory filing related thereto. The Released Claims shall not release any Settlement Class Member's: (i) claim(s) for personal injury against Defendants or the Released Defendants; (ii) claim(s) for insurance coverage under any Travel and/or Event Protection Plan or relating to Defendants' failure to properly provide insurance coverage, or to properly provide particular assistance benefits in a particular case, or to comply with applicable law in administering claims for insurance coverage or benefits; (iii) claim(s) arising from the purchase of any Travel and/or Event Protection Plan after September 30, 2024; or (iv) right(s) to enforce the Settlement Agreement.

### 2.    Mutual Releases by Parties

By operation of this Order, and pursuant to Paragraph 12.3 of the Settlement Agreement, Releasing Plaintiffs, on the one hand, and Released Defendants, on the other hand, shall unconditionally, completely, and irrevocably release and forever discharge each other from and shall be forever barred from instituting, maintaining, or prosecuting any and all claims, liens, demands, actions, causes of action, rights, duties, obligations, damages or liabilities of any nature whatsoever, whether legal or equitable or otherwise, known or unknown, that actually were, or

could have been, asserted in the Actions or the Consolidated Action, whether based upon any violation of any state or federal statute or common law or regulation or otherwise, or arise directly or indirectly out of, or in any way relate to, allegations (a) that Plaintiffs have had in the past or now have against Released Defendants, whether or not related to the Released Claims, on the one hand, and (b) that Released Defendants could have alleged against Plaintiffs in relation to the Actions or the Consolidated Action, on the other hand.

### 3.    Waiver of Provisions of California Civil Code § 1542

By operation of this Order, with respect to the released claims set forth above, Plaintiffs, Defendants, and Settlement Class Members shall be deemed to have waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits conferred by California Civil Code section 1542 and any other applicable federal or state statute, case law, rule or regulation relating to limitations on releases.

### 4.    Distribution of Settlement Benefits

No later than sixty (60) calendar days after the Effective Date, the Settlement Administrator shall distribute the Cash Payments as set forth in Part VI of the Settlement Agreement. Payment of Notice and Administration Expenses, Taxes and Tax Expenses, Awarded Attorneys' Fees and Expenses, and Incentive Awards shall be made pursuant to the Settlement Agreement in the priority set forth in Section 8.3 of the Settlement Agreement. If, 121 days after the date of the last Cash Payment, there is a balance in the Net Settlement Fund after payment of all items listed in Paragraphs 8.3.1 through 8.3.4, including balances left from reserves after payment of all Notice and Administration Expenses and after payment of all Taxes and Tax Expenses, then such remaining balance shall be donated to the cy pres recipient, Travelers Aid International.

Upon completion of the implementation and administration of the Settlement, the Claim Administrator shall provide a declaration for filing with the Court containing the post-distribution information required by Local Rule 1 regarding Post-Distribution Accounting.

[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT

**5.      Other Effects of This Order**

No action taken by the Parties, either previously or in connection with the negotiations or proceedings connected with the Settlement Agreement, shall be deemed or construed to be an admission of the truth or falsity of any claims or defenses heretofore made or an acknowledgment or admission by any Party of any fault, liability or wrongdoing of any kind whatsoever to any other Party. Neither the Settlement Agreement nor any act performed or document executed pursuant to or in furtherance of the Settlement: (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any claim made by the Settlement Class Members or Class Counsel, or of any wrongdoing or liability of the persons or entities released under this Order and the Settlement Agreement, or (b) is or may be deemed to be, or may be used as an admission of, or evidence of, any fault or omission of any of the persons or entities released under this Order and the Settlement Agreement, in any proceeding in any court, administrative agency, or other tribunal. Defendants' agreement not to oppose the entry of this Order shall not be construed as an admission or concession by Defendants that class certification was appropriate in the Litigation or would be appropriate in any other action.

Except as provided in this Order, Plaintiffs shall take nothing against Defendants by the claims in the Consolidated Action. Plaintiffs' claims in the Consolidated Action are hereby dismissed on the merits and with prejudice. This Order constitutes a separate document under Rule 58 and shall constitute and be entered as a final judgment binding the Parties and Settlement Class Members with respect to this Consolidated Action.

Without affecting the finality of the judgment hereby entered, the Court reserves jurisdiction over the implementation of the Settlement Agreement. In the event the Effective Date does not occur in accordance with the terms of the Settlement Agreement, then this Order and any other judgment entered thereon shall be rendered null and void and shall be vacated, and in such event, all orders and judgments entered and releases delivered in connection herewith shall be null and void and the Parties shall be returned to their respective positions ex ante.

Without further order of the Court, the Parties may agree to reasonable extensions of time to carry out any provisions of the Settlement Agreement.

There is no just reason for delay in the entry of this Order, and immediate entry by the Clerk of the Court is expressly directed.

IT IS SO ORDERED

Dated: _____ _____, 2024

_____
Hon. Jon S. Tigar
U.S. District Judge

[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT