United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADAM ELGINDY, et al.,<br><br>             Plaintiffs,<br><br>        v.<br><br>AGA SERVICE COMPANY, et al.,<br><br>             Defendants. | Case No. 20-cv-06304-JST<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; ATTORNEY'S FEES AND COSTS; AND INCENTIVE AWARDS**<br><br>Re: ECF No. 111 |

Before the Court is Plaintiffs Adam Elgindy and Julianne Chuanroong and conditional Plaintiff Andrew Tasakos's motion for final approval of class action settlement. ECF No. 111. Plaintiffs also seek attorney's fees, costs, and incentive awards. *Id.* The Court previously granted a motion for preliminary approval. ECF No. 122. The Court will grant the current motions.

## I.      BACKGROUND

### A.      Factual and Procedural Background

Plaintiffs Adam Elgindy, Julianne Chuanroong, and Andrew Tasakos brought this class action against Defendants AGA Service Co. d/b/a Allianz Global Assistance ("AGA"), Jefferson Insurance Company ("JIC"), and BCS Insurance Company (collectively "Defendants") for their alleged unlawful, unfair, and deceptive practices relating to their online marketing and sale of travel and event insurance. ECF No. 114 ¶ 1. When purchasing event or travel tickets from online websites or mobile apps, consumers are often presented with the option to insure their purchase. *Id.* ¶ 28. Defendants provide travel insurance and are the dominant providers of event ticket insurance in the United States. *Id.* Plaintiffs allege that Defendants have a longstanding practice of charging consumers hidden fees. *Id.* ¶ 2. Specifically, Defendants offered insurance for a fixed amount but failed to adequately disclose that the price included an "assistance fee" for a toll-free

line to their customer service representatives. *Id.* ¶ 30.

On September 4, 2020, the California Plaintiffs filed this action alleging three claims on behalf of themselves and those similarly situated: (1) violation of California's Unfair Competition Law ("UCL"); (2) violation of California's False Advertising Law ("FAL"); and (3) common law fraud. ECF No. 1. On March 29, 2021, the Court granted Defendants' motion to dismiss Plaintiffs' common law fraud claim but denied their motion to dismiss the remaining claims. ECF No. 35. On April 2, 2022, Andrew Tasakos filed a class action in the Western District of Washington against AGA and JIC. ECF No. 111 at 13. Plaintiff Tasakos asserted two claims on behalf of himself and those similarly situated: (1) violation of Washington's Consumer Protection Act ("CPA"); and (2) breach of Defendants' duty of good faith in insurance matters. *Id.* at 13–14. On June 13, 2022, AGA and JIC filed a motion to dismiss Plaintiff Tasakos's complaint. *Id.* at 14. Before the Court could rule on the motion, the parties filed a notice of settlement and a motion to stay pending the determination of this motion and any ensuing litigation relating to approval of the settlement. *Id.* The California Plaintiffs then filed an amended complaint, adding the Plaintiff and claims from the Tasakos action. ECF No. 114.

After extensive fact discovery, the parties attended three mediation sessions before Rodney Max, a member of the mediation firm Upchurch, Watson, White & Max. ECF No. 111 at 15. On December 21, 2022, Plaintiffs filed a motion for preliminary approval of the class and settlement agreement. On September 30, 2023, the Court granted preliminary approval. ECF No. 122. Plaintiffs now move for final approval of the settlement and for an award of attorney's fees, costs, and service awards. ECF No. 111. The Court held a final approval hearing on May 16, 2024.

**B.    Terms of Settlement**

The proposed settlement agreement resolves the claims between Defendants and the Settlement Class, defined as follows:

> All persons, except excluded persons, who purchased at least one or more (a) qualifying California Travel and/or Event Protection Plan from September 4, 2016, through and including the date the Order Granting Preliminary Approval is entered and, for that purchase, provided a billing address in the State of California or if no billing address was supplied directly to AGA, the Travel and/or Event

United States District Court
Northern District of California

2

Protection plan identified the plan owner as having a California address and/or (b) Qualifying Washington Travel and/or Event Protection Plan from April 2, 2018, through and including the date the Order Granting Preliminary Approval is entered, and, for that purchase, provided a billing address in the State of Washington or if no billing address was supplied directly to AGA, the Travel and/or Event Protection Plan identified the plan owner as having a Washington address. [The class excludes] (a) each and every presiding District Judge and Magistrate Judge in the Actions, and their staff, and their immediate family members; (b) the officers, directors, agents, servants, and current and former employees of Defendants who were employed by Defendants at any time on or after the start of the Class Periods, and the immediate family members of such Persons; (c) any Person who received a complete refund for each and every Qualifying Travel and/or Event Protection Plan purchased by that Person; (d) any Person for whom AGA opened and documented an assistance case in connection with each and every Qualifying Travel and/or Event Protection Plan purchased by that Person; and (e) any Person for whom each purchased Qualifying Travel and/or Event Protection Plan falls outside this Settlement because the Person received a complete refund for the purchased Qualifying Travel and/or Event Protection Plan or AGA opened and documented an assistance case in connection with the purchased Qualifying Travel and/or Event Protection Plan.

ECF No. 112-1 ¶¶ 2.18, 2.31. Under the settlement, Defendants agree to pay $19.75 million into the settlement fund. *Id.* ¶¶ 2.59, 8.1. As part of the settlement, Class Counsel seek an award of $4,937,500 in attorney's fees, an award of costs in the amount of 188,870.47, and $5,000 incentive awards to each of the named Plaintiffs. ECF No. 111 at 37–45.

Pursuant to the plan of allocation, payments to Authorized Claimants are divided into two tranches determined by the dates they purchased their Travel and/or Event Protection Plans. Those who purchased earlier plans ("Tranche 1 Plans") will receive 75% of the assistance fees they were charged. ECF No. 112-1 ¶ 6.1. Those who purchased later plans ("Tranche 2 Plans"), will receive 40% of the assistance fees they were charged. *Id.* If enough funds remain, cash payments may be increased up to 150% of the assistance fees charged for Tranche 1 Plans and up to 80% of the assistance fees charged for Tranche 2 Plans. *Id.* ¶ 6.4. Any settlement funds not distributed to the class will be paid to a *cy pres* recipient, Travelers Aid International. *Id.* ¶ 8.4. In exchange, the Class Members will release the following claims against Defendants:

[A]ny and all claims and causes of action of every nature and description, whether known or unknown, whether arising under federal, state, common, or foreign law, based in law or equity, that have been brought or that could have been brought in the Consolidated Action and each Action and that arise out of or relate to

the allegations that sales of Travel and/or Event Protection Plans purchased prior to the date of entry of the Order Granting Preliminary Approval were unlawful, unfair, falsely advertised, or deceptive with respect to the marketing, offering, solicitation, pricing, sale, accessibility, availability, and/or payment of Assistance Fees for the assistance services included in the Travel and/or Event Protection Plans or any regulatory filing related thereto. The released claims include a waiver, to the fullest extent permitted by law, of the provisions, rights, and benefits of California Civil Code § 1542, and any similar state, federal or foreign law or principle of common law, at law or in equity, which may have the effect of limiting the released claims. The released claims shall not release any settlement class member's: (i) claim(s) for personal injury against Defendants or the Released Defendants; (ii) claim(s) for insurance coverage under any Travel and/or Event Protection Plan or relating to Defendants' failure to properly provide insurance coverage, or to properly provide particular assistance benefits in a particular case, or to comply with applicable law in administering claims for insurance coverage or benefits; (iii) claim(s) arising from the purchase of any Travel and/or Event Protection Plan after the date of entry of the Order Granting Preliminary Approval; or (iv) right(s) to enforce this Agreement.

*Id.* ¶ 2.53.

## II.     FINAL APPROVAL OF SETTLEMENT

### A.     Legal Standard

"The claims, issues, or defenses of a certified class . . . may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). In addition, Rule 23(e) "requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Id.* at 1026 (citation omitted). In making that determination, the district court must balance several factors:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.[1]

---

[1] There is no governmental participant in this case, so the Court does not consider the seventh factor.

United States District Court
Northern District of California

United States District Court
Northern District of California

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citing *Hanlon*, 150 F.3d at 1026).

Additionally, Rule 23 now requires district courts to consider a similar list of factors, including the adequacy of representation by class representatives and class counsel, whether the proposal was negotiated at arm's length, and the adequacy of the relief and equitable treatment of class members. Fed. R. Civ. P. 23(e)(2). These factors were "not designed 'to displace any factor [developed under each circuit's existing precedent], but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.'" *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 WL 6619983, at *4 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020) (quoting Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment).

Settlements that occur before formal class certification also "require a higher standard of fairness." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000). In reviewing such settlements, in addition to considering the above factors, the court also must ensure that "the settlement is not the product of collusion among the negotiating parties." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946–47 (9th Cir. 2011) (quotation marks and citation omitted).

## B.     CAFA Compliance

This action is subject to the requirements of the Class Action Fairness Act of 2005 ("CAFA") which requires that, within ten days of the filing of a proposed settlement, each defendant serve a notice containing certain required information upon the appropriate state and federal officials. 28 U.S.C. § 1715(b). CAFA also prohibits a court from granting final approval until 90 days have elapsed since notice was served under Section 1715(b). *Id.* § 1715(d). Defendants mailed the CAFA notices over 90 days ago. Weisbrot Decl. ¶ 6, ECF No. 128.

## C.     Discussion

### 1.     Adequacy of Notice

A "court must direct notice [of a proposed class settlement] in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). The parties must provide class members with "the best notice that is practicable under the circumstances,

1    including individual notice to all members who can be identified through reasonable effort."  Fed.

2    R. Civ. P. 23(c)(2)(B).  "[T]he class must be notified of a proposed settlement in a manner that

3    does not systematically leave any group without notice."  *Officers for Just. v. Civ. Serv. Comm'n*

4    *of City & Cnty. of S.F.*, 688 F.2d 615, 624 (9th Cir. 1982).

5           The Court approved the parties' proposed notice plan when it granted preliminary

6    approval.  ECF No. 122 ¶¶ 8–10.  Under the approved notice plan, the parties retained Angeion

7    Group as the claim's administrator.  *Id.* ¶ 7.  From the class data provided, Angeion developed an

8    initial notice list of 19.9 million parent transaction records.  Weisbrot Decl. ¶¶ 7–11, ECF No. 128.

9    From that, it delivered about 17.5 million initial email notices and 1.74 million postcard notices to

10   class members.  *Id.* ¶¶ 15, 19–21.  Angeion also sent two reminder notices by email and a third

11   notice after the claim deadline was extended.  *Id.* ¶¶ 16–17; Weisbrot Decl. ¶ 5, ECF No. 137.

12   Further, since December 8, 2023, Angeion has maintained a "toll-free hotline . . . to further apprise

13   Class Members of their rights and options in the settlement" and a website that allows Class

14   Members to securely submit a claim for or opt-out of the settlement, download settlement

15   documents, and find answers to common inquiries.  Weisbrot Decl. ¶¶ 22–25, ECF No. 128.

16   Through April 24, 2024, the Settlement Website has had 1,394,854 unique visitors resulting in

17   2,771,860 page views and the toll-free hotline has received 17,191 calls totaling 74,580 minutes.

18   Weisbrot Decl. ¶¶ 6, 7, ECF No. 137.

19          The deadline for Class Members to exclude themselves from the settlement was January

20   25, 2024.  *Id.* ¶ 13.  Two Class Members have objected to the settlement, and 661 members opted

21   out of the settlement.  *Id.* ¶ 13; Weisbrot Decl. ¶ 30, ECF No. 128.

22          In light of the above procedures, which adhere to the previously approved notice plan, the

23   Court finds that the parties have sufficiently provided notice of the settlement to the Class

24   Members.  *See Perkins v. LinkedIn Corp.*, No. 13-cv-04303-LHK, 2016 WL 613255, at *7 (N.D.

25   Cal. Feb. 16, 2016) (finding class notice adequate where the approved notice was sent in

26   accordance with the approved notice plan, which was "consistent with the requirements of Rule 23

27   and due process").

28   / / /

United States District Court
Northern District of California

### 2.   Fairness, Adequacy, and Reasonableness

#### a.   Adequate Representation of the Class

The Ninth Circuit has explained that "adequacy of representation . . . requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego*, 213 F.3d at 462 (citing *Hanlon*, 150 F.3d at 1020).

At the preliminary approval stage, the Court found no evidence of a conflict between the class and the named plaintiffs or Plaintiffs' counsel.  ECF No. 122 ¶ 1.  Objector Eric Isaacson, however, now contends that a conflict exists between California claimants, Washington claimants, Tranche 1 purchasers, and Tranche 2 purchasers, such that each should comprise a separate subclass with separate counsel.  ECF No. 126 at 12–13.  He describes the decision not to create such subclasses as a failure of adequacy of representation.

Where a class action involves groups of plaintiffs with "significantly conflicting interests," sub-classing is "one mechanism, though not the only one, by which courts can solve conflict of interest problems."  William B. Rubenstein, 3 *Newberg on Class Actions* § 7:31 (5th ed. 2011); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 627 (1997).  However, "only a truly fundamental conflict of interest" requires sub-classing.  Rubenstein, *supra*, § 7:31.  "A conflict is fundamental when it goes to the specific issues in controversy."  *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 942 (9th Cir. 2015).

Such a conflict exists where the interests of certain claimants are directly opposed to those of other claimants.  *See Amchem*, 521 U.S. at 626.  "Beyond that straightforward proposition, [however], defining the level of antagonism or conflict that should preclude class certification is a more difficult proposition."  7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1768 (3d ed. 2005).  "Although the creation of subclasses is sometimes necessary under Rule 23(a)(4) to avoid a fundamental conflict, there is no need to create subclasses to accommodate every instance of differently weighted interests."  *In re Deepwater Horizon*, 739 F.3d 790, 813 (5th Cir. 2014) (quotation marks and citation omitted).  A

1    court should not insist on the creation of a subclass unless it serves a necessary purpose since it

2    adds to the cost and complexity of a class action.  *Natchitoches Par. Hosp. Serv. Dist. v. Tyco Int'l,*

3    *Ltd.*, 247 F.R.D. 253, 269 (D. Mass. 2008).

4         Here, all Class Member claims arise from a common nucleus of facts and are based on the

5    same legal theories: that it was unlawful, unfair, and/or deceptive for Defendants to include

6    assistance fees in the total price of each travel and/or event ticket insurance plan.  Differences in

7    refund percentages to Class Members as between Tranches 1 and 2 is based on the amount of

8    information contained in the disclosures received by those groups.  And Isaacson identifies no

9    substantive difference between Washington and California law that would create a conflict

10   between Class Members of those states.  While the recovery percentages received by Tranches 1

11   and 2 differ, the Court finds that these differences are supported by the facts of the case.

12   Essentially, "[t]he Class Members are treated equitably here because their cash

13   payments . . . roughly correspond to the strength of their claims and the likelihood of damages at

14   trial."  *In re Volkswagen "Clean Diesel" Mktg.*, No. 15-MD-02672-CRB, 2022 WL 17730381, at

15   *8 (N.D. Cal. Nov. 9, 2022), *appeal dismissed as moot sub nom. In re Volkswagen "Clean*

16   *Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. 22-16898, 2024 WL 1635593 (9th Cir. Apr.

17   12, 2024).  The Court further finds that creating subclasses with separate representation would add

18   cost and complexity without providing a corresponding benefit.  Finally, the Court finds that Class

19   Counsel are experienced in class action litigation and have vigorously prosecuted this action on

20   behalf of the class.  The Court therefore concludes that this factor weighs in favor of approval.

21                    **b.**      **Strength of Plaintiff's Case and Risks of Litigation**

22        Approval of a class settlement is appropriate when "there are significant barriers plaintiffs

23   must overcome in making their case."  *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848,

24   851 (N.D. Cal. 2010).  Difficulties and risks in litigating weigh in favor of approving a class

25   settlement.  *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009).

26        Plaintiffs here face significant obstacles if the case were to proceed to trial, as they

27   acknowledge.  Safier Decl. ¶¶ 29-30, ECF No. 112.  Defendants continue to dispute liability and

28   damages.  ECF No. 111 at 22.  The Court finds that these acknowledged weaknesses weigh in

United States District Court
Northern District of California

favor of approving the settlement.  *See Moore v. Verizon Commc'ns Inc.*, 09-cv-1823 SBA, 2013 WL 4610764, at *6 (N.D. Cal. Aug. 28, 2013) (finding that the strength of plaintiffs' case favored settlement because plaintiffs admitted that they would face hurdles in establishing class certification, liability, and damages).  Additionally, "[i]nevitable appeals would likely prolong the litigation, and any recovery by class members, for years."  *Rodriguez*, 563 F.3d at 966.

### c. Effectiveness of Distribution Method, Terms of Attorney's Fees, and Supplemental Agreements

The Court must consider "the effectiveness of [the] proposed method of distributing relief to the class."  Fed. R. Civ. P. 23(e)(2)(C)(ii).  Under the settlement, Class Members can submit their claims by completing a claim form, with their basic personal information, an election of payment method, and a certification of the information included on the claim form, either online or through mail.  ECF No. 112-1, Ex. A.  Authorized Claimants who purchased Tranche 1 Plans will receive between 75% to 150% of the assistance fees collected, and Authorized Claimants who purchased Tranche 2 Plans will receive between 40% to 80% of the assistance fees collected, depending on the number of claims received.  ECF No. 112-1 ¶¶ 6.1; 6.4.  Payments will be made either electronically or by check, depending on the Class Member's election.  *Id.* ¶ 6.5.  This method of processing claims is fair and reasonable.

The Court has also evaluated in detail "the terms of [the] proposed award of attorneys' fees," Fed. R. Civ. P. 23(e)(2)(C)(iii), in connection with Class Counsel's motion for fees and costs.  Class Counsel's requested attorney's fees equals 25% of the settlement fund—the prevailing benchmark for percentage fee awards in the Ninth Circuit.  ECF No. 111 at 37; *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 949.  As explained below, the Court finds that the fee amount is reasonable.  Accordingly, the Court finds this factor weighs in favor of approval.  Further, there are no applicable "agreement[s] made in connection with the proposal" within the meaning of Rule 23(e)(3).  Safier Decl. ¶ 28, ECF No. 112.

### d. Equitable Treatment of Class Members

Consistent with Rule 23's instruction to consider whether "the proposal treats class members equitably relative to each other," Fed. R. Civ. P. 23(e)(2)(D), the Court considers

1    whether the settlement "improperly grant[s] preferential treatment to class representatives or

2    segments of the class."  *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal.

3    2007).

4         As noted above, the settlement provides for Class Members to receive refunds of different

5    percentages depending on the timing of their purchase.  Specifically, claimants who purchased

6    Tranche 1 Plans will receive between 75% and 150% of the collected assistance fees collected,

7    and claimants who purchased Tranche 2 Plans will receive between 40% and 80% of the

8    assistance fees collected in connection with those plans.  These different recovery amounts are

9    justified by the differences in disclosures the groups received.  ECF No. 112-1 ¶ 1.10 (detailing

10   the changes in disclosures).  Where "a company's malfeasance—at the same time and in the same

11   manner—may have caused different degrees of harm to different class members," "the Ninth

12   Circuit does not require the creation of subclasses or separate representation under Rule 23(a)(4)."

13   *In re Volkswagen "Clean Diesel" Mktg.*, 2022 WL 17730381, at *3 (citing *In re Apple Inc. Device*

14   *Performance Litig.*, 50 F.4th 769, 781 (9th Cir. 2022)), *appeal dismissed as moot sub nom. In re*

15   *Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. 22-16898, 2024 WL

16   1635593 (9th Cir. Apr. 12, 2024).

17                    e.        **Settlement Amount**

18        Although not articulated as a separate factor in Rule 23(e), "[t]he relief that the settlement

19   is expected to provide to class members is a central concern."  Fed. R. Civ. P. 23(e)(2)(C)–(D)

20   advisory committee's note to 2018 amendment.  The Court therefore examines "the amount

21   offered in settlement."  *Hanlon*, 150 F.3d at 1026.

22        To evaluate the adequacy of the settlement amount, "courts primarily consider plaintiffs'

23   expected recovery balanced against the value of the settlement offer."  *In re Tableware,* 484 F.

24   Supp. 2d at 1080.  But "a cash settlement amounting to only a fraction of the potential recovery

25   will not per se render the settlement inadequate or unfair."  *Officers for Just.*, 688 F.2d at 628.

26        Here Defendants have agreed to establish a $19.75 million fund.  "[A]s a result of the

27   Settlement, Authorized Claimants will receive between 75% and 150% of the Assistance Fees

28   they paid for Tranche 1 Plans and between 40% and 80% of the Assistance Fees they paid for

United States District Court
Northern District of California

1    Tranche 2 Plans." ECF No. 111 at 21.  These substantial per-claimant benefits strongly support

2    the reasonableness of the settlement.  *See Senne v. Kansas City Royals Baseball Corp.*, No. 14-

3    CV-00608 JCS, 2023 WL 2699972, at *6 (N.D. Cal. Mar. 29, 2023) (characterizing settlement

4    amount representing 89 percent of class members' unpaid wages as "an excellent result for the

5    class"), *aff'd sub nom. Senne v. Concepcion*, No. 23-15632, 2023 WL 4824938 (9th Cir. June 28,

6    2023).  "It is well-settled law" that a cash settlement smaller than the potential recovery "does not

7    per se render the settlement inadequate or unfair." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d

8    1036, 1042 (N.D. Cal. 2008) (quoting *Officers for Just.*, 688 F.2d at 628).  In light of the

9    uncertainties described above, the Court finds the percentage of recovery fair and reasonable. *See*

10   *Dixon v. Cushman*, 18-cv-05813-JSC, 2022 WL 1189883, at *7 (N.D. Cal. Apr. 21, 2022) (finding

11   settlement fund that was an estimated 8% of the total maximum recovery fair in relation to the

12   risks of continued litigation).

13                          **f.    Extent of Discovery**

14        "[I]n the context of class action settlements, formal discovery is not a necessary ticket to

15   the bargaining table where the parties have sufficient information to make an informed decision

16   about settlement." *In re Mego*, 213 F.3d at 459 (quotation marks and citation omitted).  However,

17   a greater amount of completed discovery supports approval of a proposed settlement, especially

18   when litigation has "proceeded to a point at which both plaintiffs and defendants ha[ve] a clear

19   view of the strengths and weaknesses of their cases." *Chun-Hoon*, 716 F. Supp. 2d at 852

20   (quotation marks and citation omitted).

21        Here, the parties conducted sufficient discovery to make an informed decision about the

22   adequacy of the settlement.  Class Counsel "secured production of tens of thousands of pages of

23   documents and thousands of voluminous spreadsheets, obtained critical and voluminous

24   information pursuant to interrogatories and stipulations, conducted eight depositions of AGA

25   employees . . . and consulted with experts." ECF No. 111 at 18.  In addition, Class Counsel

26   briefed an opposition to a motion to dismiss and participated in mediation.  Safier Decl. ¶¶ 5, 21,

27   ECF No. 112.  This factor weighs in favor of approval. *See In re Omnivision.*, 559 F. Supp. 2d at

28   1042 (finding the parties were sufficiently informed about the case prior to settling because they

United States District Court
Northern District of California

11

1  engaged in discovery, took depositions, briefed motions, and participated in mediation).

2  ### g.  Counsel's Experience

3  The Court also considers "the experience and views of counsel."  *Hanlon*, 150 F.3d at

4  1026.  That counsel advocate in favor of this settlement weighs in favor of its approval.[2]

5  ### h.  Absence of Collusion and Arm's Length Negotiations

6  "Where . . . the parties negotiate a settlement agreement before the class has been certified,

7  settlement approval requires a higher standard of fairness . . . ," and the Court must examine the

8  risk of collusion with "an even higher level of scrutiny for evidence of collusion or other conflicts

9  of interest."  *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048–49 (9th Cir. 2019) (quotation

10  marks omitted) (first quoting *Dennis v. Kellog Co.*, 697 F.3d 858, 864 (9th Cir. 2012); and then

11  quoting *In re Bluetooth*, 654 F.3d at 946).  Signs of potential collusion include: (1) a

12  disproportionate distribution of the settlement fund to counsel; (2) negotiation of a "clear sailing

13  agreement"; and (3) an arrangement for funds not awarded to revert to defendant rather than to be

14  added to the settlement fund.  *In re Bluetooth*, 654 F.3d at 947.  If "multiple indicia of possible

15  implicit collusion" are present, the Court has a "special 'obligation to assure itself that the fees

16  awarded in the agreement [are] not unreasonably high.'"  *Id.* (quoting *Staton v. Boeing Co.*, 327

17  F.3d 938, 965 (9th Cir. 2003)).

18  These factors do not point to collusion here.  Class Counsel request an award of 25% of the

19  common fund, which is the "benchmark award for attorney fees," *Hanlon*, 150 F.3d at 1029, and

20  raises no concerns regarding collusion.  *Woodward v. Labrada*, No. EDCV 16-00189 JGB (SPx),

21  2019 WL 4509301, at *11 (C.D. Cal. Apr. 23, 2019).  While the settlement agreement does

22  contain a clear sailing provision, pursuant to which Defendants have agreed not to oppose

23  Plaintiffs' requested fee award, the Court finds no cause for concern because Class Counsel's fee

24  is consistent with the 25% benchmark award for attorney fees, the fee will be awarded from the

25

26  [2] The Court considers this factor, as it must, but gives it little weight.  "[A]lthough a court might
27  give weight to the fact that counsel for the class or the defendant favors the settlement, the court
   should keep in mind that the lawyers, who negotiated the settlement will rarely offer anything less
28  than a strong, favorable endorsement."  *Principles of the Law of Aggregate Litigation* § 3.05 cmt.
   a (Am. Law. Inst. 2010).

United States District Court
Northern District of California

1   same common fund as the recovery to the class, and no funds will revert to Defendants.  *See*

2   *Valliere v. Tesora Ref. & Mktg. Co. LLC*, No. 17-cv-00123-JST, 2020 WL 13505043, at *8 (N.D.

3   Cal. Dec. 16, 2020).

### i.     Reaction of the Class

5          Finally, the Court considers the class's reaction to the settlement.  "[T]he absence of a

6   large number of objections to a proposed class action settlement raises a strong presumption that

7   the terms of a proposed class settlement action are favorable to the class members."  *In re*

8   *Omnivision*, 559 F. Supp. 2d at 1043 (quotation marks and citation omitted).  Here, the reaction of

9   the class was favorable.  More than 480,000 Class Members submitted claims covering more than

10  1,200,000 Plans.  Chumley Decl. ¶ 5, ECF No. 147.  Two Class Members objected to the

11  settlement and 661 opted out.  Weisbrot Decl. ¶ 30, ECF No. 128; Weisbrot Decl. ¶ 13, ECF No.

12  137.  This factor therefore weighs in favor of approval.  *See e.g. Church Vill.*, 361 F.3d at 577

13  (holding that approval of a settlement that received 45 objections and 500 opt-outs out of 90,000

14  class members was proper); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 320–22 (N.D.

15  Cal. 2018) (finding that there was a positive response to the settlement where about 1.8% of class

16  members submitted claims, 28 class members objected, and 406 class members (about 0.0005% of

17  the Class) opted out).

18         The Court has considered the two objections filed by Nicole Butterfield and Eric Isaacson.

19  Butterfield objected because "[t]he defendants provided professional services without any undue

20  stress."  ECF No. 128 Ex. 1.  This is not a "legally sufficient basis to reject the settlement."  *In re*

21  *Zoom Video Commc'ns., Inc. Privacy Litig.*, No. 20-cv-02155-LB, 2022 WL 1593389, at *8 (N.D.

22  Cal. Apr. 21, 2022).

23         Issacson objects on several grounds.  ECF No. 126.  First, he argues that critical

24  information has been redacted from the record, which is "necessary to Class Members' evaluation

25  of the Proposed Settlement."  *Id.* at 7.  However, as both Plaintiffs and Defendants point out, Class

26  Members had access to unredacted versions of Plaintiffs' motion for preliminary approval upon

27  signing the protective order in this case.  ECF No. 118 ¶ 5; *Rodriguez*, 563 F.3d at 967 n.10

28  (rejecting argument that "class members lacked access to records that were sealed pursuant to a

United States District Court  
Northern District of California

1   protective order," where the objectors "did not take advantage of access which was provided.")

2   Isaacson had access to all the information in this case needed to evaluate the settlement.

3   Isaacson also objects that the settlement provides for a *cy pres* distribution.  ECF No. 126

4   at 15.  He contends that such a distribution is improper when funds "can feasibly be distributed to

5   class members."  *Id.*  As the Ninth Circuit has explained "[t]he availability of *cy pres* as a

6   mechanism to distribute unclaimed funds rests on the premise that class action settlements will

7   sometimes have just that—unclaimed funds.  A settlement is not fatally flawed solely because

8   class members did not deplete the entirety of the settlement fund."  *In re Easysaver Rewards*

9   *Litig.*, 906 F.3d 747, 761 (9th Cir. 2018).  Isaacson's contention that *cy pres* is only permissible if

10  it is impossible to distribute more money to the class is incorrect.  *Id.* (rejecting objector's

11  argument that *cy pres* award should have been distributed pro rata to class members).  Finally,

12  "[c]ourts must also be mindful of the important role that *cy pres* awards play in furthering the

13  deterrent function of class actions "where practical considerations prevent the distribution of funds

14  directly to class members."  *McKnight v. Uber Techs., Inc.*, No. 14-CV-05615-JST, 2017 WL

15  3427985, at *5 (N.D. Cal. Aug. 7, 2017) (quoting *McClintic v. Lithia Motors, Inc.*, No. 11-C-859-

16  RAJ, 2012 WL 112211, at *5 (W.D. Wash. Jan. 12, 2012); Brian T. Fitzpatrick, *Why Class*

17  *Actions Are Something Both Liberals and Conservatives Can Love*, 73 Vand. L. Rev. 1147, 1150–

18  51 (2020) (noting that cy pres both indirectly compensates class members and furthers the

19  legitimate deterrent purpose of class actions).  In any event, the parties have made substantial

20  efforts to direct settlement proceeds to Class Members such that allocation to *cy pres* will be a last

21  resort.

22  Isaacson contends Plaintiffs have not adequately represented the class because they failed

23  to address the need for separately represented sub classes.  ECF No. 126 at 12.  The Court has

24  already rejected that contention above.

25  Finally, Isaacson objects to Plaintiffs' requests for attorney's fees and incentive awards.

26  ECF No. 126 at 16–21.  He argues that these awards are not adequately supported and that

27  incentive awards are contrary to Supreme Court authority.  ECF No. 126 at 16–21.  The Court

28  addresses below the factual basis for the attorney's fees and incentive awards made by this order.

United States District Court
Northern District of California

1    In support of his argument that the Court has no authority to make incentive awards in any

2    amount, Isaacson cites *Trustees v. Greenough,* 105 U.S. 527 (1882) and *Central Railroad &*

3    *Banking Co. v.* Pettus, 113 U.S. 116 (1885).  ECF No. 126 at 19.  As Isaacson's counsel

4    acknowledged at the hearing on this motion, the Ninth Circuit has already concluded that incentive

5    awards are not inconsistent with those cases.  *In re Apple Inc. Device Performance Litig.*, 50 F.4th

6    769, 785 (9th Cir. 2022) (noting that "we have previously considered this nineteenth century

7    caselaw in the context of incentive awards and found nothing discordant" with the practice of

8    making incentive awards).  The objection is overruled.

9                             **3.     Balance of Factors**

10           All the factors outlined in *Churchill Village* weigh in favor of final approval and of a

11   finding that the proposed settlement is fair, reasonable, and adequate.  361 F.3d 566.  The Court

12   therefore grants approval.

13   **III.    ATTORNEY'S FEES, EXPENSES, AND INCENTIVE AWARDS**

14           **A.     Attorney's Fees**

15           "While attorneys' fees and costs may be awarded in a certified class action …, courts have

16   an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if

17   the parties have already agreed to an amount."  *In re Bluetooth*, 654 F.3d at 941 (citation omitted).

18   "Where a settlement produces a common fund for the benefit of the entire class," as here, "courts

19   have discretion to employ either the lodestar method or the percentage-of-recovery method" to

20   assess the reasonableness of the requested attorney's fee award.  *Id.* at 942.  "Because the benefit

21   to the class is easily quantified in common-fund settlements," the Ninth Circuit permits district

22   courts "to award attorneys a percentage of the common fund in lieu of the often more time-

23   consuming task of calculating the lodestar."  *Id.*  The Ninth Circuit maintains a well-established

24   "benchmark for an attorney's fee award in a successful class action [of] twenty-five percent of the

25   entire common fund."  *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir.

26   1997) (per curiam).  Courts in the Ninth Circuit generally start with the 25% benchmark and adjust

27   upward or downward depending on:

28                             the extent to which class counsel "achieved exceptional results for the

United States District Court
Northern District of California

15

class," whether the case was risky for class counsel, whether counsel's performance "generated benefits beyond the cash settlement fund," the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis.

*In re Online DVD-Rental*, 779 F.3d at 954–55 (quoting *Viscaino v. Microsoft Corp.*, 290 F.3d 1043, 1048–50 (9th Cir. 2002)).  In addition, courts often crosscheck the amount of fees against the lodestar.  "Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award."  *Vizcaino*, 290 F.3d at 1050.  "The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer."  *In re Bluetooth,* 654 F.3d at 941 (citation omitted).  Regardless of whether the court uses the lodestar or percentage approach, the main inquiry is whether the fee award is "reasonable in relation to what the plaintiffs recovered."  *Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000).

The Court will grant Class Counsel's request for an attorney's fee of 25% of the settlement, for a total of $4,937,500.  ECF No. 111 at 37.  While the Ninth Circuit's 25% benchmark "is not per se valid, it is a helpful 'starting point.'"  *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 955 (quoting *Vizcaino*, 290 F.3d at 1048).  Applying the factors outlined above suggests no reason to vary from this percentage.  Counsel achieved a very good result for the class; counsel took on substantial risk in bringing the case, which they brought on contingency; and the case has been pending for four years.  The requested percentage is reasonable.

Courts often cross-check the amount of attorney's fees using the lodestar method.  Class Counsel's total lodestar is $3,836,539.50.  Safier Decl. ¶ 3, ECF No. 138-1.  Class Counsel spent a total of 3,887.7 hours on the case, with their rates ranging from $825 for the most junior associate to $1175 per hour for the most senior partner and between $305 to $394 per hour for paralegals.  *Id.* ¶¶ 3, 4.  While both the hours and some of the hourly rates seem high, even if the lodestar were reduced by one-third—for the sake of illustration and not because the Court finds such a reduction to be necessary—the multiplier would be approximately 1.9, which is within the range of awards

in similar cases.  *See Rodman v. Safeway Inc.*, No. 11-cv-03003-JST, 2018 WL 4030558, at *6 (N.D. Cal. Aug. 23, 2018) ("Percentage awards in the range of one to four times the lodestar are common.").

### B.    Reimbursement of Costs

An attorney is entitled to "recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee-paying client."  *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (quotation marks and citation omitted).  Class Counsel seek $188,870.47.  ECF No. 111 at 44.  After reviewing an itemized list of costs incurred during this litigation, the Court finds the charged costs to be reasonable.  *See* ECF No. 112-3.  The Court therefore finds that Class Counsel is entitled to reimbursement of costs in the amount of $188,870.47.

### C.    Incentive Awards

"[Incentive] awards are discretionary and are intended to compensate class representatives for work done on behalf of the class."  *Rodriguez*, 563 F.3d at 958 (citation omitted).  In evaluating requests for such awards, the Court should consider:

> (1) the actions the plaintiff has taken to protect the interests of the class; (2) the degree to which the class has benefitted from those actions; (3) the duration of the litigation and the amount of time and effort the plaintiff expended in purs[uing] it; and (4) the risks to the plaintiff in commencing the litigation, including reasonable fears of workplace retaliation, personal difficulties, and financial risks.

*Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *32 (N.D. Cal. Apr. 1, 2011) (citations omitted).  "[C]ourts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives."  *Radcliffe v. Experian Info. Sols., Inc.*, 715 F.3d 1157, 1164 (9th Cir. 2013).  "An award of $5,000 is presumptively reasonable."  *Rollins v. Dignity Health*, No. 13-cv-01450-JST, 2022 WL 20184568, at *9 (N.D. Cal. July 15, 2022).

Plaintiffs have demonstrated that named Plaintiffs Elgindy, Chuanroong, and Tasakos are each entitled to an incentive award of $5,000.  Plaintiff Elgindy and Chuanroong worked with Class Counsel throughout more than two years of litigation during which they provided assistance

United States District Court
Northern District of California

that enabled Class Counsel to successfully prosecute and settle the actions, including locating and forwarding responsive documents and information, responding to written discovery, and attending deposition preparation sessions.  Safier Decl. ¶ 60, ECF 112.  Plaintiff Tasakos also provided his relevant documents and has remained communicative and available throughout his participation in the action.  *Id.*  Accordingly, the Court approves an incentive award of $5,000 to each named Plaintiff.

## CONCLUSION

For the foregoing reasons, the Court hereby orders as follows:

1.      For the reasons set forth in its September 30, 2023 Order, ECF No. 122, the Court confirms certification of the class for settlement purposes only.

2.      The Court grants final approval of the proposed settlement agreement and plan of allocation.

3.      The Court grants Class Counsel $4,937,500 in attorney's fees.

4.      The Court grants Class Counsel $188,870.47 in expenses.

5.      The Court grants an incentive award of $5,000 to each of the named Plaintiffs.

6.      Class Members who asked to opt out of the settlement are excluded from the class.

7.      Class Counsel shall file a post-distribution accounting within 21 days after all funds have been paid under the settlement agreement and any checks that were issued have become stale.  In addition to the information contained in the Northern District of California's Procedural Guidance for Class Action Settlements, available at https://cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/, the post-distribution accounting shall discuss any significant or recurring concerns communicated by Class Members to the settlement administrator or counsel since final approval, any other issues in settlement administration since final approval, and how any concerns or issues were resolved.

8.      The Court will withhold 10% of the attorney's fees granted in this order until the post-distribution accounting has been filed.  Class Counsel shall file a proposed order releasing the remainder of the fees when they file their post-distribution accounting.

9.      The Court retains continuing jurisdiction over this settlement solely for the

purposes of enforcing this agreement, addressing settlement administration matters, and addressing such post-judgment as may be appropriate under Court rules and applicable law.

10.     This matter is set for a further case management conference on April 8, 2025.  An updated joint case management statement is due April 7, 2025.  The parties may request that the case management conference be continued if additional time is needed to complete the distribution.  The conference will be vacated if the post-distribution accounting has been filed and the Court has released the remaining attorney's fees.

Judgment is hereby entered on the terms set forth above.  The clerk shall close the file.

**IT IS SO ORDERED.**

Dated:  October 29, 2024

_____
JON S. TIGAR
United States District Judge